**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-20050-CR-ALTONAGA**

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**JOSE MIGUEL GONZALEZ VIDAL**, *et al.*,

Defendants.
_______________________________________/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Jose Miguel Gonzalez Vidal's Motion to Dismiss Kidnapping Counts [ECF No. 111], filed on December 17, 2021. At a status hearing on January 13, 2022, Defendants, Reynaldo Crespo Marquez, Jancer Sergio Ramos Valdes, Yosvani Carbonel Lemus, Yohismy Perez Gonzalez, Luis Pompa Gonzalez, and Reynaldo Abreu Garcia, joined the Motion. Defendants move to dismiss the Superseding Indictment's [ECF No. 37] kidnapping counts brought under 18 U.S.C. section 1201(a)(1) for lack of subject matter jurisdiction. (*See generally* Mot.). The Government filed a Response [ECF No. 115], to which Defendants filed a Reply [ECF No. 127].

The Court has carefully reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

***Background.*** The Government accuses Defendants of engaging in an international smuggling and kidnapping scheme. (*See generally* Superseding Indictment). According to the Government, Defendants identified Cuban nationals who desired to leave Cuba and enticed them to board vessels under the pretense that they would be taken directly to the United States. (*See id.* 22–23). Instead, Defendants took the unsuspecting migrants to a compound in Mexico. (*See id.*).

Upon arriving in Mexico, Defendants allegedly held the migrants hostage until their relatives in the United States paid a ransom — usually $10,000 — to send the migrants on a bus to the United States-Mexico border. (*See id.* 21). If the migrants' families delayed or refused to pay, Defendants would use WhatsApp, a mobile application, to send images and videos of the migrants being beaten and tortured. (*See id.* 23, 26). Defendants instructed the relatives to use Western Union, a U.S.-based money transfer service, to pay the ransom. (*See id.* 26). Defendants provided the ransomed migrants with bus tickets to the U.S.-Mexico border, where the migrants would request political asylum. (*See id.* 25).

On May 27, 2021, a grand jury returned the Superseding Indictment, charging Defendants with one count of conspiracy to encourage aliens to enter the United States for financial gain, in violation of 8 U.S.C. section 1324(a)(1)(A)(v)(I); eight counts of encouraging aliens to enter the United States for financial gain, in violation of 8 U.S.C. section 1324(a)(1)(A)(iv); one count of conspiracy to transmit extortionate interstate communications, in violation of 18 U.S.C. section 371; six counts of interstate transmission of extortionate threats, in violation of 18 U.S.C. section 875(b); one count of conspiracy to bring aliens into the United States, in violation of 18 U.S.C. section 371; one count of conspiracy to commit kidnapping, in violation of 18 U.S.C. section 1201(c); eight counts of kidnapping, in violation of 18 U.S.C. section 1201(a)(1); one count of conspiracy to extort, in violation of 18 U.S.C. section 1951(a); and eight counts of extortion, in violation of 18 U.S.C. section 1951(a). (*See id.*).[1] Defendants now seeks to dismiss the eight counts of kidnapping under section 1201(a)(1).

***Standard.*** Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on

[1] The grand jury did not charge Defendant Abreu Garcia with violations of 18 U.S.C. section 875(b) or 1201(a)(1). (*See* Superseding Indictment 13, 25).

the merits." *Id.* (alteration added). A defendant may challenge an indictment on a variety of grounds, including lack of jurisdiction and prosecutorial misconduct. *See United States v. Kaley*, 677 F.3d 1316, 1325–26 (11th Cir. 2012) (citations omitted).

In addressing a motion to dismiss an indictment, the court must accept the allegations of the indictment as true. *See United States v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991); *see also United States v. Sampson*, 371 U.S. 75, 78–79 (1962). The factual allegations in the indictment must be "viewed in the light most favorable to the government[.]" *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (alteration added; citations omitted).

***Discussion.*** Defendants argue the kidnapping counts must be dismissed because the Superseding Indictment lacks a jurisdictional hook connecting Defendants' unlawful conduct to the United States. (*See* Mot. 6; Reply 1). Specifically, Defendants argue the Government did not allege that Defendants used instruments of interstate or foreign commerce — such as cell phones, WhatsApp, and Western Union — to contact the victims' families in the United States. (*See* Reply 1–2). Because Defendants premise their argument on a fatal misreading of the Superseding Indictment, their Motion must be denied.

Before 2006, section 1201(a) only extended to kidnapping victims who crossed state lines. Congress amended section 1201(a) in 2006 to include kidnappings that utilized instruments of interstate or foreign commerce. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, 120 Stat. 616 (codified at 18 U.S.C. § 1201(a)(1)). Now, individuals are prohibited from using an "instrumentality of *interstate* or *foreign* commerce" to "unlawfully seize[], confine[], inveigle[], decoy[], kidnap[], abduct[], or carr[y] away and hold[] for ransom or reward . . . any person[.]" 18 U.S.C. § 1201(a)(1) (alterations and emphases added). Since the amendment, courts have identified several "instrumentalit[ies] of interstate [and] foreign

commerce[,]" *id.* (alterations added), including the internet, global positioning service (GPS) devices, and phones. *See, e.g.*, *United States v. Morgan*, 748 F.3d 1024, 1033–34 (10th Cir. 2014) (holding that cell phones, the internet, and GPS devices constitute instruments of interstate commerce); *United States v. McKinley*, 647 F. App'x 957, 962 (11th Cir. 2016) ("[T]he use of cell phones, even without evidence that the calls were routed through the interstate system, sufficiently satisfies the use of interstate commerce element of an offense." (alteration added; citation omitted)).

Congress has increasingly relied on the Foreign Commerce Clause to enforce U.S. laws, like section 1201(a)(1), abroad. *See generally* Naomi Harlin Goodno, *When the Commerce Clause Goes International: A Proposed Legal Framework for the Foreign Commerce Clause*, 65 Fla. L. Rev. 1139 (2013). Yet, courts frequently struggle to determine the scope of a statute's extraterritorial application. *See generally United States v. Clark*, 435 F.3d 1100, 1103 (9th Cir. 2006) (acknowledging that evaluating the limits of an extraterritorial statute requires taking a "step back and tak[ing] a global, commonsense approach" (alteration added)), *superseded by statute*, Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 105, 117 Stat. 650 (codified as amended at 18 U.S.C. § 2423), *as recognized in United States v. Pepe*, 895 F.3d 679, 684 (9th Cir. 2018).

Courts typically apply the *Nabisco* two-step framework to evaluate whether a statute applies extraterritorially at all. *See Skillern v. United States*, No. 20-13380, 2021 WL 3047004, at *7 (11th Cir. Apr. 16, 2021) (citing *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016)). First, to rebut the presumption that federal laws, like section 1201(a)(1), do not apply extraterritorially, courts must determine whether the statute clearly indicates that it applies extraterritorially. *See id.* If the statute does not extend to extraterritorial conduct, then the second

step requires the court to evaluate "whether the case involves a domestic application of the statute by looking to the statute's 'focus.'" *Id.* "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad[.]" *RJR Nabisco*, 579 U.S. at 337 (alteration added).

The Court need not engage in the *Nabisco* two-step analysis because, contrary to the Government's argument (*see* Resp. 7), Defendants concede section 1201(a)(1) applies extraterritorially. (*See* Reply 1). Nevertheless, Defendants argue the Government must still allege "that the instrumentalities . . . were used to reach relatives and friends of the migrants located in the United States" to obtain the extraterritorial effect of the statute. (Reply 1 (alteration added; emphasis omitted)).[2] In other words, Defendants contend the Government has not identified a hook or nexus connecting Defendants' conduct to activities in the United States. (*See id.*).

The Government establishes such a link in other counts. (*See, e.g.*, Superseding Indictment 6–8, 13). For example, Count 10 alleges that Defendants used their cell phones to send threatening communications to families located in "Miami, Florida[;] Las Vegas, Nevada[;] and Houston, Texas[.]" (*Id.* 7 (alterations added)).

Admittedly, "[a]llegations in one count of an indictment are not automatically incorporated into another; express incorporation is required." *United States v. Lang*, 732 F.3d 1246, 1249 (11th Cir. 2013) (alteration added; citation omitted). Nevertheless, a key allegation appears in the kidnapping counts:

> *[I]n Miami-Dade County, in the Southern District of Florida*, and elsewhere, [Defendants] . . . did use means, facilities, or instrumentalities of interstate or foreign commerce, that is, Western Union, the mobile application WhatsApp, and

[2] The Government disagrees with Defendants' premise that the kidnapping counts arise under section 1201(a)(1)'s extraterritorial reach; instead, it contends that this is a domestic application of section 1201(a)(1). (*See* Resp. 8–11). The Court need not address whether the kidnapping counts constitute a domestic or extraterritorial application of section 1201(a)(1) because even if the Court adopts Defendants' position, the Government satisfies its burden in the extraterritorial context.

> cellular telephones to contact relatives and friends of Aliens 1, 2, 3, 4, 5, 6, 7, and 8, in commiting and in furtherance of the commission of the offense[.]

(Superseding Indictment 25–26 (alterations and emphasis added)). Defendants have not addressed this allegation, perhaps because they, like the Court, recognize the obvious interpretation: Defendants allegedly used Western Union, WhatsApp, and cellular phones to contact relatives in the Southern District of Florida. Having allegedly used these methods to conduct cross-border communications with the victims' families, Defendants fail to demonstrate the kidnapping counts lack a jurisdictional hook. *See United States v. Camejo De La Flor*, No. 8:10-cr-188, 2010 WL 3324851, at *2 (M.D. Fla. Aug. 23, 2010) (concluding the government established a jurisdictional hook for purposes of section 1201(a)(1) when the defendant located in Mexico called the victim's father in Tampa, Florida).

Even if Defendants correctly characterize the allegations as an attempt to extend section 1201(a)(1) to "kidnappings by foreigners against foreigners on foreign soil" (Mot. 10), Defendants have not cited any post-2006 amendment decisions prohibiting such an application. International law generally permits universal jurisdiction over heinous crimes, including "piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism[.]" Restatement (Third) of Foreign Relations Law § 404 (1987); *see United States v. Noel*, 893 F.3d 1294, 1305 (11th Cir. 2018) (concluding that hostage-taking is a universally condemned crime). *United States v. McRary* is the only decision rejecting a theory that section 1201(a) could fall within the purview of universal jurisdiction. *See* 665 F.2d 674, 678 n.8 (5th Cir. 1982) ("This 'universal jurisdiction' is almost entirely limited to cases of piracy." (citation omitted)). But *McRary* predates the 2006 amendment, and courts have since expanded universal jurisdiction beyond crimes such as piracy. *See, e.g.*, *Noel*, 893 F.3d at 1305 (adding hostage-taking).

Finally, the Court need not address whether section 1201(a)(1) falls within the universality principle because the Government has connected Defendants' alleged kidnapping efforts to contacts within United States.

* * *

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Kidnapping Counts **[ECF No. 111]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of January, 2022.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record