UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 21-cr-20050-CMA


UNITED STATES OF AMERICA,          Miami, Florida

   Plaintiff,          February 7, 2022

  vs.          1:44 p.m. to 4:57 p.m.

JOSE MIGUEL GONZALEZ VIDAL,     Courtroom 13-3
et al.,
        (Pages 1 to 99)
   Defendants.

_____

EVIDENTIARY HEARING
BEFORE THE HONORABLE CECILIA M. ALTONAGA,
CHIEF UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   MICHAEL S. DAVIS, ESQ.
                      Assistant United States Attorney
                      99 Northeast 4th Street
                      Miami, FL 33132
                      (305) 961-9001
                      michael.davis@usdoj.gov

FOR DEFENDANT         JUAN D. BERRIO, ESQ.
GONZALEZ VIDAL:       Berrio & Berrio, P.A.
                      7300 North Kendall Drive, Suite 520
                      Miami, FL 33156-7840
                      (305) 358-0940
                      jdberrio@hotmail.com

FOR DEFENDANT         SCOTT T. KALISCH, ESQ.
CRESPO MARQUEZ:       Scott Kalisch P.A.
                      435 South Oregon Avenue, #104 FL
                      Tampa, FL 33606
                      (305) 669-0808
                      scottkalisch@bellsouth.net

Also Present:         Jose De La Sierra, FBI
                      Andrea Batres-Chacon, Interpreter
                      Maria Kisic, Interpreter

**APPEARANCES CONTINUED:**

**REPORTED BY:**          **STEPHANIE A. McCARN, RPR**
                         **Official Court Reporter**
                         **400 North Miami Avenue, 13th Floor**
                         **Miami, Florida 33128**
                         **(305) 523-5518**
                         **Stephanie_McCarn@flsd.uscourts.gov**

<u>I N D E X</u>

<u>WITNESSES</u>

<u>WITNESSES FOR THE GOVERNMENT:</u>                                    <u>Page</u>
                                                                    --


<u>WITNESSES FOR THE DEFENDANTS:</u>                                    <u>Page</u>
                                                                    --


| EXHIBITS IN EVIDENCE | PRE | MARKED | ADMITTED |
|---|---|---|---|
| Government's Exhibit No. | -- | -- | -- |
| Defendants' Exhibit No. | -- | -- | -- |


<u>MISCELLANEOUS</u>

                                                                    <u>Page</u>
Proceedings.......................................    4
Court Reporter's Certificate......................   87

(The following proceedings were held at 1:44 p.m.)

THE COURT REPORTER:  All rise.

THE COURT:  Please be seated.  Good afternoon.

Please state your appearances.

MR. DAVIS:  Michael Davis for the United States and with me at counsel table is Special Agent Jose De La Sierra of the FBI.

THE COURT:  Good afternoon.

MR. BERRIO:  Good afternoon, Your Honor.  Juan Berrio on behalf of Jose Miguel Gonzalez Vidal.

THE COURT:  Good afternoon.  I'll hear your claims of privilege, Mr. Berrio.

MR. BERRIO:  Your Honor, with regard to the first document, it is a communication and -- and it outlines --

THE COURT:  I'm sorry.  Identify the document, please.

MR. BERRIO:  Identify the document, yes.  Document 1 in the folder I provided, it says, Start time, November 7th, 2020.

THE COURT:  Yes.

MR. BERRIO:  Okay.  And it says, Participants, Jamie Jácome and JJ, which is Mr. -- Mr. Gonzalez Vidal.  And then to begin with, it starts with, Hola licenciado, which is a term that they use for the attorneys in -- in Mexico.  So it is a communication.

It was made between Mr. Gonzalez Vidal and the

attorney Mr. Jácome in confidence, I don't -- I don't see anybody else listed in here. And -- and it was for the purpose of obtaining legal advice regarding a boat. It was a boat that was at issue.

And in -- in the body of the -- the document, it's -- it's claiming a boat and there are attachments that were -- in addition to the -- to the actual chat, we -- we allege that -- or we submit that any and all attachment photos that are part of the chat are privileged as well. We are saying it is one -- all part and parcel to the same communication.

THE COURT: Okay. But just because he's communicating with a lawyer doesn't make it attorney/client. Is this his lawyer? Is he the client?

MR. BERRIO: He is the client, and he is requesting advice regarding to recover a boat, a boat La Lancha. And I think in further communications down the road and in other communications, they -- they do -- let's find one particular that it -- it is a boat that is at issue.

THE COURT: That's also Document 1, correct?

MR. BERRIO: Yes, Your Honor.

THE COURT: Government's position?

MR. DAVIS: That it has not sustained their burden of proving that this is a privileged conversation. We do not dispute that Mr. Jácome is a lawyer, however it is not self-evident on the face of the chat that the defendant is

seeking a lawyer.  Mr. Berrio is making his own interpretation, and once again, there is nothing to support that interpretation and the interpretation is not self-evident from the face of the chat.

Mr. Berrio also proffers that there are additional documents that confirm that this is for legal advice.  However, Mr. Berrio has not submitted those documents, and once again, it is his burden.  For these reasons, I respectfully submit that Defense Document 1 is not privileged.

THE COURT:  Thank you.

Anything else, Mr. Berrio?

MR. BERRIO:  Your Honor, also under the work product that I'd allege that this is confidential, or that it is protected under the work product.  And -- and this was just communications, whatever --

THE COURT:  Where are the attorney's mental impressions and legal theories in contemplation of litigation?

MR. BERRIO:  I don't see them on the actual document here, but with regards to the body, there are, I believe -- yeah, okay.  (Speaking Spanish) -- okay.  With regards to the -- I'm -- I'm discussing the issue of -- I'm sorry, Judge, if we could go back to the attorney/client privilege.  I didn't see where I was refer -- where the document actually refers to La Lancha, and La Lancha is the boat.

And he's talking here, Hola --

THE COURT:  You can't -- you can't read in Spanish.  My court reporter only takes English, Mr. Berrio.

MR. BERRIO:  I could attempt to translate it on my own.

THE COURT:  Right, but I -- I don't think you have established your burden.  Where are there -- where is there any communication regarding legal advice?  So I would agree with the Government.

All right.  Are we ready to look at Document 2, the claim is attorney/client and work product.  Why don't you address the elements you must satisfy.

MR. BERRIO:  Yes, Your Honor, with this communication and it's not -- we're not alleging attorney/client.  We are going to strike --

THE COURT:  Page -- well, I see the No. 2, it says Attorney/client and work --

MR. BERRIO:  Yes.

THE COURT:  Attorney/client, work product.

MR. BERRIO:  Yes, we are going to -- we're not going to make the attorney/client.

THE COURT:  You are relying on work product?

MR. BERRIO:  Work product.

THE COURT:  Okay.  Where are the attorney's mental impressions and legal theories in contemplation of litigation?

MR. BERRIO:  Your Honor, there's attachments --

well --

THE COURT:  Do I have the attachments?

MR. BERRIO:  No, no.

THE COURT:  All right.  So I can't rule on attachments.

MR. BERRIO:  It's included in the -- okay.  They are talking here about witnesses.

THE COURT:  Right.

MR. BERRIO:  Gather witnesses for --

THE COURT:  Where are the attorney's mental impressions and -- and legal theories?

MR. BERRIO:  Your Honor, I don't think that -- it's just work product.  I don't believe it's just limited to mental impressions and legal theories.  And I'll cite Diamond Resorts 519 Federal Supp. 3d 1184 Southern District of Florida --

THE COURT:  Do you have a copy for counsel and for me?

MR. BERRIO:  Excuse me?

THE COURT:  Do you have a copy for the Government and for me?

MR. BERRIO:  No, Your Honor, I don't.  519.

THE COURT:  Just one second, I'm opening up my computer.  Does the Government have Westlaw available?

MR. DAVIS:  I can go.  One moment, please.  If I could take a second.  Do we have WiFi here, Your Honor?

THE COURT:  Yes.

MR. DAVIS:  Okay.  Could I have the cite, Mr. Berrio?

MR. BERRIO:  519, I think you -- you cite this -- this in your --

MR. DAVIS:  Okay.

MR. BERRIO:  In your -- you also cite this in your memo that you filed last night.  And it is 519 Federal Supp. 3d 1184 Southern District of Florida 2021, and I believe it's Judge Rinehart.

THE COURT:  What page?

MR. BERRIO:  Your Honor, it's in the -- in the keys, the initial pages.  It's not -- I'm -- I'm just reading the points of law in the footnotes -- not in the footnotes, in the -- in the key section, the initial section.

THE COURT:  So this -- these are communications between your client and who?

MR. BERRIO:  And an attorney by the name of Rogelio Garcia.

THE COURT:  Is that his lawyer?

MR. BERRIO:  It is not his lawyer.  It is not his lawyer, but we are claiming the work product.

THE COURT:  I'm sorry, I thought you were --

MR. BERRIO:  They are gathering -- no, we're not claiming attorney/client privilege for this one.  We are claiming the work product.

THE COURT:  So this case that you have turned our attention to is addressing attorney/client.

MR. BERRIO:  I believe it has work product in there as well.

THE COURT:  Where?

MR. BERRIO:  Towards -- after you get past the attorney/client section.

THE COURT:  Okay.  Headnote 25?

MR. BERRIO:  Your Honor, I do not have a copy here, but it is after the attorney/client section of the law, where it --

THE COURT:  And this is a communication between your client and a lawyer in anticipation of litigation?

MR. BERRIO:  Yes.

THE COURT:  What litigation?

MR. BERRIO:  The Maikel.  Maikel, is a gentleman that was arrested in Mexico for the underlying facts of this -- in this conspiracy, they include an incident that occurred on January of 2019, a kidnapping.  And this gentleman, Maikel, and a lady Monica in Mexico.

THE COURT:  Right.  They were the ones who were convicted and are serving sentences in Mexico.

MR. BERRIO:  Yes.  And -- and that -- that activity there encompasses this -- this charge -- the superseding indictment, the time period.  So they are saying that my client

was involved in that matter under the conspiracy that he is charged with, it encompasses that activity.  And so my client is gathering documents in anticipation of litigation that affects him and these other individuals.

If you look -- ah, this -- this case -- and -- and they talk about this case later on.  It's -- it's in here, we actually have the transcripts of that case, that we are also seeking a privilege on.  And those transcripts relate -- and these communications relate to a January 2019 smuggling venture that my client is accused of here in -- in this Court.  And he was gathering these documents and he was also trying to locate witnesses, and that's what he was speaking to this attorney about in anticipation of litigation where he might be involved or he is involved, actually, now.

THE COURT:  All right.  I will hear from the Government.

MR. DAVIS:  I do agree that the Defendant is communicating with Mr. Garcia, however, the communications are simply about getting an appeal filed.  There is nothing about those communications that involved Mr. Garcia's theories or legal theories or factual investigations, and certainly not as it pertains to this Defendant.

Mr. Garcia is not this Defendant's lawyer.  So I do not believe that this Defendant has the legal standing to claim that Mr. Garcia's work is work product as to this Defendant.

So by way of summary, there is no work product in this conversation.  It's simply about retaining counsel for the purposes of an appeal for other individuals in Mexico.

And, second, because it's not this Defendant's lawyer, he does not have standing to claim work product as to that lawyer's work, assuming there is any.

MR. BERRIO:  Your Honor, it just doesn't talk about an appeal.  It talks about gathering witnesses from the bar.  And -- and he's gathering this information and aiding in this investigation knowing that he may be implicated of these matters.  I don't think that attorney/client privilege -- I mean, the work product privilege is only limited if you -- if you -- if you've retained the attorney.  I think if you seek advice or you engage services or you seek counseling, I think it applies.  It's not just simply, there's a retainer in place, I represent you, I've hired you.  I think it -- the work product isn't that limited.

And so, if -- if you go to Page 2 of the communication -- oh, no, I'm sorry, Page 3 of the communication, it talks about witnesses.  The second line -- I mean, the second part of it, you know, they are talking about locating witnesses and then they are sending -- they are sending communications, attachments.  And so they do speak about the appeal for Maikel, but it is also about locating witnesses and Mr. Gonzalez Vidal is doing this anticipating that he might be facing accusations

for something that he is here -- in court now that didn't materialize.

THE COURT:  I agree with the Government that this does not constitute work product.  It's neither fact work product nor opinion work product.

Moving on to 3.

MR. BERRIO:  3, we proceed with the work product, not the attorney/client.  Work product.  And here, Mr. Gonzalez Vidal is contacting a gentlemen -- an attorney by the name of Otamendi Juarez (phonetic).  And he's contacting his attorney, and he -- and he puts it in there.  Hola --

THE COURT:  No, you need to -- there is no Spanish on -- on this record, please, Mr. Berrio.

MR. BERRIO:  Okay.  And then he -- he says, hello to the attorney.  And then he -- he's asking for information, legal counsel, regarding Gabrielle's property.

THE COURT:  Right.

MR. BERRIO:  So he's seeking information from this attorney.  He's seeking advice, legal advice.  And we would assert that it is work product.

THE COURT:  I don't see this is work product.  Again, it is neither fact work product nor opinion work product.

MR. BERRIO:  And then they talk about --

THE COURT:  I don't see any statements by your client to an attorney attesting to facts.

MR. BERRIO:  To facts.  Okay.

THE COURT:  There are certainly no opinions here.

Okay.  Item 4.

MR. BERRIO:  Item 4.  Item 4 is a communication with Mr. Gonzalez Vidal and Avefenix, who is another attorney.  And there again, they are talking about -- I'm -- we are not alleging attorney/client privilege.  We would be proceeding with work product.  And --

THE COURT:  How do you -- how do you define work product, Mr. Berrio?  Because we're -- if --

MR. BERRIO:  The work product doctrine protects from disclosure documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's attorney acting for his client.  So I don't think you have to be the attorney/client.  I don't think there has to be a relationship between the attorney/client because here it says, Prepared in anticipation of litigation by or for a party or by or for that party's attorney acting in -- for his client.

And then it goes on to say the proponent of the work product privilege -- and this is the Diamond Resorts case.  The proponent of the work product privilege bears the burden of establishing if by the preponderance of the evidence.  In order for the protection to apply the proponent must prove that it anticipated litigation at the time each document or communication was created.  So when he's communicating with

this chat, I believe he is anticipating litigation that may affect him.

And then in determining whether a document was made in anticipation of litigation the primary focus is on the reason or purpose of creating the document.  So he created this chat because he anticipates litigation.  He's trying to seek advice.  He's trying to speak to --

THE COURT:  Yeah, but he is not -- he is not attesting to any facts, is he?

MR. BERRIO:  That exact --

THE COURT:  Because you are certainly not claiming that this is opinion work product, there is no opinion here.

MR. BERRIO:  No, no, no.

THE COURT:  So you are claiming that this is fact work product.  And what fact is your client attesting to in these communications?

MR. BERRIO:  He's asking for advice here.  He's asking -- oh.  I need both things to decide how I'm going to proceed.  And he says that.  He's asking for advice to determine how he's going to proceed and make the decisions he needs to make.  And that's on Page 1, 2, 3, 4, it's on Page 5.  And then he says, you know, I need this information to determine if I offer something.  So he --

THE COURT:  No, I need these two things to know what the judge did or did not take into account.

MR. BERRIO:  And then below that --

THE COURT:  And -- and the file to see what was offered or not.

MR. BERRIO:  Yeah, to see about what was offered.

THE COURT:  Right, but that's not any fact work product.  He's not disclosing any facts, any factual material.  He's not attesting to any fact.

MR. BERRIO:  Regarding -- yeah, regarding the specific case, no, I don't see him.

THE COURT:  No.  He wants to know what was taken into account in the case and -- and so forth.  But he's not attesting to any fact.  I don't see this as work product either.

No. 5.

MR. BERRIO:  No. 5 is another case.  This gentle -- this attorney is -- we are withdrawing the attorney/client.  We are proceeding with the work product the same.  And it is an attorney Chábel in Mexico with my client.  Again, he's addressing the case of Maikel and Monica for a kidnapping incident.

THE COURT:  He is saying can you give me the sentences that Maikel and Monica received.  If they are not ready yet.  What's going to happen.  Are they going to appeal or not.  I mean, I don't know how -- what work product is this?

MR. BERRIO:  He's asking -- Yuli that you send me

copies and videos, so I can send to my friend.  I believe he is anticipating that he may be brought into this, so he is asking for documents, generate some tangible things and objects, documents and tangible things.  He is trying to prepare these things in anticipation of litigation of what he may be facing down the road.  I'm trying -- he is trying to gather these things.

THE COURT:  Right, if he gathered them and then expressed facts about them or opinions, then that would be work product, but he is just trying to gather information.

MR. BERRIO:  If the -- if my client expressed any opinion or any facts about it or any --

THE COURT:  He is not expressing anything, either -- either factual or -- or by way of opinion.  He's asking for things.  He's asking questions.  He's asking for files.  He's asking for outcomes.  I need you to send me the photo of the passport of -- of Javier, the gringo, the fat one.  I mean, I don't -- I don't know how this is work product.

MR. BERRIO:  I think these are documents that he is asking to gather and I think it's not just -- it doesn't just come down to documents.  It comes down to tangible things, based on that case I discussed, Diamond Resorts.  When they are prepared in anticipation for litigation or gathered, I don't think it has to be a document that's prepared.  I am preparing this document, I think it is just documents that he anticipates

that he is going to need because he might need them for litigation down the road.

THE COURT:  What -- what case do you -- do you rely upon for the proposition that a party who asks a lawyer for documents he might need in his litigation, that that communication constitutes work product?  This is your burden, Mr. Berrio.

MR. BERRIO:  I understand.  And I am just reading from the --

THE COURT:  No, but to read from the general rule statement doesn't assist.

(Pause in proceedings.)

MR. BERRIO:  I believe the purpose for the -- the work product, I believe and from what I see in Diamond Resorts, it says the purpose for the work product rule not to protect the evidence from disclosure to the outside world, but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer during the -- lawyer gathering the materials.  And that's in the Diamond Resorts case.

So I think that we are trying to defeat that purpose. We are trying to defeat the purpose that opposing counsel or his client will gain this -- this information to use against the person who is gathering it, which is my client.  So the proper analysis is whether the putative work product is created

in a way that is reasonably designed to conceal it from the opposing party, not whether it was intended to be kept confidential from all third parties.  We are just saying that he -- he wasn't -- I'm sorry, Judge, oh, no, no, this is the work product privilege, and it's distinguishing it from the attorney/client privilege.

And so our position is that he was gathering these materials and that they should be protected as work product because we don't want the Government to get their hand -- its hands on -- on these materials, and that's the purpose of the work product privilege and that's our position, Your Honor.

And it goes on to say, the test used to determine whether a lawyer-client relationship exists is the absence -- in the absence of a former retainer is a subjective one.  And hinges upon the client's belief that he is consulting a lawyer in the capacity and manifested intention to seek professional legal advice.

So we are saying that he is -- he is gathering these documents, he is seeking information from these lawyers he's communicating with because he -- he anticipates that this may affect him down the road.  So that's why we are submitting that these are privileged materials that shouldn't be provided to the Government.

(Pause in proceedings.)

THE COURT:  To be clear, you are not maintaining that

these conversations between your client and these Mexican lawyers constitutes opinion work product, correct?

MR. BERRIO:  No.

THE COURT:  So your position is that it constitutes fact work product, right?

MR. BERRIO:  Yes, Your Honor.

THE COURT:  But it's not the fact work product of the lawyer.

MR. BERRIO:  Ah --

THE COURT:  Right?  You're claiming it's the fact work product of your client.

MR. BERRIO:  Fact work product of -- well, this is all coming from the lawyer's file, I believe.  He's --

THE COURT:  No, I understand.  But whatever is revealed in these communications that you don't want to be revealed to the Government is what you maintain is your client's fact work product, right?

MR. BERRIO:  Yes, Your Honor.

THE COURT:  Not the attorney's fact work product?

MR. BERRIO:  Yes, Your Honor.  And the attorney -- well, this is all --

THE COURT:  To the extent the lawyer answers some questions with facts, you are saying that that's fact work product as well?

MR. BERRIO:  Yes, Your Honor.

THE COURT:  Mr. Davis?

MR. DAVIS:  If that were the case, then every conversation with a lawyer in which a lawyer provides a response would become fact work product.  And I just want to step back, and that is certainly not the case.

There are -- there is no evidence of any facts developed by the lawyer in anticipation of litigation; that is, there aren't any -- this conversation 5 or Document 5 does not contain any synopses of witness' interviews.  They don't contain any synopses of analysis of records.  They are just a lawyer answering questions to the Defendant.  We don't know if this has anything to do with litigation for the Defendant, that's Mr. -- that is Mr. Berrio's interpretation.

Mr. Berrio -- and that's not self-evident based upon the face of the text.  We also have no self-evident portion of this text that shows that it is for this defendant; that is, that it's this Defendant's work product privilege to assert. And we don't know if it's in anticipation of litigation.

When we are talking about, for instance, Javier -- Javier Hernandez and they are talking about his passport.  We have no idea what that's about.  When they are talking about the copies and the videos, we have no idea what that's about. That's just a bold -- a bold statement in the -- in the conversation without anything to add to it.

And for all these reasons, it is -- this conversation

is just not work product, Your Honor.

(Pause in proceedings.)

MR. BERRIO:  Your Honor, my -- my client -- what these communications -- if this gets to the case team, it -- apparently it would help them with -- with facts that he does know Maikel and Monica.  So the whole purpose here is to try to prevent the Government from gaining this knowledge, and opposing counsel to gain this knowledge that it could use against my client in this case.  And --

THE COURT:  How have you established that this communication was in -- is -- was in anticipation of your client being in litigation?

MR. BERRIO:  Ah, he, ah -- he knows about Monica and -- and Maikel.  He knows that they had their issues regarding an incident that occurred in Mexico in Mérida in January 2019.  He --

THE COURT:  What incident?

MR. BERRIO:  The one that you spoke about earlier where he -- they were sentenced to 75 years and 40 years.

THE COURT:  So he knows -- he knows about something for which these two folks were sentenced?

MR. BERRIO:  That -- that the Government here is implicating him in, that activity as well in a conspiracy charge.

THE COURT:  And back then when he is communicating

with this lawyer he's anticipating that he will similarly be charged?

MR. BERRIO:  Yes.

THE COURT:  And how do we know that?

MR. BERRIO:  Because he's trying to obtain this information.

THE COURT:  Well, we -- but you are assuming that he is trying to obtain this information for his own defense as opposed to idle curiosity?  It is your burden to establish that.

MR. BERRIO:  It is.  And we'll prepare an affidavit right now for him to sign.

THE COURT:  Or he can testify to that.

MR. BERRIO:  And I prefer him not to testify and just limit it to a specific affidavit that he was gathering these documents anticipating that he may be charged with this type of activity.

THE COURT:  Okay.  So at present we don't have --

MR. BERRIO:  As he was.

THE COURT:  We have your attorney argument that that's what this was for, but we don't have any basis to know that what he is seeking in these conversations regarding these two other folks is in anticipation of his own case being filed against him here in the United States.

MR. BERRIO:  Yes.

THE COURT:  Or some other case in Mexico.

MR. BERRIO:  Yes, Your Honor.

THE COURT:  Right.  We don't know that.  You are saying that.

MR. BERRIO:  Yes, Your Honor.

THE COURT:  And you don't want him to testify to that but you are willing to have him prepare an affidavit that would say that.

MR. BERRIO:  I could prepare an affidavit to that affect.

THE COURT:  Would that be acceptable, Mr. Davis?

MR. DAVIS:  I would like to cross-examine him, Your Honor.

THE COURT:  So why don't we take a ten-minute break and you discuss with Mr. Davis how you want to proceed, because at this rate --

MR. BERRIO:  I don't think he is entitled to cross-examine him because under the -- under the rules, they say that this could be established by affidavit and it -- it talks -- it discusses that many times, where a lot of times these burdens are satisfied by affidavit.  It doesn't --

THE COURT:  That is unassailable?

MR. BERRIO:  Excuse me?

THE COURT:  An affidavit that is unassailable that the Government cannot challenge?

MR. BERRIO:  I didn't come across -- well, they can challenge the affidavit but not cross-examine him.

THE COURT:  Not cross-examine the affiant.

Mr. Davis, are you aware?

MR. DAVIS:  I am not, Your Honor.

THE COURT:  Okay.  Let's have you both discuss this matter and enlighten me when I come back, please.

MR. BERRIO:  Okay.

THE COURT:  Thank you.

COURT SECURITY OFFICER:  All rise.

(A recess was taken from 2:22 p.m. to 2:34 p.m.)

COURT SECURITY OFFICER:  All rise.

THE COURT:  Please be seated.  Thank you.

As I see it, the fundamental question here is whether these communications were in anticipation of litigation, and you need to make that showing, Mr. Berrio, before we go on to the other steps of the inquiry, whether there is relevance to the communications, whether the Government can show that it has no other means available to obtain the information and needs it for its case.

So let's address the first prong and -- and perhaps go back to some of my rulings on your earlier documents.

You need to make the showing, and -- and your showing isn't made with attorney argument.

MR. BERRIO:  I understand, Your Honor.  He -- he is

not going to give a statement, subject himself to cross-examination under oath.  He's elected not to do that.

THE COURT:  So how do -- how do you sustain your burden?

MR. BERRIO:  So we'll, you know, we are not going to dispute that we can't carry the burden.

THE COURT:  All right.  So --

MR. BERRIO:  So then --

THE COURT:  If that's the case, what do you -- what rulings do you need from me on these -- on these records?

MR. BERRIO:  Well, these -- these attorneys were not his -- his attorneys.  They were other attorneys for other people that he was communicating with.  There are other -- other files in there, other documents where he is communicating with one of his attorneys in Spain.

THE COURT:  Okay.  What do you need my ruling on, because if -- if you are conceding that you don't carry your burden of privilege, work product privilege because you don't want your client or someone else to testify that these communications were in anticipation of litigation, what is left for me to do for the parties here?

MR. BERRIO:  Your Honor, with regard to -- Scott -- Mr. Kalisch is -- is relevant in some of these, perhaps he could testify in terms of why he was communicating with my client.  Mr. Kalisch previously represented Mr. Gonzalez Vidal

on another matter, many years ago.  And Mr. Gonzalez Vidal would reach out to Mr. Kalisch for legal advice here and there. Perhaps through Mr. Kalisch we could establish for some of these communications that apply to Mr. Kalisch.

THE COURT:  All right.  But for those, is there anything -- in other words, we have the afternoon set aside to address the universe of documents that the filter team has been reviewing and for which you have claimed privilege.  You are now withdrawing your claim of privilege as to most of these records except for some small category as to which you think you can sustain your burden of proof through the testimony of Mr. Kalisch; is that right?

MR. BERRIO:  Mr. Kalisch, there is also the documents themselves with regard to Chabaneix, who is one of the attorneys that we haven't come across.  I believe they are self-evident in there.  The -- the chat itself shows --

THE COURT:  So what -- what do you want me to rule on? Be concrete.

MR. BERRIO:  Okay.  I want you to rule on the matters having to do with Scott Kalisch, which are not ripe at this time because Mr. Kalisch is not here.

THE COURT:  His flight was delayed.  He is running late.  So assuming we get him here and we address the matters that pertains to him, what else remains?

MR. BERRIO:  The matters -- marital privilege claim.

THE COURT:  All right.

MR. BERRIO:  And I have the case law on that.  Well, what I would be relying on.  And that there is a presumption that --

THE COURT:  I'm sorry?

MR. BERRIO:  There is a presumption that there is -- in favor of marital privilege, and I have the three prongs pursuant to a case out of New York that I could cite what I would submit the burden is.

THE COURT:  All right.  What is it?

MR. BERRIO:  It's In re:  Reserve Funds Secretary and Derivative Litigation vs. Reserve Management Company 275 F.R.D. 154, and that's United States District Court Southern District of New York, May 23rd, 2011.

THE COURT:  Hold on.

(Pause in proceedings.)

THE COURT:  All right. Go ahead.

MR. BERRIO:  Your Honor, it's -- the marital communication privilege protect private and confidential communication between spouses from disclosure.  It provides that --

THE COURT:  Communications, right?

MR. BERRIO:  Yes.  It provides that communication between the spouses privately made or generally assumed to have been intended to be confidential, and hence they are

privileged.  There are three prerequisites for assertion of the marital communications privilege.  A valid marriage at the time of the communication.  The privilege applies only to utterances or expressions intended by one spouse to convey a message to the other and the communication must have been in confidence, which is presumed.

So I believe we are able to satisfy these -- these three prerequisites in terms a valid marriage did -- did exist. I provided Mr. -- Mr. Davis with a certificate of marriage, which I don't believe he disputes or he -- I believe he accepts for when the marriage occurred of Mr. Gonzalez Vidal and his wife, Maria Alejandra Gonzales Coral.  It apply -- the privilege applies only to utterances or expressions, and I submit that a photograph is an expression, it is a self -- it is a form of self-expression, and -- and it conveys a message to the other spouse.  And I believe these photos -- these photos of nude individuals convey an expression to -- to one another, and they were in -- in confidence, and so I believe it is presumed.  So I would submit that the four photographs are -- are privileged.

(Pause in proceedings.)

THE COURT:  Thank you.  And Mr. Davis, it is your opinion and your argument that visual depictions are not communications for purposes of the marital privilege, and what authority is there for that?

MR. DAVIS:  My authority -- my authority -- well, first of all, let me start off that if the pictures were contained in a text message, for instance, there is a text message sending the pictures or if there is a WhatsApp chat that includes the pictures between husband and wife, then -- then I would agree they are privileged.  We don't have that here.

When the pictures are standalone, when they are stored on a phone somewhere, they are not a communication, they are just simply a photograph or a document.  That's not a commune -- that's no longer communication.  It's something -- it's like a picture on a wall.  And there is just not a -- it's -- like -- like I said, it is like a picture on a wall.

And so I think that when it's stored on the phone separate and apart from a text communication, it -- or any form of communication, it loses its communicative value.  It's just a picture.  And we don't -- the pictures here in this case are simply just pictures.  Mr. Berrio has not shown that they are attached to text messages.  And so we don't know how the Defendant got them.  We assumed he may have gotten them from his wife, but we don't -- we don't have those communications.  And so --

THE COURT:  So you are -- you're challenging whether the communications were between spouses as well?

MR. DAVIS:  I'm going -- I don't -- I would -- I don't

know if she took them.  I am going to guess by the nature of them that she probably took the pictures of herself and he took pictures of himself.  I'm not -- but we just don't have them in communications.  They are just stored images.  And for that reason, I don't think they are privileged.

THE COURT:  Mr. Berrio.

MR. BERRIO:  Your Honor, I don't think they are standalone photos.  Mr. -- they were in different places.  They exchanged them to each other via text.

THE COURT:  Do we know who the sender is?

MR. BERRIO:  Your Honor, the sender would be -- looking at the pictures themselves, it's evidence that this is like a selfie, a selfie that they are taking --

THE COURT:  Again, my question --

MR. BERRIO:  Yes, Your Honor.

THE COURT:  -- is:  Do we know who the sender is?

MR. BERRIO:  Yes.

THE COURT:  Well, who is the sender?

MR. BERRIO:  The sender is Mr. Gonzalez sending a picture of himself to his wife, and the sender is Ms. Gonzalez sending a picture of herself to her husband.  Those are the senders.  They're selfies.

THE COURT:  So you're -- Mr. Davis, you have no concerns that the senders and the recipients are, in fact, the husband and the wife?

MR. DAVIS:  I -- we -- I don't have any concerns that the people who took the pictures that they are selfies, but as far as how they got on the phones, we don't have that -- we don't have that evidence.  But regardless of how they got on the Defendant's phone, once they are stripped from the message themselves and they're stored independently, they cease to be a communication, they are just a photo.

THE COURT:  Okay.  I'm sorry, perhaps I am not being clear.  Are we satisfied that these photographs, the sender and the recipient are husband and wife?  Yes or no?

MR. DAVIS:  I would say, Your Honor, by preponderance of the evidence I can't -- I can't offer any other -- I can't offer any other -- you know, other reasonable conclusion.  So I do think that's prob -- probably more likely than not, Your Honor.

THE COURT:  So the problem the Government has is that there is no communication via words that accompanies these photographs?

MR. DAVIS:  Or just a simple -- any sort of --

THE COURT:  Even an emoji?

MR. DAVIS:  Not even -- it doesn't have to be an emoji.  It is not with -- contained in a communication.  It's just -- it's just an image.  It's just an image.  For instance, we don't have a text message that has the photo as an attachment.  We don't have a WhatsApp communication between the

Defendant and his wife showing them as an attachment.  And we also don't have proof that at the time of the -- of whenever these photos were sent that the marriage was valid.  We don't know when these photos were taken.  We don't know when these photos were --

THE COURT:  Okay.  So -- so let me go back.  You are, in fact, challenging --

MR. DAVIS:  Uh-huh.

THE COURT:  -- the first element --

MR. DAVIS:  I'm sorry.

THE COURT:  -- that Mr. Berrio needs to satisfy, that these photographs were sent to the Defendant at a time when he was married --

MR. DAVIS:  Yes.

THE COURT:  -- to his current wife?

MR. DAVIS:  Yes.  I am not -- I am not doubting that they are -- actually, now that I am thinking about it, we don't even know who the person is in the pictures.  I mean, it's -- it is so close up.  I mean, we are making these assumptions, Your Honor.

THE COURT:  Right.

MR. DAVIS:  I mean, I don't think it is unreasonable to guess that it may be husband and wife.

THE COURT:  So a simple testimony by the wife, who has been here before, saying I -- I am in those photographs, he is

in those photographs and we exchanged those photographs during our marriage would suffice; is that right?

MR. DAVIS:  If they were part of communications.

THE COURT:  Right.  Well, it would suffice as to the first element.

MR. DAVIS:  Yes.

THE COURT:  Then -- then we get to the question of whether they are communications.

MR. DAVIS:  Exactly.

THE COURT:  And then she could testify that they were intended as communication, which would satisfy the privilege. And she could explain why these provocative photographs between them were intended as communications.

MR. DAVIS:  Yes, if that's -- if she could so testify to that.

THE COURT:  Right.

Okay.  Mr. Berrio, there is one way that you can meet your burden.

MR. BERRIO:  I can submit an affidavit, Your Honor, to that affect.

THE COURT:  Well, but then -- then the Government -- again, you are saying the Government -- the Government and I both have to accept at face value what it is you've written in the affidavit that she puts her signature to, right?

MR. BERRIO:  Understood, Your Honor.  But then the

Government would want to cross-examine her, I guess?

THE COURT:  Yeah, they would cross-examine her.  Yeah.  How were they intended as communications?  How did you know this was intended as a communication?  Did you -- did you folks communicate in that way previously?  Is this the way you folks like to communicate, not using words but provocative photographs of each other, in -- in states of undress?  And have her to testify to that.

That does not implicate your client's fifth amendment privilege at all, but it certainly satisfies your burden because the marital communication privilege certainly extends to words but it also extends to acts that are intended as communications.  And the act of sending a provocative visual image of one's body to one's spouse may be intended to be a communication, but you need to have somebody tell us that, right?

MR. BERRIO:  Understood.

THE COURT:  I need to know that they were sent while they were married, not at some prior occasion when they were boyfriend and girlfriend.  So you -- you haven't met your burden; is that right?

MR. BERRIO:  Yes.

THE COURT:  Okay.  So is there any other document or area that you would like me to give a ruling on where you think you have met your burden?

MR. BERRIO:  The Chabaneix matter.  Chabaneix is an -- is an attorney in Spain that represented Mr. Gonzalez Vidal and he gathered all the documents for Mr. Gonzalez Vidal in anticipation of litigation.  And he even scribbled some notes, his notes on these documents, and it's No. 14.

The first document, I would say, is No. 14.  And that document, on the first page it reflects that it's from Mr. Jose Miguel Gonzalez Vidal and then the attorney, Luis Chabaneix.  And then on the second page is -- there are notes.  And there are communications.  And then it's a long file, it's many pages.  And then -- then in the back, the last page, it says that it was prepared for Mr. Chabaneix on behalf of Mr. Vidal, Gonzalez Vidal.  And I will try to point out that specific page.

The page before, the next document, which is 15 -- and Your Honor, I would submit that this is protected by attorney/client privilege and work product.  And then it's just documenting that on -- in Madrid on July --

THE COURT:  I'm sorry, did you want a ruling on 14 before we turned to 15?

MR. BERRIO:  Well, we are skipping many -- I thought Your Honor would like to go just to the ones that we are going to proceed and -- and assert the privilege, the other ones --

THE COURT:  What I wanted to do with the time we have before Mr. Kalisch arrives is to have you tell me what you're

prepared to address and obtain definitive rulings on because you are abandoning certain claims of privilege and I don't know as to which documents you are not abandoning your claims of privilege.

THE COURT: I'm sorry, repeat yourself.

MR. BERRIO: Well, I went to 14 because that's the first one that I want to not abandon the claim of privilege to, that's why.

THE COURT: I'm sorry, repeat yourself.

MR. BERRIO: You just -- you instructed me to go to the ones you wanted me to address.

THE COURT: The ones that you are prepared to address and that you think you satisfy your burden --

MR. BERRIO: Yes.

THE COURT: -- on.

MR. BERRIO: And that's why I went to 14.

THE COURT: 14? All right.

MR. BERRIO: Yes.

THE COURT: Mr. Davis, 14.

MR. DAVIS: Yes. 14 appears to be a -- first of all, Defendant has not met his burden as to 14. 14, on its face, appears to be a court or judicial file maintained by the Government of Spain. And the documents on the inside of 14 all appear to be doc -- at least on their face, documents created by one or more arms of the Government of Spain. And it appears that they were all, based upon the last page, it appears that

they were all copied by somebody in the Spanish court system at the request of Mr. Chabaneix.

This is just a simple document request.  It is not work product in any way.  None of the documents are documents that Mr. Chabaneix created.  They were created by other sources and --

THE COURT:  Well, they can be created by other sources but if they were gathered together by Mr. Chabaneix in anticipation of litigation, then they might qualify as fact work product, right?

MR. DAVIS:  Maybe.  I mean, maybe.  But it's not --

THE COURT:  We don't know why he was gathering them.

MR. DAVIS:  We don't know why he is gathering them.

THE COURT:  Right.

MR. DAVIS:  We don't know why he is gathering them. We don't know how unique these documents are.  We don't know if this is just simply like giving a defendant a court file.  We don't know what Mr. Chabaneix intends to do with these documents on behalf of the defendant.  So it is all supposition, Your Honor.

THE COURT:  Well, do we know that it was this Defendant who asked Mr. Chabaneix to obtain these Spanish records?

MR. DAVIS:  We do not.  I know that Mr. Berrio has made that claim.

THE COURT:  Right.  But we don't have the -- the initial --

MR. DAVIS:  Sure.

THE COURT:  -- the predicate, which is, I, Mr. Gonzalez Vidal, asked Mr. Chabaneix to obtain these records in anticipation of perhaps being criminally charged for similar conduct.  That's what you need to establish.

MR. BERRIO:  Sure.

THE COURT:  Mr. Berrio, have you established that?

MR. BERRIO:  I believe if you go to the document before 15, the last page before 15.

THE COURT:  I'm sorry, which -- which document?

MR. BERRIO:  The page, the last page of No. 14.

THE COURT:  Yes.

MR. BERRIO:  Which is before 15.

THE COURT:  Yes.

MR. BERRIO:  Yeah, I believe it documents.  These were gathered by Mr. Chabaneix on behalf of Mr. Gonzalez Vidal in anticipation of litigation.  It is in Spanish, and it says in Madrid 26, July, 2019 I extend the administer of justice.

THE COURT:  It doesn't say that Mr. Chab -- Chabaneix, C-H-A-B-A-N-E-I-X, asked --

MR. BERRIO:  It says, (Speaking in Spanish: Que solicita/que so li sita).  And I will submit --

THE COURT:  No Spanish, no Spanish, Mr. Berrio,

please.

MR. BERRIO:  And I would submit --

THE COURT:  Mr. Berrio, please, no Spanish because my court reporter can't take that down.

So it says here in Madrid, July 26th, 2019, the administration of justice lets it be known that the secretary, Miguel Gálvez Covloski, in the company of Luis Chabaneix, who has asked to obtain copies of the present proceedings.  Also, the tribunal role as instructed in the central instruction judgment.  It doesn't say anything about your client asking for these.

MR. BERRIO:  He requested this on behalf of my client. He was --

THE COURT:  Where is that?  Where is that?

MR. BERRIO:  He represents my client, Your Honor.

THE COURT:  Where is that?  It's your burden.  And he's -- it's your burden to show that Mr. Chabaneix has asked Mr. Covloski for these records back in July of 2019 in anticipation of your client being criminally charged or sued.

MR. BERRIO:  Mr. Covloski is actually his associate.

THE COURT:  I'm sorry?

MR. BERRIO:  He is not requesting it from Mr. Covloski.  They are both together on behalf --

THE COURT:  Right, they are both together.  And there is no reference to your client asking for any of this in

anticipation of litigation.

MR. BERRIO:  If you look at the first page, Your Honor.

THE COURT:  Of -- of Exhibit 14?

MR. BERRIO:  Yes.

THE COURT:  Just one second.

(Pause in proceedings.)

THE COURT:  It's really hard to find the first page and last page because you never put dividers in the binder.

MR. BERRIO:  Yes.

THE COURT:  Mr. Davis, do you know what the first page refers to?

MR. DAVIS:  It is.

THE COURT:  I'm sorry.

MR. DAVIS:  The first page is the -- I guess the -- the cover of the file, Your Honor.  If I could just -- if I could just walk up to the --

THE COURT:  Can you find the first page for me?  I have the last page but not the first one.

(Pause in proceedings.)

THE COURT:  Mr. Berrio, you could find it more quickly since you put this binder together.

(Pause in proceedings.)

MR. DAVIS:  It's the 64-page document, Your Honor, but I am just trying to --

THE COURT:  Um-hmm.

MR. DAVIS:  -- find the start page just by feel.  Here we go.

THE COURT:  Great.

MR. DAVIS:  Got it.

THE COURT:  Thank you.

MR. DAVIS:  I am just going to turn this over to you.

THE COURT:  Thank you.

All right.

I'm sorry, how does this -- how does this first page reveal that this document as being obtained at your client's request or for him in anticipation of litigation?

MR. BERRIO:  For him, I believe it shows that it's -- it's for -- it's about Mr. Jose Miguel Gonzalez Vidal, so it's his actual file.  And then it says who his attorney is, Luis Chabaneix down on the right-hand side.  So it is my client's actual file for an attorney that actually represents him.  And the attorney is putting this together in anticipation of litigation for my client.

THE COURT:  In anticipation of -- of any litigation or the litigation in Spain?

MR. BERRIO:  Any litigation.

THE COURT:  Any litigation.  And how do we know that?

MR. BERRIO:  Because he is putting the file together so he could -- so he could see what the case is about.  He's

gathering these documents so he can represent my client, his client at that time.  That's why he's gathering the documents.  And so I submit that they are work product.

And then on the last page, the last page before 15, the lady -- what you read before, the lady is certificating that she has provided these documents because Mr. Chabaneix requested them.

THE COURT:  All right.

Mr. Davis?

MR. DAVIS:  Yes.  This is once again Mr. Berrio's supposition.  On its face, these all appear to be -- without -- pardon me, without any additional testimony, these documents all appear to be documents relating to an extradition of the Defendant within a court file in Spain.  There is no testimony or other -- or anything else that would support an inference that these documents were collected by Mr. Chabaneix in anticipation of any litigation ongoing or future.  They are simply court documents, Your Honor.

THE COURT:  Mr. Chabaneix was representing the Defendant in Spain while he was being detained and awaiting extradition; is that what you are saying?

MR. BERRIO:  Yes, Your Honor.

MR. DAVIS:  Yes, I -- I do not disagree with that, Your Honor.

THE COURT:  Right.  And so these are documents

pertaining to the very proceedings that he is counselled on, right?

MR. BERRIO:  Yes.  Yes, Your Honor.

MR. DAVIS:  Yes.  But it's still -- it is not work product, Your Honor, it is just the court file.  It is not Mr. Chabaneix's work product.  It is simply sending somebody down to the court to pick up -- to pick up the court file.

THE COURT:  Right.  But it is fact work product, right?  It's the information Mr. Chabaneix put together in -- in the course of his representation of the Defendant in legal proceedings in Spain.

MR. DAVIS:  It's not the facts that Mr. Chabaneix developed.

THE COURT:  They don't have to be facts developed by the lawyer, though, under the rule, do they?

MR. DAVIS:  They don't have to be facts necessarily developed by the lawyer or -- but -- but at the very least the documents have to be part of the body of facts that the lawyer is attempting to develop.

THE COURT:  I think it is broader than that.  Fact work product.

(Pause in the proceedings.)

THE COURT:  So the first hurdle of course is for Mr. Berrio to demonstrate the document, in this case, Document 14, was prepared in anticipation of litigation.  And I think in

anticipation of litigation covers existing litigation as well, and in this case, those Spanish extradition proceedings.

MR. DAVIS:  I would agree on that -- with that, Your Honor.

THE COURT:  All right and so at this point, I believe Mr. Berrio has satisfied his burden.  The next step of course is for the Government here to satisfy me that the materials sought are relevant.

MR. DAVIS:  And that's unfortunately something that I -- that I'm not in a position to do, Your Honor.

THE COURT:  Right.

MR. DAVIS:  And that's because of -- because of my position --

THE COURT:  Correct.

MR. DAVIS:  -- in this litigation.

THE COURT:  So --

MR. DAVIS:  And so I -- and so I think then that basically -- that basically takes the Court to the next step, I can't meet a burden because I don't have the facts.

THE COURT:  Correct.  And so in this case, I would agree with Mr. Berrio that the work product privilege protects these documents, document Exhibit 14 from disclosure.

MR. DAVIS:  And if that's the case, Your Honor, I think the Court's ruling would necessarily be the same as to Document 15.

THE COURT:  Yes, it would be.

MR. DAVIS:  Your Honor, before we go forward, I just want to ask a few housekeeping questions to make certain that we have the record in order.  It's my understanding that Mr. Berrio is relinquishing his privilege claims as to Document -- what he submitted as Documents 1 through 13, and he's starting with No. 14 now; is that correct?

MR. BERRIO:  The one that we ended on, on 5 -- we ended on 5, where the judge had ruled on.  And then 6 through -- through 4 -- 6 through 13, I'm renouncing the privilege.  So we would go with the Judge's rulings on the first five, I believe, and then from 6 through 14, 14 would be the next one that I --

MR. DAVIS:  6 through -- it would be 6 through 13 you'd be renouncing.

MR. BERRIO:  Yes.

MR. DAVIS:  And 6 -- and -- and 14 would be the first one as to which you would be asserting privilege now; is that correct?

MR. BERRIO:  Well, I asserted privilege in 1 through 5.

MR. DAVIS:  Sure.

MR. BERRIO:  But now --

THE COURT:  Except, but in truth you didn't meet your burden as to 1 through 5 either.

MR. BERRIO:  And so that was -- your ruling.

THE COURT:  Right.

MR. BERRIO:  So now on 6 through 13 I am withdrawing --

THE COURT:  Right.

MR. BERRIO:  -- based on your prior ruling --

THE COURT:  Right.

MR. BERRIO:  -- I didn't think I could satisfy my burden.  I don't want to waste the Court's time anymore than necessary.  So I'm going to 14 and 15.  And now the -- the photographs of -- the marital photographs --

THE COURT:  Which you haven't sustained your burden on either.

MR. BERRIO:  So --

THE COURT:  It is a simple matter, just bring the wife in and have her testify.

MR. BERRIO:  If Your Honor would --

THE COURT:  In the fashion in which I suggested; we were married at the time, they were meant as communications and so forth.

MR. BERRIO:  If we could do it on another date, I would appreciate it.  I am not ready to do that right now.

THE COURT:  All right.

MR. BERRIO:  So if you could reserve on -- on the four photographs.

THE COURT:  Yes.

MR. BERRIO:  Okay.  And then --

THE COURT:  Mr. Davis.

MR. DAVIS:  Yes, just -- I just want to make certain that we are clear as far as the numbers.  The four photographs, my understanding are Documents 18, 19, 20 and 21.  I just want to make certain that we -- that we keep our record -- keep your record as clear as possible, Your Honor.

THE COURT:  Right.

MR. BERRIO:  18 --

MR. DAVIS:  19 --

MR. BERRIO:  -- yes.

MR. DAVIS:  Yes.

MR. BERRIO:  19, yes.  20 and 21.

MR. DAVIS:  Your Honor, 17 is a lengthy sentencing -- for you to find -- for your assistance in finding 18, 17 --

THE COURT:  Oh, I found -- I found 18.  I had seen those before.  It's just where these documents break up, 16 and 17, it's hard to find.  So the problem with 18 again is we don't know who is depicted in the photograph, if it's the wife. And same thing for the other photos.  So she would have to testify that they were married at the time and that they are what they purport to be, photographs of the respected spouses' genitalia and so forth, and that they were intended as communications.

So I will reserve on those.  So we had covered 14 and

15, I think we need to cover 16 and 17.

MR. DAVIS:  Your Honor, 16 might be part of 14 or 15.

THE COURT:  Okay.

MR. DAVIS:  And it may be more efficient if Mr. Berrio at a later time can -- when the Court is not on the bench, if he could tell me where that document is, if he could show it to me and then I could relinquish any objection as to that, which would bring us to 17.

THE COURT:  All right.

MR. DAVIS:  And 7 -- before we get to 17, Your Honor, there is one other housekeeping matter I wanted to attend to. On Wednesday, I provided to the Court and Mr. Berrio a series of attachments.

THE COURT:  I found 17, by the way.  I'm sorry to interrupt, but I'm at 17 now.

MR. DAVIS:  Sure.

THE COURT:  I have the -- the documents you gave me last week, yes.

MR. DAVIS:  Yes.  And Mr. Berrio has agreed -- Mr. Berrio is stipulating to their authenticity.  And so I will offer them if in the event that we need to -- need to create a record.  I'm going to mark all the documents that are in connection with Defense Document 2 as Government's 2; all the ones in connection with 4 as Government's 4; all the ones in connection with 5 as Government's 5; and all the ones in

connection with Government -- with Defendant 6 as Government's 6.  So Government's Exhibits 2, 4, 5 and 6.

And with respect to those, Your Honor, I believe Mr. Berrio is agreeing that all the Bs within those exhibits, that is 2B, 4B, 5B and 6B are all complete PDF exports of the relevant chats.  I believe he is also agreeing that the -- all the C exhibits, the 5C -- pardon me, 2C, 4C and 5C and 6C are all complete transcripts and translations of the entire chats.  And that the D exhibits, that is 4D, 5D and 6D are either PDFs or image files that were -- that were attached as part of the chats.  And I just wanted to make certain that there is no -- that there is no dispute as to that.

THE COURT:  Mr. Berrio.

MR. BERRIO:  Yeah, the representation that they were attached to the -- to the chat, I have no dispute on that.

MR. DAVIS:  So I think when the Court's ready, that brings us to document 17.

THE COURT:  Right.  Okay.

Mr. Berrio, 17.

MR. BERRIO:  Yes, Your Honor, 17 is -- we are withdrawing the attorney/client privilege claim.  We would proceed under work product, and that the Government --

THE COURT:  These are official records from the court. It is an oral judgment reduced to writing.

MR. BERRIO:  And they were obtained -- gathered for

Mr. -- at Mr. Gonzalez Vidal's request.

THE COURT:  That we don't know.

MR. BERRIO:  We -- he -- he request -- this is part -- he requested them --

THE COURT:  If there is something that accompanies this that shows it, but right now I am just looking at -- literally, a -- in typical Spanish fashion, a very, very long judgment over a hundred-pages long.  And there is no preamble, there is no cover sheet from Mr. Chabaneix or anything like that.

MR. BERRIO:  No, it is not Mr. Chabaneix.

THE COURT:  Or whoever, some other lawyer.  And there is nothing here to suggest that this was compiled or gathered for purposes of his extradition proceedings or in anticipation of other litigation.

MR. BERRIO:  His -- well, I guess we would have to -- it is part of -- he requested the sentence, the sentence of Maikel and Monica.  He requested it from one of the attorneys, which was Chábel.

THE COURT:  Right.  But you haven't established that that request was in anticipation of litigation or for any -- any existing litigation as opposed to just idle curiosity, right?

MR. BERRIO:  Yes.

THE COURT:  And you don't want him to testify or fill

out an affidavit and be subject to cross-examination.  So this record would -- would similarly fail for that reason, right?

MR. BERRIO:  Understood.

THE COURT:  Because you are asking us to assume that he asked for this document or this -- this judgment reduced to writing in anticipation of litigation.

MR. BERRIO:  Yes, Your Honor.

MR. DAVIS:  So I believe since we've deferred 18 through 21, that would take us to 22.  Your Honor, could I have a five-minute break?

THE COURT:  Of course.  Sure, sure.

(Pause in proceedings.)

MR. DAVIS:  Thank you, Your Honor.

THE COURT:  Are we done with Document 17?

MR. BERRIO:  Yes, Your Honor, I believe so.  You -- you ruled.

THE COURT:  All right.  Document 18, we did that one already with the photographs through --

MR. BERRIO:  Yes, 18 through 21, I believe.

THE COURT:  We are now at 22.  Attorney/client and work product.

MR. BERRIO:  Yes, Your Honor, I am going to withdraw.

THE COURT:  Okay.  Where do you --

MR. BERRIO:  Withdraw the privilege claims.

THE COURT:  Where do you want us to pick up?

MR. BERRIO:  24.

THE COURT:  All right.

MR. DAVIS:  Does he -- are you withdrawing 23, Mr. Berrio?

MR. BERRIO:  Withdrawing 23.

THE COURT:  24.

MR. BERRIO:  24 is --

THE COURT:  It is just a bill for his legal services. I don't think that is privileged, is it?

MR. BERRIO:  Well, it talks about the concept, concepto.  Cancellation of international --

THE COURT:  Interpol detention order, right.  That's what the services were for.

MR. BERRIO:  Yeah.  So --

THE COURT:  So you want me to redact that but leave the -- the bill?

MR. BERRIO:  No, I want you to exclude it all.

THE COURT:  Well, I don't think a bill isn't protected it, is it?

MR. BERRIO:  If it's not, then I would just want the -- what is -- what I would --

THE COURT:  The services rendered?

MR. BERRIO:  Yes, please.

MR. DAVIS:  No objection.

THE COURT:  All right.  25.

MR. BERRIO:  Oh, and the -- the bank documents, the numbers, the banking numbers, if that could be redacted as well.

THE COURT:  Well, I don't think -- it is going to Government, right?  You are not concerned that the Government is going to --

MR. BERRIO:  Well, the least people --

THE COURT:  -- illegally withdraw funds from a Spanish bank account, do you?

MR. BERRIO:  The less people that could see it, the better it would be.

THE COURT:  Well, I don't -- I don't assume there are any funds left.  You are -- you are a CJA counsel, right?

MR. BERRIO:  I don't think so. I don't think there are any funds, but it --

THE COURT:  And if there are, I would like to know.

MR. BERRIO:  Well, I don't -- I have no knowledge of that and I doubt if there was any funds, but I didn't think it would be a big deal to withdraw that -- redact that as well.

MR. DAVIS:  It may be relevant, I don't want to redact something that doesn't need to be redacted, Your Honor.

THE COURT:  Right.  I don't see a reason to redact it.

Document 25.

MR. BERRIO:  25 is -- it is -- I would say that that's privileged.  It is a communication between Mr. Chabaneix and my

client where my client is providing him with his e-mail address.  I think the e-mail address would be privileged.

MR. DAVIS:  Your Honor, I have already indicated that I was going to -- I was not going to contest that.

THE COURT:  All right.

MR. BERRIO:  Okay.  So that's 20 -- 25, privileged. 24, redacted.  And then 26 are marital privileges, communications with the wife.  It says the dates, the communication, November 12th, 2020.

THE COURT:  When were they married?

MR. BERRIO:  Based on the certificate of marriage I have here, I believe it was in 2018.

MR. DAVIS:  Your Honor, may I expedite since -- if the Defendant's wife is coming in, assuming they are still married, she can just testify that they were married at this time and that the number was hers.

THE COURT:  All right.

MR. DAVIS:  And so as long as she does that, I'm not going to -- so long as she doesn't -- so long as she establishes that they were married at the time of the communications were with her, um, I'm not going to contest.  I may have some questions, but so long as that can be established, I wouldn't doubt -- I wouldn't contest otherwise that these were communications between spouses.

THE COURT:  That's also as to 27?

MR. DAVIS:  And 28.

THE COURT:  And 28.  All right.  Let me reserve on those.

MR. DAVIS:  I guess, Your Honor, you have reserved on 18 through 21, and 26 through 28.

MR. BERRIO:  So all that would be pending with Mr. Kalisch.

MR. DAVIS:  And you have granted as to 14 and 15, with respect to 16, I believe Mr. Berrio and I are going to confer and once he identify -- establishes to me that 16 came from either 14 or 15, you would be granting as to that.

THE COURT:  Right.

MR. DAVIS:  And -- and you have denied as to -- as to everything else -- pardon me, you have granted as to 25.  And you have granted only in part as to 24 to the extent that the Government needs to redact the services rendered.

Is that correct, Mr. Berrio?

MR. BERRIO:  That's what my notes show.

MR. DAVIS:  Is my recollection consistent with the Court's recollection, Your Honor?

THE COURT:  Yes.

MR. DAVIS:  So then I believe the only one that we are waiting for Mr. Kalisch on is -- on is for No. 6.

(Pause in proceedings.)

MR. DAVIS:  Your Honor, would you like me to step

outside and contact -- call Mr. Kalisch to find out when he may be arriving?

THE COURT: He was supposed to arrive around 3:30, so he might be arriving any minute now.

MR. DAVIS: Okay.

THE COURT: He was estimating arrival time at the courthouse from when his plane touched down, so I think he should be here shortly.

MR. DAVIS: Assuming his plane touched down.

THE COURT: That's right. Yes. We can take a 15-, 20-minute recess and -- and you all let us know when he's here and we can proceed.

MR. DAVIS: Sure.

THE COURT: Is that good?

MR. BERRIO: Yes, Your Honor. Your Honor, may I address a couple of -- of matters --

THE COURT: Sure.

MR. BERRIO: -- with regards to the wife. Can -- can we address that at some other time when she's in the building, maybe for a status conference, or something of that nature? She has two minor children. When -- when was Your Honor thinking of maybe addressing that?

THE COURT: I didn't have a date in mind.

MR. BERRIO: Okay. So is it possible that we do it at the next status when she is here, because she comes -- so

Mr. Gonzalez doesn't need to -- to be here tomorrow for that or?

THE COURT:  Let me see.  Let me just double check.

(Pause in proceedings.)

MR. DAVIS:  I think our next status conference is on Wednesday, the 16th, Your Honor.

THE COURT:  All right.

MR. DAVIS:  That's next -- that's next week.

THE COURT:  Next Wednesday.

MR. DAVIS:  Yes.

THE COURT:  Is that a better time for her then --

MR. BERRIO:  I think so, Your Honor, yes.

THE COURT:  Okay.  So we will put that on the calendar for that status as well, to address that.

MR. BERRIO:  The 16th.  And -- and if we could resolve Mr. Kalisch's matter, I think we are done with this.

THE COURT:  Right.  As soon as he gets here we can do that.

MR. BERRIO:  And, Your Honor, with regards to the separation order, Mr. Vazquez indicated that the separation order would be lifted, and it's my understanding that it hasn't been lifted.

THE COURT:  Mr. Vazquez said they would communicate what it is they needed to communicate on the Government's end. I have no control over whether FDC implements that or not.  But

I don't know if the Government has sent that communication either, so perhaps you might want to check with Mr. Vazquez.

MR. BERRIO:  Will do.

THE COURT:  Yep.

MR. DAVIS:  Your Honor, we are set to start at 4 o'clock for the status conference on Wednesday.  Does the Court want to hear from the Defendant's wife before or after the status conference?

THE COURT:  It might make it easier to have us address that first so you don't have to wait for the entire proceedings, Mr. Davis.  So why don't we address it as soon as she is here, take that up.

MR. DAVIS:  Do we want to start at 3:30, then?

THE COURT:  Oh, probably not.  I'm probably in trial.

MR. DAVIS:  Okay.

THE COURT:  So I would rather start it at 4.  If I'm not in trial, then we will certainly advance it, but I think I am going to be in trial.  I have a calendar call tomorrow.

MR. BERRIO:  You are scheduled to start a trial, Your Honor.

THE COURT:  I'm sorry?

MR. BERRIO:  You are scheduled for trial.

THE COURT:  I am scheduled to start a criminal trial next Monday, yeah.

MR. BERRIO:  So we'll -- so 4 p.m. or?

THE COURT:  4 p.m., unless -- as I say, unless -- if we are not, then I would advance it, make it earlier like I did this last week.

MR. BERRIO:  Okay.  Thank you, Your Honor.

THE COURT:  I am trying to do it at 4 p.m. to keep the trial going and just let a jury get out early, but not too early.  Okay.

MR. DAVIS:  Shall we take a 15-minute recess?

THE COURT:  Let's do that.  Thank you.

COURT SECURITY OFFICER:  All rise.

(A recess was taken from 3:36 p.m. to 4:13 p.m.)

COURT SECURITY OFFICER:  All rise.

THE COURT:  Please be seated.

Mr. Kalisch, good afternoon and welcome.

MR. KALISCH:  Your Honor, I apologize for being late.

THE COURT:  That's all right.  So we have some documents that Mr. Berrio and Mr. Davis wanted to address in your presence.

Mr. Berrio.

MR. BERRIO:  Yes, Your Honor.  Well --

THE COURT:  We have Mr. Crespo Marquez here as well. Good afternoon.

MR. KALISCH:  Good afternoon.

MR. BERRIO:  Yes, so Document 6, which is attorney/client privilege between Mr. Gonzalez Vidal.

MR. KALISCH:  And Mr. Kalisch.

MR. BERRIO:  We're asserting attorney/client privilege.

THE COURT:  I'm sorry.  Was Mr. Kalisch Mr. Gonzalez Vidal's attorney?

MR. BERRIO:  In the past.  In the past, many years ago.  And it's my understanding that Mr. Gonzalez Vidal would reach out to him regularly or when he had matters pending.  And in this particular situation, he reached out to him in November, 2020 and he communicated with him.  And they did speak about Mr. Marquez, spoke about Mr. Marquez.  And Mr. -- it is advised that he represented Mr. Marquez -- that he was representing Mr. Marquez in -- in three cases he had.

But they were going back and forth regarding how they could assist each other in representations.  So I believe it -- it's covered by work product.  And even though Mr. Kalisch does not represent Mr. Gonzalez Vidal at this -- back then, it wasn't known whether Mr. Kalisch could represent Mr. Gonzalez Vidal even though he already represented Mr. Marquez.  There are cases where one attorney can represent two -- two individuals.  So Mr. Gonzalez Vidal was looking to Mr. Kalisch for guidance, and I would submit that those communications are privileged and should not be produced to the team.

MR. KALISCH:  That's correct, Your Honor.

THE COURT:  Mr. Kalisch, please cover your nose and

mouth.  Thank you.

MR. KALISCH:  That's correct, Your Honor.  I have read the transcript of my conversation with Mr. Gonzalez Vidal.  I am looking for it now, but I remember it clearly.  I -- the purpose of the conversation was because Mr. Marquez had spoken to me, I would contend in a privileged conversation between myself and Mr. Marquez regarding his defense.  And as a consequence of that conversation, I spoke to Mr. Vidal, who called me.  At times we weren't able to contact directly, but --

THE COURT:  Mr. Kalisch, I'm sorry, could you sit down and speak into the microphone, please?  I am having trouble hearing you.

MR. KALISCH:  So, Your Honor, as I was saying, Mr. Marquez spoke to me in a conversation which I consider to be privileged because it was in his own defense.  He asked me to find out what was going on in Mexico with -- well, I'm not -- I'm not going to go into what I spoke to him about because that's precisely what I claim is privileged.

THE COURT:  Can you cover your nose, please, with your face mask.

MR. KALISCH:  Okay.  So based on that conversation, I -- I had a conversation with Jose Miguel Vidal on the telephone.  It wasn't a long conversation.  It was a brief conversation.  He had been my client previously.  I wasn't

aware that I would not be his attorney.  There are instances in which an attorney can represent two defendants in the same case provided they waive the conflict.  So I wasn't publishing this to the world.

I was limiting -- limiting what I said to Mr. Miguel Vidal, and I said it so very carefully in my -- in my conversation with him I said, this is not to be disseminated to third parties or anybody else.  It may be that I represent you -- I didn't say that, but my thought process was that I had represented him before and I may represent him again.

So it comes under the joint defense privilege.  Joint defense privilege, and -- and counsel has cited a case in his memorandum.  And it's an interesting case.  I read it.  Just for the record, it's *In re Teleglobe* 493 F.3d at 366.

And it goes into some detail about what it means to have a joint defense privilege.  You are not -- you are not disseminating it to third parties or in most circumstances, it would be considered a waiver.  You're communicating with him under the strict parameters of the conversation you had with your client at the time.

So this case that is cited is in a corporate setting, Your Honor.  I've read it.  It is a very long case, very interesting case, and it touches on the issue of joint defense. A company that was in bankruptcy at the time, just to give you an overview, had asserted a privilege over a number of

documents.

During the course of the proceedings, they released the privilege.  They -- they didn't maintain the privilege.  I maintained the privilege.  So they released the privilege on these documents and the question was whether in communicating these items to counsel, as it were, it wasn't a party, it was counsel, the lower court held there was no privilege because they had communicated the substance of the conversation between counsel and his client.

The case went up on interlocutory appeal because they held there was no privilege, and they went into some detail about what it means to -- to assert a joint defense privilege.  They also touched on what it means to assert a -- a common defense privilege, I believe.  There is two different privileges.

The notable thing about the case is that there had been in this case a broad dissemination of the alleged privileged conversation to many parties, not just one.  There was a broad dissemination, which the court considered to be a waiver, because it was that broad.  My case is different.

I limit my -- my -- my -- my waiver, if I can use that -- I may use the word, to Mr. Jose Miguel Vidal, who I didn't know at the time would not be my client.  So as far as privilege is concerned, I do not believe, based on this case, that I have waived my privilege by speaking to Jose Miguel

Vidal on that telephone.  That's my position.

THE COURT:  Thank you.

Mr. Davis.

MR. DAVIS:  Mr. Gonzalez Vidal is not his client during the time of the communication.  Let's make that -- let's start off with that and let's make that clear.  The communication is not about the representation with -- it is not about a future representation of Mr. Gonzalez Vidal either.

The communication starts out on November 4th of 2020, where Mr. Gonzalez Vidal offered to send Mr. Kalisch a 3- to 4,000-page file from a case in Mexico.  As I outlined in the memorandum, it's pretty clear that the case in Mexico is the case about Maikel Antonio Reyes Echevarria.  And we know that because on November 12, Mr. Gonzalez Vidal sent to Mr. Kalisch the Facebook post or the Facebook news post about the sentence of Mr. Reyes Echevarria.  So that was the first conversation on November 4th, or the first audio message.

Then Mr. Gonzalez sent a second audio message, also on November 4th, in which he asked for the discovery materials in this case, here, the case in Miami, to be used by the defendants in Mexico in their defense.  So Mr. Gonzalez Vidal's request has nothing to do with any litigation for him, rather it is about protecting or assisting coconspirators in their litigation.  So there is no privilege.  No privilege established in any way at this point.

And the conversation goes back and forth with Mr. Kalisch telling Mr. Gonzalez Vidal not to send the file. It's going to be too big.  Not to send the 3- to 4,000-page file because it's going to be too big.  And then thereafter, Mr. Gonzalez Vidal continually requests from Mr. Kalisch to get the discovery material, and that continues from the middle of November all the way through November 20th.

And Mr. Kalisch then sends him the discovery material on November 21st.  And there is no mention in any of these conversations about a future case against Mr. Gonzalez Vidal. And Mr. Kalisch asked Mr. Gonzalez Vidal to be very discreet as -- and also tells him don't give them to anyone, this is something that you can't give to anyone, and I am telling you personally so that you don't get -- get careless about these things because for reasons that I can explain if you call me. Thank you.

This is not the type of conversation that somebody would have with a future client telling him, Hey, this is about your own case, be careful with it.  He's telling him for other reasons.  And I think we know what the reasons are, it is discovery material that he is not allowed to disseminate.

So there is really nothing about the representation of Gonzalez Vidal.  It is about for the use of the defendants in Mexico, or any other members of Mr. Gonzalez Vidal's organization in Mexico or in the United States.  There is no

joint defense because Mr. Gonzalez Vidal is not represented by anybody.  Joint defense is established by one lawyer to another lawyer.  Mr. Gonzalez Vidal does not have a lawyer that's communicating with Mr. Kalisch to set up a joint defense.

So we don't have any privileged flowing to Mr. Gonzalez Vidal.  And we don't have a joint defense.

THE COURT:  How about Mr. Kalisch's statement that he had represented Mr. Gonzalez Vidal in the past and he thought perhaps he might be representing him in this case, although he was already counsel for a codefendant?

MR. DAVIS:  There is nothing in the communication to validate that, nothing in the chat that confirms that.  Everything in the chat that we have is about the case in Mexico of the defendants in Mexico.  There is nothing to corroborate any sort of thoughts between the Defendant and Mr. Kalisch that this was about the representation of Mr. Gonzalez Vidal.

MR. KALISCH:  Well, Your Honor --

MR. DAVIS:  And if -- and if it had, we would have seen some in the chat.  And if we had, there wouldn't be a conversation in which Mr. Kalisch is very cryptically telling Mr. Gonzalez Vidal to be careful with these.  If Mr. Kalisch had represented Mr. Gonzalez Vidal in the past -- actually, I understand Mr. Kalisch did represent Mr. Gonzalez Vidal in the past.  And it's something that would presumably -- that they would have known between one another, is that when you have a

-- when I am giving you stuff in a criminal case, be careful with it because I am representing you.

And that's not the conversation here, Your Honor.  The conversation is a lot more cryptic and a lot more circumspect, and I believe has a little -- some overtones of consciousness of guilt.  So Mr. Kalisch's -- Mr. Kalisch's represent -- Mr. Kalisch's, I guess, insinuations of what this conversation was about are not supported by the conversation itself, Your Honor.

MR. KALISCH:  Your Honor --

(Pause in proceedings.)

THE COURT:  All right.  So Mr. Kalisch, I would need to have you placed under oath to testify about the attorney/client relationship you had with Mr. Vidal at the time of these communications, or that -- or that he would become a client.  He had been a client in the past, but I don't think that suffices.

Can you please use the face mask properly?  I don't want to keep asking you, but we cover noses and mouths with face masks in my courtroom so that we keep everybody safe including the wearer of the mask.

MR. KALISCH:  That's fine.  Thank you.

THE COURT:  So I would need to place you under oath because all I have heard thus far is attorney argument.

MR. KALISCH:  All right.

(Time 4:30 p.m.)

SCOTT T. KALISCH,

being first duly sworn testified as follows:

MR. KALISCH:  Yes.

THE COURT:  Please be seated.  So you understand what needs to be established for attorney/client privilege to arise. The first element is that the asserted holder of the privilege, that is Mr. Vidal, is or sought to become a client.

And what do you have to say about that at the time these communications are taking place?

MR. KALISCH:  I understood Jose Miguel Vidal to be a potential client.  I wasn't familiar with all of the facts of the case, but I do express in my conversation with Mr. Vidal the situation involving two individuals that were tried in Mexico who aren't part of this organization.  I warned him not to disseminate this information further than -- further than himself.

But by implication, I -- and the case law that opposing counsel cites does enter into a discussion about what it means explicitly to have this attorney/client privilege.  I thought at the time he may become a client.  We had a very good relationship in the past and he was talking to me about a subject that had a very -- had a potential to result in my having represented him here in Florida, although I wasn't aware that there was an arrest warrant out for him.

I certainly, as -- as an attorney, know that a -- a potential client is talking to me about matters that he may invoke under attorney/client privilege.  So I did have that understanding with him even, if I didn't state it directly.  The facts and circumstances surrounding my conversation with him certainly lends support to my thinking that there would be one in this case.

THE COURT:  At the time of this communication, were you already representing Mr. Marquez?

MR. KALISCH:  Yes.

THE COURT:  And did you in the course of this communication advise Mr. Vidal I represent someone as to whom there might be a conflict of interest in my representing you at the same time?

MR. KALISCH:  Yes.

THE COURT:  Where in this conversation do you say that?

MR. KALISCH:  Well, no -- well, I -- I mentioned Mr. Marquez.  And I remember saying that I was his attorney.

THE COURT:  Where?  Where in this conversation?

MR. KALISCH:  I say I represent him in three cases.

THE COURT:  Where?

MR. DAVIS:  Your Honor, that would be on the first page of the transcript, Page 2.  It's on November 4th at 11:53 p.m.

THE COURT:  Okay.  So in this message, Mr. Kalisch says the guy has three cases and I filed my notice of appearance in all of them, right?

MR. KALISCH:  Exactly.

THE COURT:  Okay.  I already got together with him to go over the case, the more recent one.  So -- so where in this conversation is there any communication about Mr. Vidal possibly becoming a client in this case as well?  I mean, is an attorney's subjective belief enough to create an attorney/client relationship?

MR. KALISCH:  Given -- given the facts and circumstances about my prior relationship, the fact that we were discussing matters having to do with this case involving Mr. Marquez would lead -- reasonably -- to a reasonable conclusion that we were -- we were contemplating, at least thinking, of my representing him in this case also, so that he would become familiar with the fact that I was representing Mr. Marquez.  I was speaking to him on instructions from Mr. Marquez.  There was a distinct possibility that I would represent him in addition to Mr. Marquez.

I think that is not stated explicitly, but it's -- the conversation, the tone of the conversation, I -- I understand Mr. -- Mr. Davis to -- to say that I speak cryptically, cryptically, which is sort of a -- I don't know.  We are talking about a privilege here.  We're not -- I'm not --

whether or not I speak cryptically or not, whether -- be that as it may, the tone and substance of the conversation clearly has to do with a future representation of Mr. Jose Miguel Vidal.

THE COURT:  Anything additional on this?

MR. DAVIS:  May I ask some questions, Your Honor?

THE COURT:  You may.

MR. DAVIS:  Okay.

Mr. Kalisch, you did not explicitly tell Mr. Gonzalez Vidal that you were representing him, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  You did not expressly tell him that he might need your representation, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  He did not expressly tell you that he wanted you to represent him, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  He did not ask about your representation of him, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  You did not discuss -- you did not discuss a retainer, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  Given that you had -- and given that you were already representing Mr. Crespo Marquez, if you were to

represent Mr. Gonzalez Vidal, you would have to discuss conflicts of interest, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  You didn't have that discussion with Mr. Gonzalez Vidal, did you?

MR. KALISCH:  No, I did not.

MR. DAVIS:  Pardon me?

MR. KALISCH:  No, I did not.

MR. DAVIS:  And you are -- and you had mentioned -- and at the time -- pardon me.  You sent Mr. Gonzalez Vidal three or four items, you e-mailed those to him, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  That was discovery that you had obtained from the Government in representation of Mr. Crespo Marquez, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  At the -- prior to the -- prior to you receiving that -- or prior to you sending that discovery to Mr. Marquez, the court had entered a protective order governing the disseminating of the discovery, right?

MR. KALISCH:  We're speaking about Mr. Vidal.  You said sending it to Mr. Marquez.  I sent it to Mr. Vidal.

MR. DAVIS:  Pardon me.  You were sending the discovery to Mr. Gonzalez Vidal, correct?

MR. KALISCH:  Yes.

MR. DAVIS:  And at the time -- at the time that you were sending the discovery to Mr. Gonzalez Vidal the court had already entered a protective order governing the dissemination of discovery in the case, correct?

MR. KALISCH:  That's correct.  The docket reflects that.

MR. DAVIS:  And the discovery that you sent to Mr. Gonzalez Vidal was discovery that was governed by that protective order, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  Okay.  That's all I have, Judge.

THE COURT:  Mr. Berrio, any additional arguments or questions of Mr. Kalisch?

MR. BERRIO:  Well, Your Honor, with regards to attorney/client privilege, no.  With regards to work product, I do have -- I know there was a -- if you would like me to go into the work product issue.  Okay.

Mr. Kalisch, Mr. Marquez asked you to communicate with Jose Miguel Gonzalez Vidal, to -- to prepare his case, his defense; is that correct?

MR. KALISCH:  I'm sorry, say it again.

MR. BERRIO:  Did Mr. Marquez ask you to communicate with Jose Miguel Gonzalez Vidal in -- in preparing his defense?

MR. KALISCH:  Yes.

MR. BERRIO:  And following his instructions, did you

reach out to Mr. Jose Miguel Gonzalez Vidal?

MR. KALISCH:  Yes.

MR. BERRIO:  And did you gather documents and paperwork in anticipation of litigation for Mr. Marquez's case?

MR. KALISCH:  Say that again.

MR. BERRIO:  In anticipation of litigation, did you exchange documents with Jose Miguel Gonzalez Vidal --

MR. KALISCH:  Yes.

MR. BERRIO: -- for the purpose of representing Mr. Marquez?

MR. KALISCH:  Yes.

MR. BERRIO:  Your Honor, I think there is an agency issue here, where he -- Mr. Kalisch is representing Mr. Marquez.  Mr. Marquez wants information from Mexico to aid his defense here, and Mr. Kalisch is following that protocol. So I believe there could be an agency where this -- this material is protected under work -- work product, even if Your Honor concludes that Mr. Kalisch was not being retained or that he wasn't going to be hired to represent Mr. Gonzalez Vidal.

And I submit that many times when -- when you first speak to a client, you don't know where that communication is going to go.  And I believe even the initial communications between an attorney and a perspective client are -- are governed, the actual existence of the -- of the representation does not have to be in writing.  It does not have to be an

agreement or a hand shake, it's just possibly in the future you may represent me, so I am looking to you for advice.  It might turn out that you don't represent the person down the road, but it is still privileged communications.

So I would submit that these communications are protected by work product and/or the attorney/client privilege.

MR. DAVIS:  May I ask some questions, Your Honor?

THE COURT:  Yes.

MR. DAVIS:  Mr. -- Mr. Kalisch, now, you recall that it was Mr. Gonzalez Vidal who asked you for the discovery information, correct?  At least, let me ask -- let me ask it in a different way.

In your WhatsApp chat with Mr. Gonzalez Vidal, he asked you to provide discovery information, to provide documents to him, correct?

MR. KALISCH:  I'm trying to think --

MR. DAVIS:  Let me ask --

MR. KALISCH:  He did ask that, but I'm not sure that that didn't derive from my conversation with Mr. Marquez.

MR. DAVIS:  Let me ask the question this way:  Isn't it true that on November 4th Mr. Gonzalez Vidal told you, Well, I already talked to Reynaldo and he said it was fine to ask you for it.  To -- to -- to send -- to hand over to the authorities here in Mexico.

MR. KALISCH:  Exactly.  And that's why I state that

that statement by Mr. Vidal you quote, that he's asking me, in fact, derived from Mr. Marquez.

MR. DAVIS:  Yes.  But he's asking -- it was Mr. Gonzalez Vidal who spoke to Mr. Marquez, correct?

MR. KALISCH:  I don't know that one way or another.

MR. DAVIS:  And isn't it true that on November 16th, Mr. Gonzalez Vidal texted you and said, quote, You haven't sent me what we agreed on, correct; isn't that what he told you?

MR. KALISCH:  Correct.

MR. DAVIS:  And Mr. Gonzalez Vidal, on November 17th, said, quote -- isn't it true he said to you, quote, Please.  I also need to help this friend from here, correct?

MR. KALISCH:  I don't remember saying that, but if it's there, I said it -- he said it.  I -- I -- yeah, I don't know if I paid much attention to that.

MR. DAVIS:  And -- and Mr. -- and isn't it true that after that you told him that what I see -- on November 17th, you told him, quote, What I see is in English, correct?

MR. KALISCH:  Yes, I remember saying that.

MR. DAVIS:  And Mr. Gonzalez Vidal said quote -- on the same day in response, quote, It does not -- it doesn't matter.  It can be translated, correct?

MR. KALISCH:  Right.

MR. DAVIS:  And then on November 17th, Mr. Gonzalez added, It's just so the lawyer knows if it will help us to

formally request the statements, correct?

MR. KALISCH:  Correct.

MR. DAVIS:  And then on November 20th, isn't it true that Mr. Gonzalez Vidal contacted you again and said, Good morning, Scott, how are you?  This is Jose Miguel.  So if you could finally send me that, please.

MR. KALISCH:  As I stated, at that point in our conversation I was -- I was acting on the basis of a conversation that I had had with my own client, Mr. Marquez.  And I did not exclude the possibility that I would also represent Mr. Miguel Gonzalez.

MR. DAVIS:  Okay.  That's all I have, Your Honor.

THE COURT:  So explain to me, Mr. Berrio, how this is work product on behalf of Vidal?

MR. BERRIO:  Mr. -- Mr. Vidal was anticipating litigation.  He was exchanging documents and having Mr. Kalisch gather documents.  He was gathering documents from Mr. Kalisch as well.  And -- and I believe it's protected on the work product because the proponent must prove that it anticipated litigation that each document or communication was created.

And the purpose here is to keep it from opposing counsel, from the Government.  It's not -- the purpose of the work product is not to keep it confidential from third parties or anything of that nature.  It's just -- and I will read from the Diamond Resorts, one of the -- one of the bullet points, I

believe it was.  It says, Unlike the attorney/client privilege, it is not necessary that work product be intended to remain confidential.  So disclosure to a third party does not necessarily destroy the privilege.  The purpose of the work product rule is not to protect the evidence from disclosure to the outside world, but rather to protect it only from the knowledge of opposing counsel and his client, there -- thereby preventing its use against the lawyer gathering the materials.

So that's where I think we are at.  I think Mr. Vidal foresaw some type of litigation in the future with him, possibly.  He is helping gather the documents for his purpose and for Mr. Marquez as well.  But it says, Mr. Kalisch -- Mr. Davis read earlier where he is saying that he is reviewing the documents for us.  How -- how it could help us.  He is not saying how it could help Mr. Marquez alone.  It is saying how it could help us.

So I believe Mr. Gonzalez Vidal is anticipating that this is going to help him, the gathering of these documents, of these witnesses, locating witnesses, locating these trial transcripts, all these matters is going to help him.

So I believe that it's -- it's governed by work -- work product, and -- and also by attorney/client, as Mr. Kalisch has even testified that he -- he foresaw a possibility where he would be representing Mr. Gonzalez Vidal in the future.  And just because you represent an individual in

a case does not mean you can represent -- you can't represent a codefendant.  Obviously, there has to be a conflict waiver.  There has to be the 44C hearing and all that, but it doesn't foreclose the possibility of one attorney representing two defendants in the same case.

So based on that, I would submit that this is attorney/client privilege and/or work product that is protected and it shouldn't be disclosed to the case -- the case trial team.

THE COURT:  So I -- I agree with the Government that you have not shown through the testimony of Mr. Kalisch that the Defendant Gonzalez Vidal was or sought to become a client of Mr. Kalisch at the time of these communications.  In short, there was no attorney/client commune -- attorney/client relationship at the time of these communications.  However, I do find that you have made the necessary showing to establish the first element of the work product doctrine.  And I don't believe the Government's in a position now to show the relevance of the communications to its case in chief.  So I will find that the -- this -- this document is not to be turned over from the -- from the filter team.

Any other issues involving Mr. Gonzalez Vidal?

MR. DAVIS:  No.

MR. BERRIO:  No, Your Honor.

THE COURT:  All right so you are excused, Mr. Berrio,

as is your client.  And we will proceed then with Mr. Kalisch and his client.

MR. BERRIO:  Thank you, Your Honor.

THE COURT:  Thank you.

(Mr. Gonzalez Vidal exits the courtroom at 4:43 p.m.)

MR. BERRIO:  Your Honor, may I remain in the courtroom?

THE COURT:  That is up to the attorneys who are present.

MR. KALISCH:  I would say yes.

THE COURT:  Mr. Davis?

MR. DAVIS:  I would leave that to Mr. Kalisch.

THE COURT:  He said yes.

Although I'm not sure why you would be here, Mr. Berrio.

MR. BERRIO:  Curiosity.

THE COURT:  Do you want to seek compensation for your time based off curiosity?

MR. BERRIO:  No, I don't.  We could stop here.

THE COURT:  Then stop the clock there then, because I don't think that that satisfies the --

MR. BERRIO:  No, I understand.

THE COURT:  All right.

MR. BERRIO:  I just want to see what's happening.

THE COURT:  Okay.

MR. KALISCH:  Okay.

MR. DAVIS:  So where we left it off was a possible waiver of conflict of -- of potential conflict of interest, given the possibility that Mr. -- that case team may be bringing a motion in front of the Court for violation of a protective order.  Now, at this point, given that the conversation is not going over to the case team, that may moot the issue.  And I leave that for the Court's discretion.

I don't know.  I mean, at this point the -- the conflict becomes more -- the potential conflict becomes more attenuated, given the case team is not going to have access to it.  I don't know if the office would individually ask me to take some form of action, but that wouldn't be -- that would not -- I do not think that would impact Mr. Kalisch's dealings with the case team.  I don't know.  I leave that to the Court's discretion.

THE COURT:  Those are very good observations.

Mr. Kalisch.

MR. KALISCH:  I think counsel is correct insofar as bringing sanctions against me for violating the protective order insofar as the case team doesn't have the conversation involving that disclosure because it's been -- it's been withheld under privilege.  So they wouldn't have a basis to bring -- bring the action for sanctions against me because they don't have the conversation from which it's based.

THE COURT:  So to be clear, at the time you are having these conversations with Gonzalez Vidal and sending him information about this case, you are already aware of and bound by a confidentiality order, right?

MR. KALISCH:  The protective order, you mean?

THE COURT:  The protective order.

MR. KALISCH:  Yes.  Your Honor, that was -- that was entered three weeks prior to this conversation.  It was not first and foremost in my mind.  I don't present that as any type of excuse because I'm charged with knowing that that -- that that was there, and certainly it had been discussed.

So I stand -- I stand liable, is the right word, for having done that, because the order was there.  And even though it was -- it was the beginning of the case, I was trying to collect as much information as I could.  I was acting on the advice of my -- my client at the time, Mr. Marquez.  I was doing what I think any -- any defense lawyer would at least think of doing, how -- albeit, there was a protective order in place.

So I understand Your Honor's question, and there is no way I can state that I didn't know it was there.  It was there.

THE COURT:  You are not on the court CJA list are you, Mr. Kalisch?

MR. KALISCH:  On this Court's CJA?  No, in the Middle District of Florida.

THE COURT:  All right.  Although, you asked me to appoint you as CJA counsel when your client's funds ran out, and I -- and I did.

MR. KALISCH:  Correct.

THE COURT:  All right.  So I don't think that there is much that we can -- can or should be addressing at this point.

If -- if -- Mr. Davis, if you learn that your office wishes to pursue this through you and not the -- not the -- the attorneys on the file, then you would let us know.  I am not sure there is much more for us to address now.

MR. DAVIS:  I agree, Your Honor.

THE COURT:  All right.

MR. KALISCH:  Your Honor, does Your Honor want me to remain on the case as CJA appointment?

THE COURT:  Well, I'm assuming that I can appoint you CJA counsel even though you are not on the CJA list.  That's what I'm not -- not clear on.

MR. KALISCH:  Oh.

THE COURT:  But I would imagine so.  It's payment through the CJA funds, even though you're not on the list since you were privately retained before.

MR. KALISCH:  Right.

THE COURT:  If I encounter any problem with that, I would let you know.

MR. KALISCH:  Thank you, Your Honor.

THE COURT:  Okay.  Is there anything else?

MR. DAVIS:  Nothing -- well, actually, I -- I take it the Court will want me filing the exhibits that I offered today.  Then how are we going to be doing this?  Is the Court going to unseal this or how is the Court -- does the Court plan to address this?

THE COURT:  I had not thought through whether you need -- need to unseal anything in particular or we do have your motion pending that I can rule on, and in that order indicate that I orally ruled at this hearing which documents maintained have been established to be privileged and not subject to disclosure and the rest are to be turned over to the Government.

MR. DAVIS:  Yes.  But I'm just -- as far as the record of this hearing, the local rules require me to file the exhibits.  How does the Court wish me to do that?  I will just do that conventionally?  I'll do that through -- why don't I do this, I will wait until after the Court enters its order.

THE COURT:  Right, right.

MR. DAVIS:  And I will file the unsealed matters --

THE COURT:  Excellent.

MR. DAVIS:  -- conventionally, and the other -- other matters I will file under seal.

THE COURT:  Okay.  Sounds good.

MR. DAVIS:  And then I guess we will be back on the --

on the 16th.

THE COURT:  Correct.  Thank you, very much.

MR. DAVIS:  Thank you.

MR. KALISCH:  Status on the 16th, Your Honor?

THE COURT:  Yes.

MR. KALISCH:  4 o'clock?

THE COURT:  4 o'clock.

MR. KALISCH:  Thank you.  Thank you, very much, Your Honor.

Your Honor, if I just may bring up something that Ignacio covered last time we were up before the Court.  The separation order, the FDC, apparently they're telling me they are still --

THE COURT:  I know.  Mr. Berrio brought it up as well, and I said -- and I suggested that you all discuss that with Mr. Vazquez, and make sure that they have already communicated their lack of opposition to FDC.

MR. KALISCH:  Thank you, Your Honor.

THE COURT:  Thank you.

(The proceedings concluded at 4:57 p.m.)

# C E R T I F I C A T E

I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.


_10/17/2022_

   DATE                STEPHANIE A. McCARN, RPR
                       Official United States Court Reporter
                       400 North Miami Avenue, 13th Floor
                       Miami, Florida 33128
                       (305) 523-5518

**1**

**1** [8] - 1:8, 3:16, 4:19, 5:9, 14:21, 45:6, 45:20, 45:25
**10/17/2022** [1] - 86:7
**1184** [2] - 7:15, 8:8
**11:53** [1] - 69:24
**12** [1] - 64:14
**12th** [1] - 54:9
**13** [4] - 45:6, 45:10, 45:14, 46:3
**13-3** [1] - 1:7
**13th** [2] - 1:23, 86:9
**14** [24] - 35:5, 35:6, 35:19, 36:5, 36:15, 36:16, 36:18, 36:19, 36:20, 36:22, 38:13, 40:4, 43:25, 44:22, 45:7, 45:12, 45:17, 46:9, 47:25, 48:2, 55:8, 55:11
**15** [13] - 35:15, 35:20, 38:11, 38:15, 42:4, 44:25, 46:9, 48:1, 48:2, 55:8, 55:11, 56:10
**15-minute** [1] - 59:8
**154** [1] - 27:13
**16** [5] - 47:17, 48:1, 48:2, 55:9, 55:10
**16th** [5] - 57:6, 57:15, 76:6, 85:1, 85:4
**17** [12] - 47:14, 47:15, 47:18, 48:1, 48:8, 48:10, 48:14, 48:15, 49:17, 49:19, 49:20, 51:14
**17th** [3] - 76:10, 76:17, 76:24
**18** [9] - 47:5, 47:9, 47:15, 47:16, 47:18, 51:8, 51:17, 51:19, 55:5
**19** [3] - 47:5, 47:10, 47:13
**1:44** [2] - 1:6, 3:1

**2**

**2** [8] - 6:9, 6:15, 11:18, 14:21, 48:23, 49:2, 69:24
**20** [3] - 47:5, 47:13, 54:6
**20-minute** [1] - 56:11
**2011** [1] - 27:14
**2018** [1] - 54:12
**2019** [6] - 9:19, 10:9, 21:16, 38:20, 39:5,

39:18
**2020** [4] - 3:18, 54:9, 60:10, 64:9
**2021** [1] - 8:8
**2022** [1] - 1:5
**20th** [2] - 65:7, 77:3
**21** [5] - 47:5, 47:13, 51:9, 51:19, 55:5
**21-cr-20050-CMA** [1] - 1:2
**21st** [1] - 65:9
**22** [2] - 51:9, 51:20
**23** [2] - 52:3, 52:5
**23rd** [1] - 27:14
**24** [5] - 52:1, 52:6, 52:7, 54:7, 55:15
**25** [6] - 9:8, 52:25, 53:23, 53:24, 54:6, 55:14
**26** [3] - 38:20, 54:7, 55:5
**26th** [1] - 39:5
**27** [1] - 54:25
**275** [1] - 27:12
**28** [3] - 55:1, 55:2, 55:5
**2:22** [1] - 24:11
**2:34** [1] - 24:11
**2B** [1] - 49:5
**2C** [1] - 49:7

**3**

**3** [7] - 2:16, 11:19, 12:6, 12:7, 14:21, 64:10, 65:3
**305** [4] - 1:15, 1:18, 1:24, 86:10
**33128** [2] - 1:24, 86:9
**33132** [1] - 1:14
**33156-7840** [1] - 1:18
**358-0940** [1] - 1:18
**366** [1] - 62:14
**3:30** [2] - 56:3, 58:13
**3:36** [1] - 59:11
**3d** [2] - 7:15, 8:8

**4**

**4** [15] - 13:3, 13:4, 14:21, 45:10, 48:24, 49:2, 58:5, 58:16, 58:25, 59:1, 59:5, 85:6, 85:7
**4,000-page** [2] - 64:11, 65:3
**40** [1] - 21:19
**400** [2] - 1:23, 86:9
**44C** [1] - 79:3
**493** [1] - 62:14

**4:13** [1] - 59:11
**4:30** [1] - 68:1
**4:43** [1] - 80:5
**4:57** [2] - 1:6, 85:20
**4B** [1] - 49:5
**4C** [1] - 49:7
**4D** [1] - 49:9
**4th** [6] - 1:14, 64:9, 64:17, 64:19, 69:24, 75:21

**5**

**5** [12] - 14:21, 15:14, 15:15, 20:8, 45:8, 45:9, 45:21, 45:25, 48:25, 49:2
**519** [4] - 7:15, 7:21, 8:3, 8:7
**520** [1] - 1:17
**523-5518** [2] - 1:24, 86:10
**5B** [1] - 49:5
**5C** [2] - 49:7
**5D** [1] - 49:9

**6**

**6** [12] - 45:9, 45:10, 45:12, 45:14, 45:17, 46:3, 49:1, 49:2, 55:23, 59:24
**64-page** [1] - 40:24
**6B** [1] - 49:5
**6C** [1] - 49:7
**6D** [1] - 49:9

**7**

**7** [2] - 1:5, 48:10
**7300** [1] - 1:17
**75** [1] - 21:19
**7th** [1] - 3:17

**8**

**86** [2] - 1:8, 2:17

**9**

**961-9001** [1] - 1:15
**99** [1] - 1:14

**A**

**abandon** [1] - 36:6
**abandoning** [2] - 36:2, 36:3
**able** [2] - 28:7, 61:9
**above-entitled** [1] -

86:5
**absence** [2] - 18:13, 18:14
**accept** [1] - 33:23
**acceptable** [1] - 23:11
**accepts** [1] - 28:10
**access** [1] - 81:11
**accompanies** [2] - 31:17, 50:5
**account** [3] - 14:25, 15:11, 53:9
**accurate** [1] - 86:4
**accusations** [1] - 11:25
**accused** [1] - 10:10
**act** [1] - 34:13
**acting** [4] - 13:14, 13:18, 77:8, 82:15
**action** [2] - 81:13, 81:24
**activity** [4] - 9:23, 10:2, 21:23, 22:17
**acts** [1] - 34:12
**actual** [5] - 4:7, 5:18, 41:15, 41:17, 74:24
**add** [1] - 20:24
**added** [1] - 76:25
**addition** [2] - 4:7, 70:20
**additional** [4] - 5:5, 42:12, 71:5, 73:12
**address** [17] - 6:11, 24:21, 26:7, 26:23, 36:1, 36:10, 36:11, 54:2, 56:16, 56:19, 57:14, 58:9, 58:11, 59:17, 83:10, 84:6
**addressing** [4] - 9:2, 15:19, 56:22, 83:6
**administer** [1] - 38:20
**administration** [1] - 39:6
**ADMITTED** [1] - 2:9
**advance** [2] - 58:17, 59:2
**advice** [14] - 4:3, 4:15, 5:6, 6:7, 11:14, 12:19, 14:6, 14:17, 14:19, 18:17, 26:2, 75:2, 82:16
**advise** [1] - 69:12
**advised** [1] - 60:12
**affect** [4] - 14:2, 18:21, 23:10, 33:20
**affects** [1] - 10:4
**affiant** [1] - 24:3
**affidavit** [11] - 22:11, 22:15, 23:7, 23:9, 23:19, 23:21, 23:24, 24:2, 33:19, 33:24,

51:1
**afternoon** [8] - 3:3, 3:8, 3:9, 3:11, 26:6, 59:14, 59:22, 59:23
**agency** [2] - 74:12, 74:16
**Agent** [1] - 3:6
**ago** [2] - 26:1, 60:7
**agree** [8] - 6:7, 10:17, 12:3, 29:6, 44:3, 44:21, 79:10, 83:11
**agreed** [2] - 48:19, 76:8
**agreeing** [2] - 49:4, 49:6
**agreement** [1] - 75:1
**ahead** [1] - 27:17
**aid** [1] - 74:14
**aiding** [1] - 11:9
**al** [1] - 1:7
**albeit** [1] - 82:18
**Alejandra** [1] - 28:12
**allege** [2] - 4:7, 5:13
**alleged** [1] - 63:17
**alleging** [2] - 6:13, 13:7
**allowed** [1] - 65:21
**alone** [1] - 78:15
**ALTONAGA** [1] - 1:10
**amendment** [1] - 34:9
**AMERICA** [1] - 1:4
**analysis** [2] - 17:25, 20:10
**Andrea** [1] - 1:21
**answering** [1] - 20:11
**answers** [1] - 19:22
**anticipated** [2] - 13:24, 77:19
**anticipates** [3] - 14:6, 16:25, 18:20
**anticipating** [7] - 11:25, 14:1, 16:2, 22:1, 22:16, 77:15, 78:17
**anticipation** [31] - 9:13, 10:3, 10:13, 13:13, 13:17, 14:4, 16:5, 16:23, 20:7, 20:18, 21:11, 22:23, 24:15, 25:20, 35:4, 37:9, 38:6, 38:19, 39:19, 40:1, 41:12, 41:18, 41:20, 42:17, 43:25, 44:1, 50:14, 50:21, 51:6, 74:4, 74:6
**Antonio** [1] - 64:13
**apart** [1] - 29:15
**apologize** [1] - 59:15
**appeal** [6] - 10:19,

11:3, 11:8, 11:23, 15:23, 63:10
**appear** [3] - 36:23, 42:11, 42:13
**appearance** [1] - 70:3
**appearances** [1] - 3:4
**APPEARANCES** [1] - 1:12
**applies** [3] - 11:15, 28:3, 28:13
**apply** [3] - 13:23, 26:4, 28:12
**appoint** [2] - 83:2, 83:15
**appointment** [1] - 83:14
**appreciate** [1] - 46:21
**area** [1] - 34:24
**argument** [4] - 22:20, 24:24, 28:23, 67:24
**arguments** [1] - 73:12
**arise** [1] - 68:6
**arms** [1] - 36:24
**arrest** [1] - 68:25
**arrested** [1] - 9:17
**arrival** [1] - 56:6
**arrive** [1] - 56:3
**arrives** [1] - 35:25
**arriving** [2] - 56:2, 56:4
**aside** [1] - 26:6
**assert** [5] - 12:20, 20:17, 35:23, 63:12, 63:13
**asserted** [3] - 45:20, 62:25, 68:7
**asserting** [2] - 45:18, 60:2
**assertion** [1] - 28:1
**assist** [2] - 17:11, 60:15
**assistance** [1] - 47:15
**Assistant** [1] - 1:13
**assisting** [1] - 64:23
**associate** [1] - 39:20
**assume** [2] - 51:4, 53:12
**assumed** [2] - 27:24, 29:20
**assuming** [6] - 11:6, 22:7, 26:23, 54:14, 56:9, 83:15
**assumptions** [1] - 32:19
**attached** [3] - 29:19, 49:10, 49:15
**attachment** [3] - 4:8, 31:25, 32:1
**attachments** [6] - 4:6, 6:25, 7:2, 7:5, 11:23,

48:13
**attempt** [1] - 6:3
**attempting** [1] - 43:19
**attend** [1] - 48:11
**attention** [2] - 9:2, 76:15
**attenuated** [1] - 81:11
**attesting** [5] - 12:25, 14:8, 14:15, 15:7, 15:12
**Attorney** [1] - 1:13
**attorney** [31] - 4:1, 8:17, 10:12, 11:13, 12:9, 12:10, 12:15, 12:19, 12:25, 13:5, 13:14, 13:18, 15:16, 15:18, 19:20, 22:20, 24:24, 35:2, 35:8, 41:15, 41:17, 41:18, 60:5, 60:20, 62:1, 62:2, 67:24, 69:1, 69:19, 74:23, 79:4
**attorney's** [5] - 5:16, 6:23, 7:10, 19:19, 70:9
**Attorney/client** [1] - 6:16
**attorney/client** [34] - 4:12, 5:22, 6:10, 6:13, 6:18, 6:20, 8:24, 9:2, 9:7, 9:10, 11:11, 12:8, 13:7, 13:15, 13:16, 15:16, 18:6, 35:17, 49:21, 51:20, 59:25, 60:2, 67:14, 68:6, 68:20, 69:3, 70:10, 73:15, 75:6, 78:1, 78:22, 79:7, 79:14
**attorneys** [9] - 3:23, 25:11, 25:12, 25:15, 26:15, 50:18, 80:8, 83:9
**audio** [2] - 64:17, 64:18
**authenticity** [1] - 48:20
**authorities** [1] - 75:23
**authority** [3] - 28:25, 29:1
**available** [2] - 7:23, 24:19
**Avefenix** [1] - 13:5
**Avenue** [2] - 1:23, 86:9
**awaiting** [1] - 42:20
**aware** [4] - 24:4, 62:1, 68:24, 82:3

**B**

**bank** [2] - 53:1, 53:9
**banking** [1] - 53:2
**bankruptcy** [1] - 62:24
**bar** [1] - 11:8
**based** [10] - 16:22, 20:14, 36:25, 46:5, 54:11, 61:22, 63:24, 79:6, 80:18, 81:25
**basis** [3] - 22:21, 77:8, 81:23
**Batres** [1] - 1:21
**Batres-Chacon** [1] - 1:21
**bears** [1] - 13:21
**become** [6] - 20:4, 67:15, 68:8, 68:21, 70:17, 79:12
**becomes** [2] - 81:10
**becoming** [1] - 70:8
**BEFORE** [1] - 1:10
**begin** [1] - 3:22
**beginning** [1] - 82:14
**behalf** [7] - 3:10, 35:12, 37:19, 38:18, 39:12, 39:23, 77:14
**belief** [2] - 18:15, 70:9
**below** [1] - 15:1
**bench** [1] - 48:5
**BERRIO** [202] - 1:16, 3:9, 3:13, 3:16, 3:20, 4:14, 4:20, 5:12, 5:18, 6:3, 6:12, 6:17, 6:19, 6:22, 6:25, 7:3, 7:6, 7:9, 7:12, 7:17, 7:20, 8:3, 8:6, 8:11, 8:17, 8:20, 8:23, 9:3, 9:6, 9:9, 9:14, 9:16, 9:23, 11:7, 12:7, 12:14, 12:18, 12:23, 13:1, 13:4, 13:11, 14:10, 14:13, 14:17, 15:1, 15:4, 15:8, 15:15, 15:25, 16:11, 16:19, 17:8, 17:13, 19:3, 19:6, 19:9, 19:12, 19:18, 19:20, 19:25, 21:3, 21:13, 21:18, 21:22, 22:3, 22:5, 22:11, 22:14, 22:19, 22:25, 23:2, 23:5, 23:9, 23:17, 23:23, 24:1, 24:8, 24:25, 25:5, 25:8, 25:11, 25:22, 26:13, 26:19, 26:25, 27:2, 27:6, 27:11, 27:18, 27:23, 30:7, 30:11, 30:15, 30:17, 30:19,

33:19, 33:25, 34:17, 34:22, 35:1, 35:21, 36:5, 36:9, 36:13, 36:15, 36:17, 38:8, 38:10, 38:13, 38:15, 38:17, 38:23, 39:2, 39:12, 39:15, 39:20, 39:22, 40:2, 40:5, 40:10, 41:13, 41:22, 41:24, 42:22, 43:3, 45:8, 45:16, 45:20, 45:23, 46:1, 46:3, 46:5, 46:7, 46:13, 46:16, 46:20, 46:23, 47:1, 47:9, 47:11, 47:13, 49:14, 49:20, 49:25, 50:3, 50:11, 50:16, 50:24, 51:3, 51:7, 51:15, 51:19, 51:22, 51:24, 52:1, 52:5, 52:7, 52:10, 52:14, 52:17, 52:20, 52:23, 53:1, 53:7, 53:10, 53:14, 53:17, 53:24, 54:6, 54:11, 55:6, 55:18, 56:15, 56:18, 56:24, 57:12, 57:15, 57:19, 58:3, 58:19, 58:22, 58:25, 59:4, 59:20, 59:24, 60:2, 60:6, 73:14, 73:22, 73:25, 74:3, 74:6, 74:9, 74:12, 77:15, 79:24, 80:3, 80:6, 80:16, 80:19, 80:22, 80:24
**Berrio** [45] - 1:17, 3:9, 3:12, 5:1, 5:5, 5:7, 5:11, 6:2, 8:2, 12:13, 13:10, 17:7, 20:14, 24:16, 29:18, 30:6, 32:11, 33:17, 37:24, 38:9, 38:25, 39:3, 40:21, 43:24, 44:6, 44:21, 45:5, 48:4, 48:12, 48:19, 48:20, 49:4, 49:13, 49:19, 52:4, 55:9, 55:17, 59:17, 59:19, 73:12, 77:13, 79:25, 80:15, 85:14
**Berrio's** [2] - 20:13, 42:10
**better** [2] - 53:11, 57:11
**between** [19] - 3:25, 8:16, 9:12, 13:16, 19:1, 27:20, 27:24, 29:5, 29:24, 31:25, 33:12, 53:25, 54:24, 59:25, 61:6, 63:8,

66:15, 66:25, 74:23
**big** [3] - 53:19, 65:3, 65:4
**bill** [3] - 52:8, 52:16, 52:18
**binder** [2] - 40:9, 40:22
**boat** [7] - 4:3, 4:6, 4:15, 4:18, 5:24
**body** [4] - 4:5, 5:19, 34:14, 43:18
**bold** [2] - 20:23
**bound** [1] - 82:3
**boyfriend** [1] - 34:20
**break** [3] - 23:14, 47:17, 51:10
**brief** [1] - 61:24
**bring** [5] - 46:14, 48:8, 81:24, 85:10
**bringing** [2] - 81:5, 81:20
**brings** [1] - 49:17
**broad** [3] - 63:17, 63:19, 63:20
**broader** [1] - 43:20
**brought** [2] - 16:2, 85:14
**Bs** [1] - 49:4
**building** [1] - 56:19
**bullet** [1] - 77:25
**burden** [24] - 4:22, 5:8, 6:6, 13:21, 17:6, 22:9, 25:4, 25:6, 25:18, 26:11, 27:9, 33:18, 34:10, 34:21, 34:25, 36:12, 36:20, 39:16, 39:17, 44:6, 44:19, 45:25, 46:8, 46:11
**burdens** [1] - 23:21
**BY** [1] - 1:22

**C**

**calendar** [2] - 57:13, 58:18
**cancellation** [1] - 52:11
**cannot** [1] - 23:25
**capacity** [1] - 18:16
**careful** [3] - 65:19, 66:21, 67:1
**carefully** [1] - 62:6
**careless** [1] - 65:14
**carry** [2] - 25:6, 25:17
**case** [72] - 9:1, 10:5, 10:6, 10:7, 13:20, 15:9, 15:11, 15:15, 15:19, 16:22, 17:3, 17:20, 20:2, 20:5,

3

21:4, 21:9, 22:23, 23:1, 24:20, 25:9, 27:2, 27:8, 29:17, 41:25, 43:24, 44:2, 44:20, 44:23, 62:2, 62:12, 62:13, 62:21, 62:22, 62:23, 63:10, 63:16, 63:17, 63:20, 63:24, 64:11, 64:12, 64:13, 64:20, 65:10, 65:19, 66:9, 66:13, 67:1, 68:13, 68:18, 69:7, 70:6, 70:8, 70:13, 70:16, 73:4, 73:19, 74:4, 79:1, 79:5, 79:8, 79:19, 81:4, 81:7, 81:11, 81:15, 81:21, 82:3, 82:14, 83:14

**CASE** [1] - 1:2

**cases** [4] - 60:13, 60:20, 69:21, 70:2

**category** [1] - 26:10

**cease** [1] - 31:6

**CECILIA** [1] - 1:10

**central** [1] - 39:9

**certain** [5] - 36:2, 45:3, 47:3, 47:6, 49:11

**certainly** [10] - 10:21, 13:2, 14:11, 20:5, 34:10, 34:11, 58:17, 69:1, 69:6, 82:11

**certificate** [2] - 28:9, 54:11

**Certificate.................... ....** [1] - 2:17

**certificating** [1] - 42:5

**certify** [1] - 86:3

**Chab** [1] - 38:21

**Chabaneix** [24] - 26:14, 35:1, 35:8, 35:12, 37:2, 37:5, 37:8, 37:18, 37:22, 38:5, 38:18, 38:21, 39:7, 39:17, 41:16, 42:6, 42:16, 42:19, 43:9, 43:12, 50:9, 50:11, 53:25

**CHABANEIX** [1] - 38:22

**Chabaneix's** [1] - 43:6

**Chacon** [1] - 1:21

**challenge** [2] - 23:25, 24:2

**challenging** [2] - 29:23, 32:7

**charge** [2] - 9:24, 21:24

**charged** [6] - 10:2,

22:2, 22:16, 38:6, 39:19, 82:10

**chat** [13] - 4:7, 4:9, 4:25, 5:4, 14:1, 14:5, 26:16, 29:4, 49:15, 66:12, 66:13, 66:19, 75:13

**chats** [3] - 49:6, 49:8, 49:11

**check** [2] - 57:3, 58:2

**CHIEF** [1] - 1:11

**chief** [1] - 79:19

**children** [1] - 56:21

**Chábel** [2] - 15:18, 50:19

**circumspect** [1] - 67:4

**circumstances** [3] - 62:17, 69:5, 70:12

**cite** [5] - 7:14, 8:2, 8:3, 8:6, 27:8

**cited** [2] - 62:12, 62:21

**cites** [1] - 68:19

**CJA** [8] - 53:13, 82:22, 82:24, 83:2, 83:14, 83:16, 83:20

**claim** [9] - 6:10, 10:24, 11:5, 26:9, 26:25, 36:6, 37:25, 49:21, 61:19

**claimed** [1] - 26:8

**claiming** [7] - 4:6, 8:21, 8:24, 8:25, 14:11, 14:14, 19:10

**claims** [5] - 3:11, 36:2, 36:3, 45:5, 51:24

**clear** [8] - 18:25, 31:9, 47:4, 47:7, 64:6, 64:12, 82:1, 83:17

**clearly** [2] - 61:4, 71:2

**client** [55] - 4:13, 4:14, 8:16, 9:13, 9:25, 10:2, 10:10, 12:24, 13:14, 13:18, 14:15, 15:18, 16:11, 17:18, 17:23, 17:24, 18:13, 19:1, 19:11, 21:3, 21:9, 21:12, 25:19, 25:25, 39:10, 39:12, 39:15, 39:19, 39:25, 41:19, 42:1, 42:2, 54:1, 61:25, 62:20, 63:9, 63:23, 64:4, 65:18, 67:16, 68:8, 68:12, 68:21, 69:2, 70:8, 74:21, 74:23, 77:9, 78:7, 79:12, 80:1, 80:2, 82:16

**client's** [6] - 18:15, 19:17, 34:9, 41:11, 41:16, 83:2

**clock** [1] - 80:20

**close** [1] - 32:19

**coconspirators** [1] - 64:23

**codefendant** [2] - 66:10, 79:2

**collect** [1] - 82:15

**collected** [1] - 42:16

**coming** [2] - 19:13, 54:14

**common** [1] - 63:13

**commune** [2] - 29:10, 79:14

**communicate** [6] - 34:5, 34:6, 57:23, 57:24, 73:18, 73:22

**communicated** [3] - 60:10, 63:8, 85:16

**communicating** [11] - 4:11, 10:18, 13:25, 18:20, 21:25, 25:13, 25:14, 25:24, 62:18, 63:5, 66:4

**communication** [41] - 3:14, 3:24, 4:10, 6:7, 6:12, 9:12, 11:18, 11:19, 13:4, 13:25, 17:6, 21:11, 27:19, 27:20, 27:23, 28:3, 28:5, 29:9, 29:11, 29:15, 29:16, 31:7, 31:17, 31:22, 31:25, 33:11, 34:4, 34:11, 34:15, 53:25, 54:9, 58:1, 64:5, 64:7, 64:9, 66:11, 69:8, 69:12, 70:7, 74:21, 77:20

**communications** [41] - 4:16, 4:17, 5:15, 8:15, 10:9, 10:18, 10:20, 11:22, 14:16, 19:15, 21:4, 24:15, 24:18, 25:20, 26:4, 27:22, 28:2, 28:24, 29:21, 29:24, 30:4, 33:3, 33:8, 33:13, 34:3, 34:13, 35:10, 46:18, 47:24, 54:8, 54:21, 54:24, 60:22, 67:15, 68:10, 74:22, 75:4, 75:5, 79:13, 79:15, 79:19

**communicative** [1] - 29:16

**company** [2] - 39:7, 62:24

**Company** [1] - 27:12

**compensation** [1] - 80:17

**compiled** [1] - 50:13

**complete** [2] - 49:5, 49:8

**computer** [1] - 7:23

**conceal** [1] - 18:1

**conceding** [1] - 25:17

**concept** [1] - 52:10

**concepto** [1] - 52:11

**concerned** [2] - 53:5, 63:24

**concerns** [2] - 30:24, 31:1

**concluded** [1] - 85:20

**concludes** [1] - 74:18

**conclusion** [2] - 31:13, 70:15

**concrete** [1] - 26:18

**conduct** [1] - 38:7

**confer** [1] - 55:9

**conference** [4] - 56:20, 57:5, 58:6, 58:8

**confidence** [3] - 4:1, 28:5, 28:18

**confidential** [6] - 5:13, 18:3, 27:19, 27:25, 77:23, 78:3

**confidentiality** [1] - 82:4

**confirm** [1] - 5:6

**confirms** [1] - 66:12

**conflict** [7] - 62:3, 69:13, 79:2, 81:3, 81:10

**conflicts** [1] - 72:2

**connection** [4] - 48:23, 48:24, 48:25, 49:1

**consciousness** [1] - 67:5

**consequence** [1] - 61:8

**consider** [1] - 61:15

**considered** [2] - 62:18, 63:19

**consistent** [1] - 55:19

**conspiracy** [3] - 9:18, 10:1, 21:23

**constitute** [1] - 12:4

**constitutes** [3] - 17:6, 19:2, 19:4

**consulting** [1] - 18:15

**contact** [2] - 56:1, 61:9

**contacted** [1] - 77:4

**contacting** [2] - 12:9, 12:10

**contain** [2] - 20:9, 20:10

**contained** [2] - 29:3,

31:22

**contemplating** [1] - 70:15

**contemplation** [2] - 5:17, 6:24

**contend** [1] - 61:6

**contest** [3] - 54:4, 54:21, 54:23

**continually** [1] - 65:5

**continues** [1] - 65:6

**control** [1] - 57:25

**conventionally** [2] - 84:17, 84:22

**conversation** [42] - 4:23, 11:2, 20:3, 20:8, 20:24, 20:25, 61:3, 61:5, 61:6, 61:8, 61:15, 61:22, 61:23, 61:24, 61:25, 62:7, 62:19, 63:8, 63:18, 64:16, 65:1, 65:17, 66:20, 67:3, 67:4, 67:7, 67:8, 68:13, 69:5, 69:16, 69:20, 70:7, 70:22, 71:2, 75:19, 77:8, 77:9, 81:7, 81:21, 81:25, 82:8

**conversations** [4] - 19:1, 22:22, 65:10, 82:2

**convey** [2] - 28:4, 28:17

**conveys** [1] - 28:15

**convicted** [1] - 9:22

**copied** [1] - 37:1

**copies** [3] - 16:1, 20:22, 39:8

**copy** [3] - 7:16, 7:18, 9:9

**Coral** [1] - 28:12

**corporate** [1] - 62:21

**correct** [44] - 4:19, 19:2, 44:14, 44:20, 45:7, 45:19, 55:17, 60:24, 61:2, 71:10, 71:11, 71:13, 71:14, 71:16, 71:17, 71:19, 71:20, 71:22, 71:23, 72:2, 72:3, 72:11, 72:12, 72:15, 72:16, 72:24, 73:4, 73:5, 73:9, 73:10, 73:20, 75:11, 75:15, 76:4, 76:8, 76:9, 76:12, 76:18, 76:22, 77:1, 77:2, 81:19, 83:4, 85:2

**corroborate** [1] - 66:14

counsel [19] - 3:6, 7:16, 11:2, 12:16, 17:17, 17:22, 21:8, 53:13, 62:12, 63:6, 63:7, 63:9, 66:10, 68:19, 77:22, 78:7, 81:19, 83:2, 83:16
counseling [1] - 11:14
counselled [1] - 43:1
couple [1] - 56:16
course [6] - 43:10, 43:23, 44:6, 51:11, 63:2, 69:11
court [17] - 6:2, 12:1, 36:21, 37:1, 37:17, 39:4, 42:14, 42:18, 43:5, 43:7, 49:23, 63:7, 63:19, 72:19, 73:2, 82:22
COURT [303] - 1:1, 3:2, 3:3, 3:8, 3:11, 3:15, 3:19, 4:11, 4:19, 4:21, 5:10, 5:16, 6:1, 6:5, 6:15, 6:18, 6:21, 6:23, 7:2, 7:4, 7:8, 7:10, 7:16, 7:18, 7:22, 8:1, 8:10, 8:15, 8:19, 8:22, 9:1, 9:5, 9:8, 9:12, 9:15, 9:21, 10:15, 12:3, 12:12, 12:17, 12:21, 12:24, 13:2, 13:9, 14:8, 14:11, 14:14, 14:24, 15:2, 15:5, 15:10, 15:21, 16:8, 16:13, 17:3, 17:10, 18:25, 19:4, 19:7, 19:10, 19:14, 19:19, 19:22, 20:1, 21:10, 21:17, 21:20, 21:25, 22:4, 22:7, 22:13, 22:18, 22:20, 23:1, 23:3, 23:6, 23:11, 23:14, 23:22, 23:24, 24:3, 24:6, 24:9, 24:10, 24:12, 24:13, 25:3, 25:7, 25:9, 25:16, 26:5, 26:17, 26:22, 27:1, 27:5, 27:10, 27:15, 27:17, 27:22, 28:22, 29:23, 30:6, 30:10, 30:14, 30:16, 30:18, 30:23, 31:8, 31:16, 31:20, 32:6, 32:9, 32:11, 32:15, 32:21, 32:24, 33:4, 33:7, 33:10, 33:16, 33:21, 34:2, 34:18, 34:23, 35:19, 35:24, 36:8, 36:11,

36:14, 36:16, 36:18, 37:7, 37:12, 37:14, 37:21, 38:1, 38:4, 38:9, 38:12, 38:14, 38:16, 38:21, 38:25, 39:3, 39:14, 39:16, 39:21, 39:24, 40:4, 40:6, 40:8, 40:11, 40:14, 40:18, 40:21, 41:1, 41:4, 41:6, 41:8, 41:20, 41:23, 42:8, 42:19, 42:25, 43:8, 43:14, 43:20, 43:23, 44:5, 44:11, 44:14, 44:16, 44:20, 45:1, 45:24, 46:2, 46:4, 46:6, 46:11, 46:14, 46:17, 46:22, 46:25, 47:2, 47:8, 47:16, 48:3, 48:9, 48:14, 48:17, 49:13, 49:18, 49:23, 50:2, 50:5, 50:12, 50:20, 50:25, 51:4, 51:11, 51:14, 51:17, 51:20, 51:23, 51:25, 52:2, 52:6, 52:8, 52:12, 52:15, 52:18, 52:22, 52:25, 53:4, 53:8, 53:12, 53:16, 53:22, 54:5, 54:10, 54:17, 54:25, 55:2, 55:12, 55:21, 56:3, 56:6, 56:10, 56:14, 56:17, 56:23, 57:3, 57:7, 57:9, 57:11, 57:13, 57:17, 57:23, 58:4, 58:9, 58:14, 58:16, 58:21, 58:23, 59:1, 59:5, 59:9, 59:10, 59:12, 59:13, 59:16, 59:21, 60:4, 60:25, 61:11, 61:20, 64:2, 66:7, 67:12, 67:23, 68:5, 69:8, 69:11, 69:16, 69:20, 69:22, 70:1, 70:5, 71:5, 71:7, 73:12, 75:8, 77:13, 79:10, 79:25, 80:4, 80:8, 80:11, 80:13, 80:17, 80:20, 80:23, 80:25, 81:17, 82:1, 82:6, 82:22, 83:1, 83:5, 83:12, 83:15, 83:19, 83:23, 84:1, 84:7, 84:19, 84:21, 84:24, 85:2, 85:5, 85:7, 85:14, 85:19
Court [17] - 1:23, 2:17, 10:10, 27:13, 44:18,

48:5, 48:12, 58:6, 81:5, 84:3, 84:4, 84:5, 84:16, 84:18, 85:11, 86:8
Court's [7] - 44:24, 46:8, 49:16, 55:20, 81:8, 81:15, 82:24
courthouse [1] - 56:7
courtroom [3] - 67:20, 80:5, 80:7
Courtroom [1] - 1:7
cover [6] - 40:16, 48:1, 50:9, 60:25, 61:20, 67:19
covered [3] - 47:25, 60:16, 85:11
covers [1] - 44:1
Covloski [4] - 39:7, 39:18, 39:20, 39:23
create [2] - 48:21, 70:9
created [8] - 13:25, 14:5, 17:25, 36:23, 37:5, 37:7, 77:20
creating [1] - 14:5
Crespo [3] - 59:21, 71:25, 72:14
criminal [2] - 58:23, 67:1
criminally [2] - 38:6, 39:19
cross [8] - 23:12, 23:18, 24:2, 24:3, 25:2, 34:1, 34:2, 51:1
cross-examination [2] - 25:2, 51:1
cross-examine [6] - 23:12, 23:18, 24:2, 24:3, 34:1, 34:2
cryptic [1] - 67:4
cryptically [4] - 66:20, 70:23, 70:24, 71:1
curiosity [4] - 22:9, 50:22, 80:16, 80:18
current [1] - 32:15

# D

DATE [1] - 86:8
date [2] - 46:20, 56:23
dates [1] - 54:8
DAVIS [129] - 1:13, 3:5, 4:22, 7:24, 8:2, 8:5, 10:17, 20:2, 23:12, 24:5, 29:1, 29:25, 31:1, 31:11, 31:19, 31:21, 32:8, 32:10, 32:14, 32:16, 32:22, 33:3, 33:6, 33:9, 33:14, 36:19,

37:11, 37:13, 37:15, 37:24, 38:3, 40:13, 40:15, 40:24, 41:2, 41:5, 41:7, 42:10, 42:23, 43:4, 43:12, 43:16, 44:3, 44:9, 44:12, 44:15, 44:17, 44:23, 45:2, 45:14, 45:17, 45:22, 47:3, 47:10, 47:12, 47:14, 48:2, 48:4, 48:10, 48:16, 48:19, 49:16, 51:8, 51:13, 52:3, 52:24, 53:20, 54:3, 54:13, 54:18, 55:1, 55:4, 55:8, 55:13, 55:19, 55:22, 55:25, 56:5, 56:9, 56:13, 57:5, 57:8, 57:10, 58:5, 58:13, 58:15, 59:8, 64:4, 66:11, 66:18, 69:23, 71:6, 71:8, 71:12, 71:15, 71:18, 71:21, 71:24, 72:4, 72:7, 72:9, 72:13, 72:17, 72:23, 73:1, 73:7, 73:11, 75:7, 75:9, 75:17, 75:20, 76:3, 76:6, 76:10, 76:16, 76:20, 76:24, 77:3, 77:12, 79:23, 80:12, 81:2, 83:11, 84:2, 84:14, 84:20, 84:22, 84:25, 85:3
Davis [19] - 3:5, 20:1, 23:11, 23:15, 24:4, 28:9, 28:22, 30:23, 36:18, 40:11, 42:9, 47:2, 58:11, 59:17, 64:3, 70:23, 78:13, 80:11, 83:7
De [2] - 1:20, 3:6
deal [1] - 53:19
dealings [1] - 81:14
decide [1] - 14:18
decisions [1] - 14:20
defeat [2] - 17:21, 17:22
Defendant [17] - 10:17, 10:22, 10:24, 10:25, 20:11, 20:12, 29:20, 32:1, 32:12, 36:20, 37:22, 42:14, 42:20, 43:10, 49:1, 66:15, 79:12
defendant [4] - 4:25, 20:16, 37:17, 37:19
Defendant's [6] - 10:23, 11:4, 20:17,

31:5, 54:14, 58:7
defendants [5] - 62:2, 64:21, 65:23, 66:14, 79:5
Defendants [1] - 1:8
DEFENDANTS [2] - 1:16, 2:6
Defendants' [1] - 2:11
defense [18] - 22:8, 61:7, 61:16, 62:11, 62:12, 62:16, 62:23, 63:12, 63:14, 64:21, 66:1, 66:2, 66:4, 66:6, 73:20, 73:23, 74:15, 82:17
Defense [2] - 5:9, 48:23
deferred [1] - 51:8
define [1] - 13:9
definitive [1] - 36:1
delayed [1] - 26:22
demonstrate [1] - 43:24
denied [1] - 55:13
depicted [1] - 47:19
depictions [1] - 28:23
Derivative [1] - 27:12
derive [1] - 75:19
derived [1] - 76:2
designed [1] - 18:1
destroy [1] - 78:4
detail [2] - 62:15, 63:11
detained [1] - 42:20
detention [1] - 52:12
determine [3] - 14:20, 14:23, 18:12
determining [1] - 14:3
develop [1] - 43:19
developed [4] - 20:7, 43:13, 43:14, 43:17
Diamond [6] - 7:14, 13:20, 16:22, 17:14, 17:20, 77:25
different [4] - 30:8, 63:14, 63:20, 75:12
directly [2] - 61:9, 69:4
disagree [1] - 42:23
disclosed [1] - 79:8
disclosing [1] - 15:6
disclosure [8] - 13:12, 17:16, 27:20, 44:22, 78:3, 78:5, 81:22, 84:12
discovery [14] - 64:19, 65:6, 65:8, 65:21, 72:13, 72:18, 72:20, 72:23, 73:2, 73:4, 73:7, 73:8, 75:10,

75:14
**discreet** [1] - 65:11
**discretion** [2] - 81:8, 81:16
**discuss** [6] - 23:15, 24:6, 71:21, 72:1, 85:15
**discussed** [2] - 16:22, 82:11
**discusses** [1] - 23:20
**discussing** [2] - 5:21, 70:13
**discussion** [2] - 68:19, 72:4
**dispute** [4] - 4:24, 25:6, 49:12, 49:15
**disputes** [1] - 28:10
**disseminate** [2] - 65:21, 68:16
**disseminated** [1] - 62:7
**disseminating** [2] - 62:17, 72:20
**dissemination** [3] - 63:17, 63:19, 73:3
**distinct** [1] - 70:19
**distinguishing** [1] - 18:5
**DISTRICT** [3] - 1:1, 1:1, 1:11
**District** [5] - 7:15, 8:8, 27:13, 82:25
**dividers** [1] - 40:9
**DIVISION** [1] - 1:2
**doc** [1] - 36:23
**docket** [1] - 73:5
**doctrine** [2] - 13:11, 79:17
**document** [31] - 3:14, 3:15, 3:16, 4:5, 5:18, 5:23, 13:24, 14:3, 14:5, 16:24, 16:25, 29:10, 34:23, 35:6, 35:7, 35:15, 37:3, 38:10, 38:12, 40:24, 41:11, 43:24, 44:22, 48:6, 49:17, 51:5, 51:17, 53:23, 77:20, 79:20
**Document** [10] - 4:19, 5:9, 6:9, 20:8, 43:24, 44:25, 45:6, 48:23, 51:14, 59:24
**documenting** [1] - 35:18
**Documents** [2] - 45:6, 47:5
**documents** [54] - 5:6, 5:7, 10:3, 10:11, 13:12, 16:3, 16:4,

16:19, 16:21, 16:25, 17:5, 18:19, 22:16, 24:22, 25:14, 26:7, 26:13, 35:3, 35:5, 36:3, 36:22, 36:23, 37:4, 37:16, 37:19, 38:17, 42:1, 42:2, 42:6, 42:12, 42:13, 42:16, 42:18, 42:25, 43:18, 44:22, 47:17, 48:17, 48:22, 53:1, 59:17, 63:1, 63:5, 74:3, 74:7, 75:15, 77:16, 77:17, 78:11, 78:14, 78:18, 84:10
**done** [3] - 51:14, 57:16, 82:13
**double** [1] - 57:3
**doubt** [2] - 53:18, 54:23
**doubting** [1] - 32:16
**down** [13] - 4:16, 16:6, 16:21, 17:2, 18:21, 39:4, 41:16, 43:6, 56:7, 56:9, 61:11, 75:3
**Drive** [1] - 1:17
**duly** [1] - 68:3
**during** [4] - 17:18, 33:1, 63:2, 64:5

## E

**e-mail** [2] - 54:1, 54:2
**e-mailed** [1] - 72:11
**early** [2] - 59:6, 59:7
**easier** [1] - 58:9
**Echevarria** [2] - 64:13, 64:16
**efficient** [1] - 48:4
**either** [9] - 15:13, 16:13, 16:14, 45:25, 46:12, 49:9, 55:11, 58:2, 64:8
**elected** [1] - 25:2
**element** [4] - 32:9, 33:5, 68:7, 79:17
**elements** [1] - 6:11
**emoji** [2] - 31:20, 31:22
**encompasses** [2] - 9:24, 10:2
**encounter** [1] - 83:23
**end** [1] - 57:24
**ended** [2] - 45:8, 45:9
**engage** [1] - 11:14
**English** [2] - 6:2, 76:18
**enlighten** [1] - 24:7
**enter** [1] - 68:19

**entered** [3] - 72:19, 73:3, 82:8
**enters** [1] - 84:18
**entire** [2] - 49:8, 58:10
**entitled** [2] - 23:17, 86:5
**ESQ** [1] - 1:13
**Esq** [2] - 1:16, 1:20
**establish** [4] - 22:9, 26:3, 38:7, 79:16
**established** [10] - 6:6, 21:10, 23:19, 38:9, 50:20, 54:23, 64:25, 66:2, 68:6, 84:11
**establishes** [2] - 54:20, 55:10
**establishing** [1] - 13:22
**estimating** [1] - 56:6
**et** [1] - 1:7
**event** [1] - 48:21
**EVIDENCE** [1] - 2:9
**evidence** [7] - 13:22, 17:16, 20:6, 30:12, 31:4, 31:12, 78:5
**evident** [5] - 4:25, 5:3, 20:14, 20:15, 26:16
**EVIDENTIARY** [1] - 1:10
**exact** [1] - 14:10
**exactly** [3] - 33:9, 70:4, 75:25
**examination** [2] - 25:2, 51:1
**examine** [6] - 23:12, 23:18, 24:2, 24:3, 34:1, 34:2
**excellent** [1] - 84:21
**except** [2] - 26:10, 45:24
**exchange** [1] - 74:7
**exchanged** [2] - 30:9, 33:1
**exchanging** [1] - 77:16
**exclude** [2] - 52:17, 77:10
**excuse** [2] - 23:23, 82:10
**Excuse** [1] - 7:17
**excused** [1] - 79:25
**Exhibit** [4] - 2:10, 2:11, 40:4, 44:22
**Exhibits** [1] - 49:2
**exhibits** [5] - 49:4, 49:7, 49:9, 84:3, 84:16
**EXHIBITS** [1] - 2:9
**exist** [1] - 28:8
**existence** [1] - 74:24

**existing** [2] - 44:1, 50:22
**exists** [1] - 18:13
**exits** [1] - 80:5
**expedite** [1] - 54:13
**explain** [3] - 33:12, 65:15, 77:13
**explicitly** [3] - 68:20, 70:21, 71:9
**exports** [1] - 49:5
**express** [1] - 68:13
**expressed** [2] - 16:9, 16:11
**expressing** [1] - 16:13
**expression** [3] - 28:14, 28:15, 28:17
**expressions** [2] - 28:4, 28:13
**expressly** [2] - 71:12, 71:15
**extend** [1] - 38:20
**extends** [2] - 34:11, 34:12
**extent** [2] - 19:22, 55:15
**extradition** [4] - 42:13, 42:21, 44:2, 50:14

## F

**F.3d** [1] - 62:14
**F.R.D** [1] - 27:12
**face** [10] - 4:25, 5:3, 20:15, 33:23, 36:20, 36:23, 42:11, 61:21, 67:18, 67:20
**Facebook** [2] - 64:15
**facing** [2] - 11:25, 16:5
**fact** [23] - 12:4, 12:22, 14:14, 14:15, 15:5, 15:7, 15:12, 19:5, 19:7, 19:10, 19:12, 19:17, 19:19, 19:23, 20:4, 30:24, 32:7, 37:9, 43:8, 43:20, 70:12, 70:17, 76:2
**facts** [18] - 9:17, 12:25, 13:1, 14:9, 15:6, 16:9, 16:12, 19:23, 20:6, 21:5, 43:12, 43:14, 43:16, 43:18, 44:19, 68:12, 69:5, 70:11
**factual** [3] - 10:21, 15:6, 16:14
**fail** [1] - 51:2
**familiar** [2] - 68:12, 70:17
**far** [5] - 31:3, 47:4,

63:23, 67:24, 84:14
**fashion** [2] - 46:17, 50:7
**fat** [1] - 16:17
**favor** [1] - 27:7
**FBI** [2] - 1:20, 3:7
**FDC** [3] - 57:25, 85:12, 85:17
**February** [1] - 1:5
**Federal** [2] - 7:15, 8:7
**few** [1] - 45:3
**fifth** [1] - 34:9
**file** [19] - 15:2, 19:13, 35:10, 36:21, 37:17, 40:16, 41:15, 41:17, 41:24, 42:14, 43:5, 43:7, 64:11, 65:2, 65:4, 83:9, 84:15, 84:20, 84:23
**filed** [4] - 8:7, 10:19, 22:23, 70:2
**files** [3] - 16:15, 25:14, 49:10
**filing** [1] - 84:3
**fill** [1] - 50:25
**filter** [2] - 26:7, 79:21
**finally** [1] - 77:6
**fine** [2] - 67:22, 75:22
**first** [28] - 3:13, 24:21, 29:2, 32:9, 33:5, 35:6, 35:7, 36:6, 36:19, 40:2, 40:8, 40:11, 40:15, 40:18, 40:19, 41:10, 43:23, 45:12, 45:17, 58:10, 64:16, 64:17, 68:3, 68:7, 69:23, 74:20, 79:17, 82:9
**five** [2] - 45:12, 51:10
**five-minute** [1] - 51:10
**FL** [2] - 1:14, 1:18
**flight** [1] - 26:22
**Floor** [2] - 1:23, 86:9
**FLORIDA** [1] - 1:1
**Florida** [7] - 1:4, 1:24, 7:15, 8:8, 68:24, 82:25, 86:9
**flowing** [1] - 66:5
**focus** [1] - 14:4
**folder** [1] - 3:17
**folks** [4] - 21:21, 22:23, 34:4, 34:5
**following** [3] - 3:1, 73:25, 74:15
**follows** [1] - 68:3
**footnotes** [2] - 8:13
**FOR** [4] - 1:13, 1:16, 2:3, 2:6
**foreclose** [1] - 79:4
**foregoing** [1] - 86:3

**foremost** [1] - 82:9
**foresaw** [2] - 78:10, 78:23
**form** [3] - 28:15, 29:15, 81:13
**formally** [1] - 77:1
**former** [1] - 18:14
**forth** [5] - 15:11, 46:19, 47:23, 60:14, 65:1
**forward** [1] - 45:2
**four** [4] - 28:19, 46:23, 47:4, 72:11
**friend** [2] - 16:1, 76:12
**front** [1] - 81:5
**fundamental** [1] - 24:14
**funds** [7] - 27:11, 53:8, 53:13, 53:15, 53:18, 83:2, 83:20
**future** [8] - 42:17, 64:8, 65:10, 65:18, 71:3, 75:1, 78:10, 78:25

### G

**Gabrielle's** [1] - 12:16
**gain** [2] - 17:23, 21:8
**gaining** [1] - 21:7
**Garcia** [3] - 8:18, 10:18, 10:23
**Garcia's** [2] - 10:20, 10:25
**gather** [7] - 7:9, 16:6, 16:10, 16:20, 74:3, 77:17, 78:11
**gathered** [7] - 16:8, 16:23, 35:3, 37:8, 38:18, 49:25, 50:13
**gathering** [18] - 8:23, 10:3, 10:11, 11:8, 11:9, 17:19, 17:24, 18:7, 18:18, 22:15, 37:12, 37:13, 37:15, 42:1, 42:2, 77:17, 78:8, 78:18
**general** [1] - 17:10
**generally** [1] - 27:24
**generate** [1] - 16:3
**genitalia** [1] - 47:23
**gentle** [1] - 15:15
**gentleman** [2] - 9:16, 9:19
**gentlemen** [1] - 12:9
**girlfriend** [1] - 34:20
**given** [7] - 70:11, 71:24, 81:4, 81:6, 81:11
**Gonzales** [1] - 28:12

**GONZALEZ** [1] - 1:7
**Gonzalez** [75] - 3:10, 3:21, 3:25, 11:24, 12:8, 13:5, 25:25, 26:1, 28:11, 30:19, 30:20, 35:2, 35:3, 35:8, 35:13, 38:5, 38:18, 41:14, 50:1, 57:1, 59:25, 60:4, 60:7, 60:17, 60:18, 60:21, 61:3, 64:4, 64:8, 64:10, 64:14, 64:18, 64:21, 65:2, 65:5, 65:10, 65:11, 65:23, 65:24, 66:1, 66:3, 66:6, 66:8, 66:16, 66:21, 66:22, 66:23, 71:9, 72:1, 72:5, 72:10, 72:24, 73:2, 73:8, 73:19, 73:23, 74:1, 74:7, 74:19, 75:10, 75:13, 75:21, 76:4, 76:7, 76:10, 76:20, 76:24, 77:4, 77:11, 78:17, 78:24, 79:12, 79:22, 80:5, 82:2
**governed** [3] - 73:8, 74:24, 78:21
**governing** [2] - 72:19, 73:3
**GOVERNMENT** [2] - 1:13, 2:3
**Government** [30] - 6:8, 7:18, 7:23, 10:16, 12:3, 18:9, 18:23, 19:16, 21:7, 21:22, 23:25, 24:18, 31:16, 33:21, 33:22, 34:1, 36:22, 36:24, 44:7, 49:1, 49:22, 53:5, 55:16, 58:1, 72:14, 77:22, 79:10, 84:13
**government's** [1] - 4:21
**Government's** [8] - 2:10, 48:23, 48:24, 48:25, 49:1, 49:2, 57:24, 79:18
**granted** [3] - 55:8, 55:14, 55:15
**granting** [1] - 55:11
**great** [1] - 41:4
**gringo** [1] - 16:17
**guess** [8] - 30:1, 32:23, 34:1, 40:15, 50:16, 55:4, 67:7, 84:25
**guidance** [1] - 60:22

**guilt** [1] - 67:6
**guy** [1] - 70:2
**Gálvez** [1] - 39:7

### H

**hand** [4] - 18:9, 41:16, 75:1, 75:23
**hands** [1] - 18:10
**hard** [2] - 40:8, 47:18
**headnote** [1] - 9:8
**hear** [3] - 3:11, 10:15, 58:7
**heard** [1] - 67:24
**hearing** [4] - 61:13, 79:3, 84:10, 84:15
**HEARING** [1] - 1:10
**held** [3] - 3:1, 63:7, 63:11
**hello** [1] - 12:14
**help** [8] - 21:5, 76:12, 76:25, 78:14, 78:15, 78:16, 78:18, 78:20
**helping** [1] - 78:11
**hence** [1] - 27:25
**hereby** [1] - 86:3
**Hernandez** [1] - 20:20
**herself** [2] - 30:2, 30:21
**himself** [4] - 25:1, 30:3, 30:20, 68:17
**hinges** [1] - 18:15
**hired** [2] - 11:16, 74:19
**hmm** [1] - 41:1
**Hola** [3] - 3:22, 5:25, 12:11
**hold** [1] - 27:15
**holder** [1] - 68:7
**Honor** [106] - 3:9, 3:13, 4:20, 5:12, 6:12, 6:25, 7:12, 7:20, 7:25, 8:11, 9:9, 11:7, 18:11, 19:6, 19:18, 19:20, 19:25, 21:1, 21:3, 23:2, 23:5, 23:13, 24:5, 24:25, 25:22, 27:18, 30:7, 30:11, 30:15, 31:11, 31:15, 32:20, 33:19, 33:25, 35:16, 35:22, 37:20, 39:15, 40:3, 40:16, 40:24, 42:18, 42:22, 42:24, 43:3, 43:5, 44:4, 44:10, 44:23, 45:2, 46:16, 47:7, 47:14, 48:2, 48:10, 49:3, 49:20, 51:7, 51:9, 51:13, 51:15, 51:22,

53:21, 54:3, 54:13, 55:4, 55:20, 55:25, 56:15, 56:21, 57:6, 57:12, 57:19, 58:5, 58:20, 59:4, 59:15, 59:20, 60:24, 61:2, 61:14, 62:22, 66:17, 67:3, 67:9, 67:10, 69:23, 71:6, 73:14, 74:12, 74:18, 75:7, 77:12, 79:24, 80:3, 80:6, 82:7, 83:11, 83:13, 83:25, 85:4, 85:9, 85:10, 85:18
**Honor's** [1] - 82:20
**HONORABLE** [1] - 1:10
**housekeeping** [2] - 45:3, 48:11
**hundred** [1] - 50:8
**hundred-pages** [1] - 50:8
**hurdle** [1] - 43:23
**husband** [5] - 29:5, 30:21, 30:25, 31:10, 32:23

### I

**idea** [2] - 20:21, 20:22
**identify** [3] - 3:15, 3:16, 55:10
**idle** [2] - 22:9, 50:22
**Ignacio** [1] - 85:11
**illegally** [1] - 53:8
**image** [4] - 31:23, 34:14, 49:10
**images** [1] - 30:4
**imagine** [1] - 83:19
**impact** [1] - 81:14
**implements** [1] - 57:25
**implicate** [1] - 34:9
**implicated** [1] - 11:10
**implicating** [1] - 21:23
**implication** [1] - 68:18
**impressions** [4] - 5:17, 6:24, 7:11, 7:14
**IN** [1] - 2:9
**incident** [4] - 9:18, 15:20, 21:15, 21:17
**include** [1] - 9:18
**included** [1] - 7:6
**includes** [1] - 29:5
**including** [1] - 67:21
**independently** [1] - 31:6
**indicate** [1] - 84:10
**indicated** [2] - 54:3,

57:20
**indictment** [1] - 9:25
**individual** [1] - 78:25
**individually** [1] - 81:12
**individuals** [5] - 10:4, 11:3, 28:17, 60:21, 68:14
**inference** [1] - 42:15
**information** [17] - 11:9, 12:15, 12:18, 14:22, 16:10, 17:23, 18:19, 22:6, 22:8, 24:19, 43:9, 68:16, 74:14, 75:11, 75:14, 82:3, 82:15
**initial** [4] - 8:12, 8:14, 38:2, 74:22
**inquiry** [1] - 24:17
**inside** [1] - 36:22
**insinuations** [1] - 67:7
**insofar** [2] - 81:19, 81:21
**instance** [3] - 20:19, 29:3, 31:23
**instances** [1] - 62:1
**instructed** [2] - 36:9, 39:9
**instruction** [1] - 39:9
**instructions** [2] - 70:18, 73:25
**intended** [11] - 18:2, 27:25, 28:4, 33:11, 33:13, 34:3, 34:4, 34:12, 34:14, 47:23, 78:2
**intends** [1] - 37:18
**intention** [1] - 18:16
**interest** [3] - 69:13, 72:2, 81:3
**interesting** [2] - 62:13, 62:23
**interlocutory** [1] - 63:10
**international** [1] - 52:11
**Interpol** [1] - 52:12
**interpretation** [4] - 5:1, 5:2, 5:3, 20:13
**Interpreter** [2] - 1:21, 1:21
**interrupt** [1] - 48:15
**interviews** [1] - 20:9
**investigation** [1] - 11:10
**investigations** [1] - 10:21
**invoke** [1] - 69:3
**involved** [4] - 10:1, 10:13, 10:14, 10:20

**involving** [4] - 68:14, 70:13, 79:22, 81:22
**issue** [7] - 4:4, 4:18, 5:21, 62:23, 73:17, 74:13, 81:8
**issues** [2] - 21:14, 79:22
**item** [3] - 13:3, 13:4
**items** [2] - 63:6, 72:11
**itself** [2] - 26:16, 67:8

## J

**Jamie** [1] - 3:20
**January** [3] - 9:19, 10:9, 21:16
**Javier** [3] - 16:17, 20:19, 20:20
**jdberrio@hotmail. com** [1] - 1:19
**JJ** [1] - 3:21
**joint** [9] - 62:11, 62:16, 62:23, 63:12, 66:1, 66:2, 66:4, 66:6
**JOSE** [1] - 1:7
**Jose** [15] - 1:20, 3:6, 3:10, 35:7, 41:14, 61:23, 63:22, 63:25, 68:11, 71:3, 73:19, 73:23, 74:1, 74:7, 77:5
**Juan** [1] - 3:9
**JUAN** [1] - 1:16
**Juarez** [1] - 12:10
**judge** [2] - 14:25, 45:9
**JUDGE** [1] - 1:11
**Judge** [4] - 5:21, 8:9, 18:4, 73:11
**Judge's** [1] - 45:11
**judgment** [4] - 39:10, 49:24, 50:8, 51:5
**judicial** [1] - 36:21
**July** [4] - 35:18, 38:20, 39:5, 39:18
**jury** [1] - 59:6
**justice** [2] - 38:20, 39:6
**Jácome** [3] - 3:21, 4:1, 4:24

## K

**KALISCH** [65] - 59:15, 59:23, 60:1, 60:24, 61:2, 61:14, 61:22, 66:17, 67:10, 67:22, 67:25, 68:2, 68:4, 68:11, 69:10, 69:15, 69:18, 69:21, 70:4,

70:11, 71:11, 71:14, 71:17, 71:20, 71:23, 72:3, 72:6, 72:8, 72:12, 72:16, 72:21, 72:25, 73:5, 73:10, 73:21, 73:24, 74:2, 74:5, 74:8, 74:11, 75:16, 75:18, 75:25, 76:5, 76:9, 76:13, 76:19, 76:23, 77:2, 77:7, 80:10, 81:1, 81:19, 82:5, 82:7, 82:24, 83:4, 83:13, 83:18, 83:22, 83:25, 85:4, 85:6, 85:8, 85:18
**Kalisch** [52] - 1:20, 25:23, 25:25, 26:2, 26:3, 26:4, 26:12, 26:13, 26:20, 26:21, 35:25, 55:7, 55:23, 56:1, 59:14, 60:1, 60:4, 60:16, 60:18, 60:21, 60:25, 61:11, 64:10, 64:14, 65:2, 65:5, 65:8, 65:11, 66:4, 66:15, 66:20, 66:21, 66:23, 67:12, 70:1, 71:9, 73:13, 73:18, 74:13, 74:15, 74:18, 75:9, 77:16, 77:17, 78:12, 78:23, 79:11, 79:13, 80:1, 80:12, 81:18, 82:23
**Kalisch's** [6] - 57:16, 66:7, 67:6, 67:7, 81:14
**keep** [7] - 47:6, 59:5, 67:19, 67:20, 77:21, 77:23
**Kendall** [1] - 1:17
**kept** [1] - 18:2
**key** [1] - 8:14
**keys** [1] - 8:11
**kidnapping** [2] - 9:19, 15:19
**Kisic** [1] - 1:21
**knowing** [2] - 11:10, 82:10
**knowledge** [5] - 17:17, 21:7, 21:8, 53:17, 78:7
**known** [3] - 39:6, 60:18, 66:25
**knows** [5] - 21:13, 21:14, 21:20, 76:25

## L

**lack** [1] - 85:17

**lady** [3] - 9:20, 42:5
**Lancha** [3] - 4:15, 5:24
**last** [12] - 8:7, 35:11, 36:25, 38:11, 38:13, 40:9, 40:19, 42:4, 48:18, 59:3, 85:11
**late** [2] - 26:23, 59:15
**law** [4] - 8:13, 9:10, 27:2, 68:18
**lawyer** [32] - 4:12, 4:13, 4:24, 5:1, 8:19, 8:20, 8:21, 9:13, 10:23, 11:4, 17:4, 17:18, 17:19, 18:13, 18:15, 19:8, 19:22, 20:3, 20:7, 20:11, 22:1, 43:15, 43:17, 43:18, 50:12, 66:2, 66:3, 76:25, 78:8, 82:17
**lawyer's** [2] - 11:6, 19:13
**lawyer-client** [1] - 18:13
**lawyers** [2] - 18:19, 19:2
**lead** [1] - 70:14
**learn** [1] - 83:7
**least** [6] - 36:23, 43:17, 53:7, 70:15, 75:11, 82:17
**leave** [4] - 52:15, 80:12, 81:8, 81:15
**left** [3] - 25:20, 53:13, 81:2
**legal** [15] - 4:3, 5:6, 5:17, 6:7, 6:24, 7:11, 7:14, 10:21, 10:24, 12:16, 12:19, 18:17, 26:2, 43:10, 52:8
**lends** [1] - 69:6
**lengthy** [1] - 47:14
**less** [1] - 53:10
**li** [1] - 38:24
**liable** [1] - 82:12
**licenciado** [1] - 3:22
**lifted** [2] - 57:21, 57:22
**likely** [1] - 31:14
**limit** [2] - 22:15, 63:21
**limited** [3] - 7:13, 11:12, 11:17
**limiting** [2] - 62:5
**line** [1] - 11:20
**list** [3] - 82:22, 83:16, 83:20
**listed** [1] - 4:2
**literally** [1] - 50:7
**litigation** [48] - 5:17,

6:24, 9:13, 9:15, 10:3, 10:13, 13:13, 13:17, 13:24, 14:1, 14:4, 14:6, 16:5, 16:23, 17:2, 17:5, 20:7, 20:12, 20:18, 21:12, 24:15, 25:20, 35:4, 37:9, 38:19, 40:1, 41:12, 41:19, 41:20, 41:21, 41:22, 41:23, 42:17, 43:25, 44:1, 44:15, 50:15, 50:21, 50:22, 51:6, 64:22, 64:24, 74:4, 74:6, 77:16, 77:20, 78:10
**Litigation** [1] - 27:12
**local** [1] - 84:15
**locate** [1] - 10:11
**locating** [4] - 11:21, 11:24, 78:19
**look** [3] - 6:9, 10:5, 40:2
**looking** [5] - 30:12, 50:6, 60:21, 61:4, 75:2
**loses** [1] - 29:16
**lower** [1] - 63:7
**Luis** [3] - 35:8, 39:7, 41:15

## M

**Madrid** [3] - 35:18, 38:20, 39:5
**Maikel** [10] - 9:16, 9:19, 11:23, 15:19, 15:22, 21:6, 21:14, 50:18, 64:13
**mail** [2] - 54:1, 54:2
**mailed** [1] - 72:11
**maintain** [2] - 19:16, 63:3
**maintained** [3] - 36:21, 63:4, 84:11
**maintaining** [1] - 18:25
**Management** [1] - 27:12
**manifested** [1] - 18:16
**Maria** [2] - 1:21, 28:12
**marital** [8] - 26:25, 27:7, 27:18, 28:2, 28:24, 34:11, 46:10, 54:7
**mark** [1] - 48:22
**MARKED** [1] - 2:9
**Marquez** [31] - 59:21, 60:11, 60:12, 60:13, 60:19, 61:5, 61:7,

61:15, 69:9, 69:19, 70:14, 70:18, 70:19, 70:20, 71:25, 72:14, 72:19, 72:22, 73:18, 73:22, 74:10, 74:14, 75:19, 76:2, 76:4, 77:9, 78:12, 78:15, 82:16
**Marquez's** [1] - 74:4
**marriage** [7] - 28:2, 28:8, 28:9, 28:11, 32:3, 33:2, 54:11
**married** [8] - 32:13, 34:19, 46:18, 47:21, 54:10, 54:14, 54:15, 54:20
**mask** [3] - 61:21, 67:18, 67:21
**masks** [1] - 67:20
**material** [5] - 15:6, 65:6, 65:8, 65:21, 74:17
**materialize** [1] - 12:2
**materials** [7] - 17:19, 18:8, 18:10, 18:22, 44:7, 64:19, 78:8
**matter** [9] - 10:1, 24:7, 26:1, 35:1, 46:14, 48:11, 57:16, 76:22, 86:5
**matters** [11] - 11:11, 26:19, 26:23, 26:25, 56:16, 60:8, 69:2, 70:13, 78:20, 84:20, 84:23
**McCARN** [2] - 1:22, 86:8
**mean** [12] - 11:12, 11:20, 15:24, 16:17, 32:18, 32:19, 32:22, 37:11, 70:8, 79:1, 81:9, 82:5
**means** [5] - 24:19, 62:15, 63:12, 63:13, 68:20
**meant** [1] - 46:18
**meet** [3] - 33:17, 44:19, 45:24
**members** [1] - 65:24
**memo** [1] - 8:7
**memorandum** [2] - 62:13, 64:12
**mental** [4] - 5:16, 6:23, 7:10, 7:13
**mention** [1] - 65:9
**mentioned** [2] - 69:18, 72:9
**message** [9] - 28:4, 28:15, 29:3, 29:4, 31:5, 31:24, 64:17,

64:18, 70:1
**messages** [1] - 29:19
**met** [3] - 34:20, 34:25, 36:20
**Mexican** [1] - 19:1
**Mexico** [19] - 3:23, 9:17, 9:20, 9:22, 11:3, 15:18, 21:15, 23:1, 61:17, 64:11, 64:12, 64:21, 65:24, 65:25, 66:13, 66:14, 68:15, 74:14, 75:24
**MIAMI** [1] - 1:2
**Miami** [8] - 1:4, 1:14, 1:18, 1:23, 1:24, 64:20, 86:9, 86:9
**Michael** [1] - 3:5
**MICHAEL** [1] - 1:13
**michael.davis@ usdoj.gov** [1] - 1:15
**microphone** [1] - 61:12
**middle** [1] - 65:6
**Middle** [1] - 82:24
**might** [13] - 10:13, 11:25, 17:1, 17:5, 37:9, 48:2, 56:4, 58:2, 58:9, 66:9, 69:13, 71:13, 75:2
**Miguel** [16] - 3:10, 35:8, 39:7, 41:14, 61:23, 62:5, 63:22, 63:25, 68:11, 71:3, 73:19, 73:23, 74:1, 74:7, 77:5, 77:11
**MIGUEL** [1] - 1:7
**mind** [2] - 56:23, 82:9
**minor** [1] - 56:21
**minute** [3] - 23:14, 51:10, 56:4
**MISCELLANEOUS** [1] - 2:15
**moment** [1] - 7:24
**Monday** [1] - 58:24
**Monica** [6] - 9:20, 15:19, 15:22, 21:6, 21:13, 50:18
**moot** [1] - 81:7
**morning** [1] - 77:5
**most** [2] - 26:9, 62:17
**motion** [2] - 81:5, 84:9
**mouth** [1] - 61:1
**mouths** [1] - 67:19
**moving** [1] - 12:6
**MR** [393] - 3:5, 3:9, 3:13, 3:16, 3:20, 4:14, 4:20, 4:22, 5:12, 5:18, 6:3, 6:12, 6:17, 6:19, 6:22, 6:25, 7:3, 7:6, 7:9,

7:12, 7:17, 7:20, 7:24, 8:2, 8:3, 8:5, 8:6, 8:11, 8:17, 8:20, 8:23, 9:3, 9:6, 9:9, 9:14, 9:16, 9:23, 10:17, 11:7, 12:7, 12:14, 12:18, 12:23, 13:1, 13:4, 13:11, 14:10, 14:13, 14:17, 15:1, 15:4, 15:8, 15:15, 15:25, 16:11, 16:19, 17:8, 17:13, 19:3, 19:6, 19:9, 19:12, 19:18, 19:20, 19:25, 20:2, 21:3, 21:13, 21:18, 21:22, 22:3, 22:5, 22:11, 22:14, 22:19, 22:25, 23:2, 23:5, 23:9, 23:12, 23:17, 23:23, 24:1, 24:5, 24:8, 24:25, 25:5, 25:8, 25:11, 25:22, 26:13, 26:19, 26:25, 27:2, 27:6, 27:11, 27:18, 27:23, 29:1, 29:25, 30:7, 30:11, 30:15, 30:17, 30:19, 31:1, 31:11, 31:19, 31:21, 32:8, 32:10, 32:14, 32:16, 32:22, 33:3, 33:6, 33:9, 33:14, 33:19, 33:25, 34:17, 34:22, 35:1, 35:21, 36:5, 36:9, 36:13, 36:15, 36:17, 36:19, 37:11, 37:13, 37:15, 37:24, 38:3, 38:8, 38:10, 38:13, 38:15, 38:17, 38:23, 39:2, 39:12, 39:15, 39:20, 39:22, 40:2, 40:5, 40:10, 40:13, 40:15, 40:24, 41:2, 41:5, 41:7, 41:13, 41:22, 41:24, 42:10, 42:22, 42:23, 43:3, 43:4, 43:12, 43:16, 44:3, 44:9, 44:12, 44:15, 44:17, 44:23, 45:2, 45:8, 45:14, 45:16, 45:17, 45:20, 45:22, 45:23, 46:1, 46:3, 46:5, 46:7, 46:13, 46:16, 46:20, 46:23, 47:1, 47:3, 47:9, 47:10, 47:11, 47:12, 47:13, 47:14, 48:2, 48:4, 48:10, 48:16, 48:19, 49:14, 49:16, 49:20, 49:25, 50:3,

50:11, 50:16, 50:24, 51:3, 51:7, 51:8, 51:13, 51:15, 51:19, 51:22, 51:24, 52:1, 52:3, 52:5, 52:7, 52:10, 52:14, 52:17, 52:20, 52:23, 52:24, 53:1, 53:7, 53:10, 53:14, 53:17, 53:20, 53:24, 54:3, 54:6, 54:11, 54:13, 54:18, 55:1, 55:4, 55:6, 55:8, 55:13, 55:18, 55:19, 55:22, 55:25, 56:5, 56:9, 56:13, 56:15, 56:18, 56:24, 57:5, 57:8, 57:10, 57:12, 57:15, 57:19, 58:3, 58:5, 58:13, 58:15, 58:19, 58:22, 58:25, 59:4, 59:8, 59:15, 59:20, 59:23, 59:24, 60:1, 60:2, 60:6, 60:24, 61:2, 61:14, 61:22, 64:4, 66:11, 66:17, 66:18, 67:10, 67:22, 67:25, 68:4, 68:11, 69:10, 69:15, 69:18, 69:21, 69:23, 70:4, 70:11, 71:6, 71:8, 71:11, 71:12, 71:14, 71:15, 71:17, 71:18, 71:20, 71:21, 71:23, 71:24, 72:3, 72:4, 72:6, 72:7, 72:8, 72:9, 72:12, 72:13, 72:16, 72:17, 72:21, 72:23, 72:25, 73:1, 73:5, 73:7, 73:10, 73:11, 73:14, 73:21, 73:22, 73:24, 73:25, 74:2, 74:3, 74:5, 74:6, 74:8, 74:9, 74:11, 74:12, 75:7, 75:9, 75:16, 75:17, 75:18, 75:20, 75:25, 76:3, 76:5, 76:6, 76:9, 76:10, 76:13, 76:16, 76:19, 76:20, 76:23, 76:24, 77:2, 77:3, 77:7, 77:12, 77:15, 79:23, 79:24, 80:3, 80:6, 80:10, 80:12, 80:16, 80:19, 80:22, 80:24, 81:1, 81:2, 81:19, 82:5, 82:7, 82:24, 83:4, 83:11, 83:13, 83:18, 83:22, 83:25, 84:2, 84:14, 84:20, 84:22, 84:25,

85:3, 85:4, 85:6, 85:8, 85:18
**must** [4] - 6:11, 13:23, 28:5, 77:19
**Mérida** [1] - 21:15

## N

**name** [2] - 8:17, 12:9
**nature** [3] - 30:1, 56:20, 77:24
**necessarily** [3] - 43:16, 44:24, 78:4
**necessary** [3] - 46:9, 78:2, 79:16
**need** [26] - 12:12, 14:18, 14:22, 14:24, 16:16, 17:1, 17:5, 24:16, 24:23, 25:10, 25:16, 34:15, 34:18, 38:7, 48:1, 48:21, 53:21, 57:1, 67:12, 67:23, 71:13, 76:12, 84:8
**needed** [1] - 57:24
**needs** [5] - 14:21, 24:19, 32:11, 55:16, 68:6
**never** [1] - 40:9
**New** [2] - 27:8, 27:14
**news** [1] - 64:15
**next** [10] - 35:15, 44:6, 44:18, 45:13, 56:25, 57:5, 57:8, 57:9, 58:24
**night** [1] - 8:7
**NO** [1] - 1:2
**none** [1] - 37:4
**North** [3] - 1:17, 1:23, 86:9
**Northeast** [1] - 1:14
**nose** [2] - 60:25, 61:20
**noses** [1] - 67:19
**notable** [1] - 63:16
**notes** [4] - 35:4, 35:5, 35:9, 55:18
**nothing** [9] - 5:2, 10:19, 50:13, 64:22, 65:22, 66:11, 66:12, 66:14, 84:2
**notice** [1] - 70:2
**November** [17] - 3:17, 54:9, 60:10, 64:9, 64:14, 64:17, 64:19, 65:7, 65:9, 69:24, 75:21, 76:6, 76:10, 76:17, 76:24, 77:3
**nude** [1] - 28:17
**number** [2] - 54:16, 62:25

**numbers** [3] - 47:4, 53:2

## O

**o'clock** [3] - 58:6, 85:6, 85:7
**oath** [3] - 25:2, 67:13, 67:23
**objection** [2] - 48:7, 52:24
**objects** [1] - 16:3
**observations** [1] - 81:17
**obtain** [7] - 22:5, 22:8, 24:19, 36:1, 37:22, 38:5, 39:8
**obtained** [3] - 41:11, 49:25, 72:13
**obtaining** [1] - 4:3
**obviously** [1] - 79:2
**occasion** [1] - 34:19
**occurred** [3] - 9:18, 21:15, 28:11
**OF** [2] - 1:1, 1:4
**offer** [4] - 14:23, 31:12, 31:13, 48:21
**offered** [4] - 15:3, 15:4, 64:10, 84:3
**office** [2] - 81:12, 83:7
**OFFICER** [4] - 24:10, 24:12, 59:10, 59:12
**official** [2] - 1:23, 49:23
**Official** [1] - 86:8
**once** [5] - 5:2, 5:7, 31:5, 42:10, 55:10
**One** [1] - 7:24
**one** [33] - 4:9, 4:17, 7:22, 8:24, 16:17, 18:14, 21:18, 25:15, 26:14, 28:4, 28:17, 33:17, 36:6, 36:24, 40:6, 40:19, 45:8, 45:13, 45:18, 48:11, 50:18, 51:17, 55:22, 60:20, 63:18, 66:2, 66:25, 69:7, 70:6, 76:5, 77:25, 79:4
**one's** [2] - 34:14
**ones** [8] - 9:21, 35:22, 35:23, 36:10, 36:11, 48:24, 48:25
**ongoing** [1] - 42:17
**opening** [1] - 7:22
**opinion** [8] - 12:5, 12:22, 14:12, 16:12, 16:14, 19:2, 28:23
**opinions** [2] - 13:2, 16:9

**opposed** [2] - 22:9, 50:22
**opposing** [7] - 17:17, 17:22, 18:2, 21:8, 68:19, 77:21, 78:7
**opposition** [1] - 85:17
**oral** [1] - 49:24
**orally** [1] - 84:10
**order** [18] - 13:22, 45:4, 52:12, 57:20, 57:21, 72:19, 73:3, 73:9, 81:6, 81:21, 82:4, 82:5, 82:6, 82:13, 82:18, 84:9, 84:18, 85:12
**organization** [2] - 65:25, 68:15
**Otamendi** [1] - 12:10
**otherwise** [1] - 54:23
**outcomes** [1] - 16:16
**outlined** [1] - 64:11
**outlines** [1] - 3:14
**outside** [3] - 17:16, 56:1, 78:6
**overtones** [1] - 67:5
**overview** [1] - 62:25
**own** [7] - 5:1, 6:4, 22:8, 22:23, 61:16, 65:19, 77:9

## P

**P.A** [1] - 1:17
**p.m** [14] - 1:6, 3:1, 24:11, 58:25, 59:1, 59:5, 59:11, 68:1, 69:25, 80:5, 85:20
**page** [23] - 6:15, 8:10, 35:7, 35:9, 35:11, 35:14, 35:15, 36:25, 38:11, 38:13, 40:2, 40:8, 40:9, 40:11, 40:15, 40:18, 40:19, 41:2, 41:10, 42:4, 69:24
**Page** [8] - 2:3, 2:6, 2:16, 11:18, 11:19, 14:21, 69:24
**Pages** [1] - 1:8
**pages** [3] - 8:12, 35:11, 50:8
**paid** [1] - 76:15
**paperwork** [1] - 74:4
**parameters** [1] - 62:19
**parcel** [1] - 4:10
**Pardon** [1] - 72:23
**pardon** [5] - 42:12, 49:7, 55:14, 72:7, 72:10
**part** [11] - 4:8, 4:10,

11:20, 33:3, 43:18, 48:2, 49:10, 50:3, 50:17, 55:15, 68:15
**Participants** [1] - 3:20
**particular** [3] - 4:17, 60:9, 84:8
**parties** [6] - 18:3, 25:21, 62:8, 62:17, 63:18, 77:23
**party** [6] - 13:13, 13:17, 17:4, 18:2, 63:6, 78:3
**party's** [2] - 13:14, 13:18
**passport** [2] - 16:17, 20:20
**past** [8] - 9:6, 60:6, 66:8, 66:22, 66:24, 67:16, 68:22
**pause** [1] - 43:22
**Pause** [12] - 17:12, 18:24, 21:2, 27:16, 28:21, 40:7, 40:20, 40:23, 51:12, 55:24, 57:4, 67:11
**payment** [1] - 83:19
**PDF** [1] - 49:5
**PDFs** [1] - 49:9
**pending** [3] - 55:6, 60:8, 84:9
**people** [4] - 25:13, 31:2, 53:7, 53:10
**perhaps** [7] - 24:21, 25:23, 26:3, 31:8, 38:6, 58:2, 66:9
**period** [1] - 9:25
**person** [3] - 17:24, 32:18, 75:3
**personally** [1] - 65:14
**perspective** [1] - 74:23
**pertaining** [1] - 43:1
**pertains** [2] - 10:22, 26:24
**phone** [3] - 29:9, 29:14, 31:5
**phones** [1] - 31:3
**phonetic)** [1] - 12:10
**photo** [3] - 16:16, 31:7, 31:24
**photograph** [3] - 28:14, 29:10, 47:19
**photographs** [15] - 28:19, 31:9, 31:18, 32:12, 32:25, 33:1, 33:12, 34:7, 46:10, 46:24, 47:4, 47:22, 51:18
**photos** [8] - 4:8, 28:16, 28:17, 30:8,

32:3, 32:4, 32:5, 47:20
**pick** [3] - 43:7, 51:25
**picture** [5] - 29:12, 29:13, 29:17, 30:20, 30:21
**pictures** [11] - 29:2, 29:4, 29:5, 29:8, 29:17, 29:18, 30:2, 30:3, 30:12, 31:2, 32:18
**place** [4] - 11:15, 67:23, 68:10, 82:19
**placed** [1] - 67:13
**places** [1] - 30:8
**Plaintiff** [1] - 1:5
**plan** [1] - 84:5
**plane** [2] - 56:7, 56:9
**point** [7] - 35:13, 44:5, 64:25, 77:7, 81:6, 81:9, 83:6
**points** [2] - 8:13, 77:25
**portion** [1] - 20:15
**position** [8] - 4:21, 18:7, 18:11, 19:4, 44:10, 44:13, 64:1, 79:18
**possibility** [5] - 70:19, 77:10, 78:24, 79:4, 81:4
**possible** [3] - 47:7, 56:24, 81:2
**possibly** [3] - 70:8, 75:1, 78:11
**post** [2] - 64:15
**potential** [5] - 68:12, 68:23, 69:2, 81:3, 81:10
**PRE** [1] - 2:9
**preamble** [1] - 50:8
**precisely** [1] - 61:19
**predicate** [1] - 38:4
**prefer** [1] - 22:14
**prepare** [5] - 16:4, 22:11, 23:7, 23:9, 73:19
**prepared** [7] - 13:12, 16:23, 16:24, 35:12, 36:1, 36:11, 43:25
**Prepared** [1] - 13:17
**preparing** [2] - 16:24, 73:23
**preponderance** [2] - 13:22, 31:11
**prerequisites** [2] - 28:1, 28:8
**presence** [1] - 59:18
**present** [4] - 22:18, 39:8, 80:9, 82:9

**Present** [1] - 1:20
**presumably** [1] - 66:24
**presumed** [2] - 28:6, 28:19
**presumption** [2] - 27:3, 27:6
**pretty** [1] - 64:12
**prevent** [1] - 21:7
**preventing** [2] - 17:18, 78:8
**previously** [3] - 25:25, 34:5, 61:25
**primary** [1] - 14:4
**private** [1] - 27:19
**privately** [2] - 27:24, 83:21
**privilege** [68] - 3:12, 5:22, 8:24, 10:8, 11:11, 11:12, 13:7, 13:20, 13:21, 18:5, 18:6, 18:11, 20:17, 25:18, 26:8, 26:9, 26:25, 27:7, 27:19, 28:2, 28:3, 28:13, 28:24, 33:11, 34:10, 34:11, 35:17, 35:23, 36:2, 36:4, 36:6, 44:21, 45:5, 45:11, 45:18, 45:20, 49:21, 51:24, 59:25, 60:3, 62:11, 62:12, 62:16, 62:25, 63:3, 63:4, 63:7, 63:11, 63:12, 63:14, 63:24, 63:25, 64:24, 68:6, 68:7, 68:20, 69:3, 70:25, 73:15, 75:6, 78:1, 78:4, 79:7, 81:23
**privileged** [20] - 4:9, 4:23, 5:9, 18:22, 28:1, 28:20, 29:6, 30:5, 52:9, 53:25, 54:2, 54:6, 60:23, 61:6, 61:16, 61:19, 63:18, 66:5, 75:4, 84:11
**privileges** [2] - 54:7, 63:15
**prob** [1] - 31:14
**problem** [3] - 31:16, 47:18, 83:23
**proceed** [8] - 12:7, 14:19, 14:20, 23:15, 35:23, 49:22, 56:12, 80:1
**proceeding** [2] - 13:7, 15:17
**proceedings** [23] - 3:1, 17:12, 18:24,

21:2, 27:16, 28:21, 39:8, 40:7, 40:20, 40:23, 43:1, 43:11, 43:22, 44:2, 50:14, 51:12, 55:24, 57:4, 58:11, 63:2, 67:11, 85:20, 86:4
**Proceedings............. .......................** [1] - 2:16
**process** [1] - 62:9
**produced** [1] - 60:23
**product** [80] - 5:12, 5:14, 6:10, 6:18, 6:21, 6:22, 7:13, 8:21, 8:25, 9:3, 10:25, 11:1, 11:5, 11:12, 11:17, 12:4, 12:5, 12:7, 12:8, 12:20, 12:21, 12:22, 13:8, 13:10, 13:11, 13:20, 13:21, 14:12, 14:15, 15:6, 15:12, 15:17, 15:24, 16:10, 16:18, 17:6, 17:14, 17:15, 17:25, 18:5, 18:8, 18:11, 19:2, 19:5, 19:7, 19:11, 19:12, 19:17, 19:19, 19:24, 20:4, 20:17, 21:1, 25:18, 35:17, 37:4, 37:10, 42:3, 43:5, 43:6, 43:8, 43:21, 44:21, 49:22, 51:21, 60:16, 73:15, 73:17, 74:17, 75:6, 77:14, 77:19, 77:23, 78:2, 78:5, 78:22, 79:7, 79:17
**professional** [1] - 18:16
**proffers** [1] - 5:5
**prong** [1] - 24:21
**prongs** [1] - 27:7
**proof** [2] - 26:11, 32:2
**proper** [1] - 17:25
**properly** [1] - 67:18
**property** [1] - 12:16
**proponent** [4] - 13:19, 13:21, 13:23, 77:19
**proposition** [1] - 17:4
**protect** [5] - 17:15, 17:17, 27:19, 78:5, 78:6
**protected** [8] - 5:14, 18:8, 35:16, 52:18, 74:17, 75:6, 77:18, 79:7
**protecting** [1] - 64:23
**protection** [1] - 13:23

**protective** [8] - 72:19, 73:3, 73:9, 81:6, 81:20, 82:5, 82:6, 82:18
**protects** [2] - 13:11, 44:21
**protocol** [1] - 74:15
**prove** [2] - 13:23, 77:19
**provide** [2] - 75:14
**provided** [6] - 3:17, 18:22, 28:9, 42:6, 48:12, 62:3
**provides** [3] - 20:3, 27:20, 27:23
**providing** [1] - 54:1
**proving** [1] - 4:23
**provocative** [3] - 33:12, 34:6, 34:13
**publishing** [1] - 62:3
**purport** [1] - 47:22
**purpose** [14] - 4:2, 14:5, 17:13, 17:15, 17:21, 17:22, 18:10, 21:6, 61:5, 74:9, 77:21, 77:22, 78:4, 78:11
**purposes** [3] - 11:3, 28:24, 50:14
**pursuant** [1] - 27:8
**pursue** [1] - 83:8
**put** [4] - 40:9, 40:22, 43:9, 57:13
**putative** [1] - 17:25
**puts** [2] - 12:11, 33:24
**putting** [2] - 41:18, 41:24

## Q

**qualify** [1] - 37:9
**que** [1] - 38:23
**questions** [8] - 16:15, 19:23, 20:11, 45:3, 54:22, 71:6, 73:13, 75:7
**quickly** [1] - 40:21
**quote** [7] - 76:1, 76:7, 76:11, 76:18, 76:20, 76:21

## R

**ran** [1] - 83:2
**rate** [1] - 23:16
**rather** [4] - 17:16, 58:16, 64:22, 78:6
**re** [2] - 27:11, 62:14
**reach** [3] - 26:2, 60:8, 74:1

**reached** [1] - 60:9
**read** [8] - 6:1, 17:10, 42:5, 61:2, 62:13, 62:22, 77:24, 78:13
**reading** [2] - 8:12, 17:8
**ready** [4] - 6:9, 15:22, 46:21, 49:16
**really** [2] - 40:8, 65:22
**reason** [4] - 14:4, 30:5, 51:2, 53:22
**reasonable** [2] - 31:13, 70:14
**reasonably** [2] - 18:1, 70:14
**reasons** [5] - 5:8, 20:25, 65:15, 65:20
**received** [1] - 15:22
**receiving** [1] - 72:18
**recent** [1] - 70:6
**recess** [4] - 24:11, 56:11, 59:8, 59:11
**recipient** [1] - 31:10
**recipients** [1] - 30:24
**recollection** [2] - 55:19, 55:20
**record** [8] - 12:13, 45:4, 47:6, 47:7, 48:22, 51:2, 62:14, 84:14
**records** [7] - 20:10, 25:10, 26:10, 37:23, 38:5, 39:18, 49:23
**recover** [1] - 4:15
**redact** [5] - 52:15, 53:19, 53:20, 53:22, 55:16
**redacted** [3] - 53:2, 53:21, 54:7
**reduced** [2] - 49:24, 51:5
**refer** [1] - 5:23
**reference** [1] - 39:25
**refers** [2] - 5:23, 40:12
**reflects** [2] - 35:7, 73:5
**regard** [3] - 3:13, 25:22, 26:14
**regarding** [10] - 4:3, 4:15, 6:7, 12:16, 15:8, 21:15, 22:22, 60:14, 61:7
**regardless** [1] - 31:4
**regards** [6] - 5:19, 5:20, 56:18, 57:19, 73:14, 73:15
**regularly** [1] - 60:8
**relate** [2] - 10:8, 10:9
**relating** [1] - 42:13
**relationship** [7] -

13:16, 18:13, 67:14, 68:22, 70:10, 70:12, 79:15
**released** [2] - 63:2, 63:4
**relevance** [2] - 24:17, 79:19
**relevant** [4] - 25:23, 44:8, 49:6, 53:20
**relinquish** [1] - 48:7
**relinquishing** [1] - 45:5
**rely** [1] - 17:3
**relying** [2] - 6:21, 27:3
**remain** [3] - 78:2, 80:6, 83:14
**remains** [1] - 26:24
**remember** [4] - 61:4, 69:19, 76:13, 76:19
**rendered** [2] - 52:22, 55:16
**renouncing** [2] - 45:10, 45:15
**repeat** [1] - 36:8
**REPORTED** [1] - 1:22
**reporter** [2] - 6:2, 39:4
**Reporter** [2] - 1:23, 86:8
**REPORTER** [1] - 3:2
**Reporter's** [1] - 2:17
**represent** [22] - 11:16, 42:1, 60:17, 60:18, 60:20, 62:2, 62:8, 62:10, 66:23, 67:6, 69:12, 69:21, 70:20, 71:16, 72:1, 74:19, 75:2, 75:3, 77:11, 78:25, 79:1
**representation** [11] - 43:10, 49:14, 64:7, 64:8, 65:22, 66:16, 71:3, 71:13, 71:18, 72:14, 74:24
**representations** [1] - 60:15
**represented** [9] - 25:25, 35:2, 60:12, 60:19, 62:10, 66:1, 66:8, 66:22, 68:24
**representing** [14] - 42:19, 60:13, 66:9, 67:2, 69:9, 69:13, 70:16, 70:17, 71:10, 71:25, 74:9, 74:13, 78:24, 79:4
**represents** [2] - 39:15, 41:17
**request** [8] - 37:2, 37:3, 41:12, 50:1, 50:3, 50:21, 64:22,

77:1
**requested** [5] - 39:12, 42:7, 50:4, 50:17, 50:18
**requesting** [2] - 4:14, 39:22
**requests** [1] - 65:5
**require** [1] - 84:15
**reserve** [4] - 27:11, 46:23, 47:25, 55:2
**Reserve** [1] - 27:12
**reserved** [1] - 55:4
**resolve** [1] - 57:15
**Resorts** [6] - 7:14, 13:20, 16:22, 17:14, 17:20, 77:25
**respect** [2] - 49:3, 55:9
**respected** [1] - 47:22
**respectfully** [1] - 5:8
**response** [2] - 20:4, 76:21
**rest** [1] - 84:12
**result** [1] - 68:23
**retained** [3] - 11:13, 74:18, 83:21
**retainer** [3] - 11:15, 18:14, 71:22
**retaining** [1] - 11:2
**reveal** [1] - 41:11
**revealed** [2] - 19:15, 19:16
**reviewing** [2] - 26:8, 78:13
**Reyes** [2] - 64:13, 64:16
**Reynaldo** [1] - 75:22
**right-hand** [1] - 41:16
**Rinehart** [1] - 8:9
**ripe** [1] - 26:20
**rise** [5] - 3:2, 24:10, 24:12, 59:10, 59:12
**road** [5] - 4:16, 16:6, 17:2, 18:21, 75:3
**Rogelio** [1] - 8:17
**role** [1] - 39:9
**RPR** [2] - 1:22, 86:8
**rule** [8] - 7:4, 17:10, 17:15, 26:17, 26:19, 43:15, 78:5, 84:9
**ruled** [3] - 45:9, 51:16, 84:10
**rules** [2] - 23:18, 84:15
**ruling** [6] - 25:16, 34:24, 35:19, 44:24, 46:1, 46:5
**rulings** [4] - 24:22, 25:10, 36:1, 45:11
**running** [1] - 26:22

## S

**safe** [1] - 67:20
**sanctions** [2] - 81:20, 81:24
**satisfied** [3] - 23:21, 31:9, 44:6
**satisfies** [2] - 34:10, 80:21
**satisfy** [7] - 6:11, 28:7, 32:11, 33:11, 36:12, 44:7, 46:7
**scheduled** [3] - 58:19, 58:22, 58:23
**Scott** [4] - 1:20, 25:22, 26:20, 77:5
**SCOTT** [1] - 68:2
**scribbled** [1] - 35:4
**seal** [1] - 84:23
**seated** [4] - 3:3, 24:13, 59:13, 68:5
**second** [8] - 7:22, 7:25, 11:4, 11:20, 35:9, 40:6, 64:18
**secretary** [2] - 27:11, 39:6
**section** [4] - 8:14, 9:7, 9:10
**SECURITY** [4] - 24:10, 24:12, 59:10, 59:12
**see** [19] - 4:1, 5:18, 5:23, 6:15, 12:21, 12:24, 15:2, 15:4, 15:9, 15:12, 17:14, 24:14, 41:25, 53:10, 53:22, 57:3, 76:17, 76:18, 80:24
**seek** [5] - 11:13, 11:14, 14:6, 18:16, 80:17
**seeking** [6] - 5:1, 10:8, 12:18, 12:19, 18:19, 22:22
**self** [7] - 4:25, 5:3, 20:14, 20:15, 26:16, 28:14, 28:15
**self-evident** [5] - 4:25, 5:3, 20:14, 20:15, 26:16
**self-expression** [1] - 28:15
**selfie** [2] - 30:13
**selfies** [2] - 30:22, 31:2
**send** [8] - 15:25, 16:1, 16:16, 64:10, 65:2, 65:3, 75:23, 77:6
**sender** [7] - 30:10, 30:11, 30:16, 30:18, 30:19, 30:20, 31:9

**senders** [2] - 30:22, 30:24
**sending** [12] - 11:22, 29:4, 30:19, 30:21, 34:13, 43:6, 72:18, 72:22, 72:23, 73:2, 82:2
**sends** [1] - 65:8
**sent** [10] - 32:3, 32:12, 34:18, 58:1, 64:14, 64:18, 72:10, 72:22, 73:7, 76:7
**sentence** [3] - 50:17, 64:15
**sentenced** [2] - 21:19, 21:21
**sentences** [2] - 9:22, 15:21
**sentencing** [1] - 47:14
**separate** [1] - 29:15
**separation** [3] - 57:20, 85:12
**series** [1] - 48:12
**services** [5] - 11:14, 52:8, 52:13, 52:22, 55:16
**serving** [1] - 9:22
**set** [3] - 26:6, 58:5, 66:4
**setting** [1] - 62:21
**shake** [1] - 75:1
**shall** [1] - 59:8
**sheet** [1] - 50:9
**short** [1] - 79:13
**shortly** [1] - 56:8
**show** [5] - 24:18, 39:17, 48:6, 55:18, 79:18
**showing** [5] - 24:16, 24:23, 32:1, 79:16
**shown** [2] - 29:18, 79:11
**shows** [4] - 20:16, 26:16, 41:13, 50:6
**side** [1] - 41:16
**Sierra** [2] - 1:20, 3:6
**sign** [1] - 22:12
**signature** [1] - 33:24
**similar** [1] - 38:6
**similarly** [2] - 22:1, 51:2
**simple** [4] - 31:19, 32:24, 37:3, 46:14
**simply** [8] - 10:19, 11:2, 11:15, 29:10, 29:18, 37:17, 42:18, 43:6
**sit** [1] - 61:11
**sita)** [1] - 38:24
**situation** [2] - 60:9,

68:14
**skipping** [1] - 35:21
**small** [1] - 26:10
**smuggling** [1] - 10:9
**solicita/que** [1] - 38:24
**someone** [2] - 25:19, 69:12
**somewhere** [1] - 29:9
**soon** [2] - 57:17, 58:11
**sorry** [19] - 3:15, 5:21, 8:22, 11:19, 18:4, 27:5, 31:8, 32:10, 35:19, 36:8, 38:12, 39:21, 40:14, 41:10, 48:14, 58:21, 60:4, 61:11, 73:21
**sort** [3] - 31:19, 66:15, 70:24
**sought** [3] - 44:8, 68:8, 79:12
**sounds** [1] - 84:24
**sources** [2] - 37:5, 37:7
**SOUTHERN** [1] - 1:1
**Southern** [3] - 7:15, 8:8, 27:13
**Spain** [8] - 25:15, 35:2, 36:22, 36:24, 41:21, 42:14, 42:20, 43:11
**Spanish** [13] - 5:20, 6:1, 12:12, 37:1, 37:22, 38:19, 38:23, 38:25, 39:3, 44:2, 50:7, 53:8
**Speaking** [1] - 38:23
**speaking** [5] - 5:20, 10:12, 63:25, 70:18, 72:21
**Special** [1] - 3:6
**specific** [3] - 15:8, 22:15, 35:13
**spoken** [1] - 61:5
**spouse** [3] - 28:4, 28:16, 34:14
**spouses** [4] - 27:20, 27:24, 29:24, 54:24
**spouses'** [1] - 47:22
**stand** [2] - 82:12
**standalone** [2] - 29:8, 30:8
**standing** [2] - 10:24, 11:5
**Start** [1] - 3:17
**start** [8] - 29:2, 41:2, 58:5, 58:13, 58:16, 58:19, 58:23, 64:6
**starting** [1] - 45:7

**starts** [2] - 3:22, 64:9
**state** [4] - 3:4, 69:4, 75:25, 82:21
**statement** [5] - 17:11, 20:23, 25:1, 66:7, 76:1
**statements** [2] - 12:24, 77:1
**states** [1] - 34:7
**STATES** [3] - 1:1, 1:4, 1:11
**States** [6] - 1:13, 3:5, 22:24, 27:13, 65:25, 86:8
**status** [7] - 56:20, 56:25, 57:5, 57:14, 58:6, 58:8, 85:4
**step** [4] - 20:5, 44:6, 44:18, 55:25
**STEPHANIE** [2] - 1:22, 86:8
**Stephanie_McCarn @flsd.uscourts. gov** [1] - 1:25
**steps** [1] - 24:17
**still** [4] - 43:4, 54:14, 75:4, 85:13
**stipulating** [1] - 48:20
**stop** [2] - 80:19, 80:20
**stored** [4] - 29:8, 29:14, 30:4, 31:6
**Street** [1] - 1:14
**strict** [1] - 62:19
**strike** [1] - 6:14
**stripped** [1] - 31:5
**stuff** [1] - 67:1
**subject** [4] - 25:1, 51:1, 68:23, 84:12
**subjective** [2] - 18:14, 70:9
**submit** [14] - 4:8, 5:8, 27:9, 28:14, 28:19, 33:19, 35:16, 38:24, 39:2, 42:3, 60:22, 74:20, 75:5, 79:6
**submitted** [2] - 5:7, 45:6
**submitting** [1] - 18:21
**substance** [2] - 63:8, 71:2
**sued** [1] - 39:19
**suffice** [2] - 33:2, 33:4
**suffices** [1] - 67:17
**suggest** [1] - 50:13
**suggested** [2] - 46:17, 85:15
**Suite** [1] - 1:17
**summary** [1] - 11:1
**superseding** [1] - 9:24
**Supp** [2] - 7:15, 8:7

**support** [3] - 5:2, 42:15, 69:6
**supported** [1] - 67:8
**supposed** [1] - 56:3
**supposition** [2] - 37:20, 42:11
**surrounding** [1] - 69:5
**sustain** [2] - 25:3, 26:11
**sustained** [2] - 4:22, 46:11
**sworn** [1] - 68:3
**synopses** [2] - 20:9, 20:10
**system** [1] - 37:1

**T**

**table** [1] - 3:6
**talks** [4] - 11:8, 11:19, 23:20, 52:10
**tangible** [4] - 13:12, 16:3, 16:4, 16:21
**team** [10] - 21:4, 26:7, 60:23, 79:9, 79:21, 81:4, 81:7, 81:11, 81:15, 81:21
**Teleglobe** [1] - 62:14
**telephone** [2] - 61:24, 64:1
**ten** [1] - 23:14
**ten-minute** [1] - 23:14
**term** [1] - 3:22
**terms** [2] - 25:24, 28:8
**test** [1] - 18:12
**testified** [2] - 68:3, 78:23
**testify** [13] - 22:13, 22:14, 23:6, 25:19, 25:24, 33:10, 33:14, 34:8, 46:15, 47:21, 50:25, 54:15, 67:13
**testimony** [5] - 26:11, 32:24, 42:12, 42:14, 79:11
**text** [8] - 20:15, 20:16, 29:3, 29:15, 29:19, 30:9, 31:24
**texted** [1] - 76:7
**THE** [303] - 1:10, 1:13, 1:16, 2:3, 2:6, 3:2, 3:3, 3:8, 3:11, 3:15, 3:19, 4:11, 4:19, 4:21, 5:10, 5:16, 6:1, 6:5, 6:15, 6:18, 6:21, 6:23, 7:2, 7:4, 7:8, 7:10, 7:16, 7:18, 7:22, 8:1, 8:10, 8:15, 8:19, 8:22, 9:1, 9:5, 9:8, 9:12, 9:15, 9:21,

10:15, 12:3, 12:12, 12:17, 12:21, 12:24, 13:2, 13:9, 14:8, 14:11, 14:14, 14:24, 15:2, 15:5, 15:10, 15:21, 16:8, 16:13, 17:3, 17:10, 18:25, 19:4, 19:7, 19:10, 19:14, 19:19, 19:22, 20:1, 21:10, 21:17, 21:20, 21:25, 22:4, 22:7, 22:13, 22:18, 22:20, 23:1, 23:3, 23:6, 23:11, 23:14, 23:22, 23:24, 24:3, 24:6, 24:9, 24:13, 25:3, 25:7, 25:9, 25:16, 26:5, 26:17, 26:22, 27:1, 27:5, 27:10, 27:15, 27:17, 27:22, 28:22, 29:23, 30:6, 30:10, 30:14, 30:16, 30:18, 30:23, 31:8, 31:16, 31:20, 32:6, 32:9, 32:11, 32:15, 32:21, 32:24, 33:4, 33:7, 33:10, 33:16, 33:21, 34:2, 34:18, 34:23, 35:19, 35:24, 36:8, 36:11, 36:14, 36:16, 36:18, 37:7, 37:12, 37:14, 37:21, 38:1, 38:4, 38:9, 38:12, 38:14, 38:16, 38:21, 38:25, 39:3, 39:14, 39:16, 39:21, 39:24, 40:4, 40:6, 40:8, 40:11, 40:14, 40:18, 40:21, 41:1, 41:4, 41:6, 41:8, 41:20, 41:23, 42:8, 42:19, 42:25, 43:8, 43:14, 43:20, 43:23, 44:5, 44:11, 44:14, 44:16, 44:20, 45:1, 45:24, 46:2, 46:4, 46:6, 46:11, 46:14, 46:17, 46:22, 46:25, 47:2, 47:8, 47:16, 48:3, 48:9, 48:14, 48:17, 49:13, 49:18, 49:23, 50:2, 50:5, 50:12, 50:20, 50:25, 51:4, 51:11, 51:14, 51:17, 51:20, 51:23, 51:25, 52:2, 52:6, 52:8, 52:12, 52:15, 52:18, 52:22, 52:25, 53:4, 53:8, 53:12, 53:16, 53:22, 54:5, 54:10, 54:17,

54:25, 55:2, 55:12, 55:21, 56:3, 56:6, 56:10, 56:14, 56:17, 56:23, 57:3, 57:7, 57:9, 57:11, 57:13, 57:17, 57:23, 58:4, 58:9, 58:14, 58:16, 58:21, 58:23, 59:1, 59:5, 59:9, 59:13, 59:16, 59:21, 60:4, 60:25, 61:11, 61:20, 64:2, 66:7, 67:12, 67:23, 68:5, 69:8, 69:11, 69:16, 69:20, 69:22, 70:1, 70:5, 71:5, 71:7, 73:12, 75:8, 77:13, 79:10, 79:25, 80:4, 80:8, 80:11, 80:13, 80:17, 80:20, 80:23, 80:25, 81:17, 82:1, 82:6, 82:22, 83:1, 83:5, 83:12, 83:15, 83:19, 83:23, 84:1, 84:7, 84:19, 84:21, 84:24, 85:2, 85:5, 85:7, 85:14, 85:19
**themselves** [3] - 26:14, 30:12, 31:6
**theories** [6] - 5:17, 6:24, 7:11, 7:14, 10:20, 10:21
**thereafter** [1] - 65:4
**thereby** [2] - 17:18, 78:7
**thinking** [4] - 32:17, 56:22, 69:6, 70:16
**third** [5] - 18:3, 62:8, 62:17, 77:23, 78:3
**thoughts** [1] - 66:15
**three** [8] - 27:7, 28:1, 28:8, 60:13, 69:21, 70:2, 72:11, 82:8
**today** [1] - 84:4
**together** [8] - 37:8, 39:23, 39:24, 40:22, 41:18, 41:24, 43:9, 70:5
**tomorrow** [2] - 57:1, 58:18
**tone** [2] - 70:22, 71:2
**took** [4] - 30:1, 30:2, 31:2
**touched** [3] - 56:7, 56:9, 63:13
**touches** [1] - 62:23
**towards** [1] - 9:6
**transcript** [2] - 61:3, 69:24
**transcription** [1] -

86:4
**transcripts** [4] - 10:7, 10:8, 49:8, 78:20
**translate** [1] - 6:3
**translated** [1] - 76:22
**translations** [1] - 49:8
**trial** [9] - 58:14, 58:17, 58:18, 58:19, 58:22, 58:23, 59:6, 78:19, 79:8
**tribunal** [1] - 39:9
**tried** [1] - 68:14
**trouble** [1] - 61:12
**true** [5] - 75:21, 76:6, 76:11, 76:16, 77:3
**truth** [1] - 45:24
**try** [2] - 21:6, 35:13
**trying** [15] - 10:11, 14:6, 14:7, 16:4, 16:6, 16:10, 17:21, 17:22, 22:5, 22:8, 40:25, 59:5, 75:16, 82:14
**turn** [2] - 41:7, 75:3
**turned** [4] - 9:1, 35:20, 79:20, 84:12
**two** [10] - 14:24, 21:21, 22:22, 56:21, 60:20, 62:2, 63:14, 68:14, 79:4
**type** [4] - 22:16, 65:17, 78:10, 82:10
**typical** [1] - 50:7

## U

**um-hmm** [1] - 41:1
**unassailable** [2] - 23:22, 23:24
**under** [16] - 5:12, 5:14, 10:1, 23:18, 25:2, 43:15, 49:22, 62:11, 62:19, 67:13, 67:23, 69:3, 74:17, 81:23, 84:23
**underlying** [1] - 9:17
**understood** [3] - 34:17, 51:3, 68:11
**Understood** [1] - 33:25
**undress** [1] - 34:7
**unfortunately** [1] - 44:9
**unique** [1] - 37:16
**UNITED** [3] - 1:1, 1:4, 1:11
**United** [6] - 1:13, 3:5, 22:24, 27:13, 65:25, 86:8
**universe** [1] - 26:7

**unless** [2] - 59:1
**Unlike** [1] - 78:1
**unreasonable** [1] - 32:22
**unseal** [2] - 84:5, 84:8
**unsealed** [1] - 84:20
**up** [14] - 7:22, 32:19, 40:17, 43:7, 47:17, 51:25, 58:12, 63:10, 66:4, 80:8, 85:10, 85:11, 85:14
**utterances** [2] - 28:3, 28:13

## V

**valid** [3] - 28:2, 28:8, 32:3
**validate** [1] - 66:12
**value** [2] - 29:16, 33:23
**Vazquez** [4] - 57:20, 57:23, 58:2, 85:16
**venture** [1] - 10:9
**via** [2] - 30:9, 31:17
**Vidal** [84] - 3:10, 3:21, 3:25, 11:24, 12:9, 13:5, 25:25, 26:1, 28:11, 35:2, 35:3, 35:8, 35:12, 35:13, 38:5, 38:18, 41:14, 59:25, 60:7, 60:17, 60:19, 60:21, 61:3, 61:8, 61:23, 62:6, 63:22, 64:1, 64:4, 64:8, 64:10, 64:14, 65:2, 65:5, 65:10, 65:11, 65:23, 66:1, 66:3, 66:6, 66:8, 66:16, 66:21, 66:22, 66:23, 67:14, 68:8, 68:11, 68:13, 69:12, 70:7, 71:4, 71:10, 72:1, 72:5, 72:10, 72:21, 72:22, 72:24, 73:2, 73:8, 73:19, 73:23, 74:1, 74:7, 74:19, 75:10, 75:13, 75:21, 76:1, 76:4, 76:7, 76:10, 76:20, 77:4, 77:14, 77:15, 78:9, 78:17, 78:24, 79:12, 79:22, 80:5, 82:2
**VIDAL** [1] - 1:7
**Vidal's** [4] - 50:1, 60:5, 64:21, 65:24
**videos** [2] - 16:1, 20:22
**violating** [1] - 81:20

**violation** [1] - 81:5
**visual** [2] - 28:23, 34:13
**vs** [2] - 1:6, 27:12

## W

**wait** [2] - 58:10, 84:18
**waiting** [1] - 55:23
**waive** [1] - 62:3
**waived** [1] - 63:25
**waiver** [5] - 62:18, 63:20, 63:21, 79:2, 81:3
**walk** [1] - 40:17
**wall** [2] - 29:12, 29:13
**wants** [2] - 15:10, 74:14
**warned** [1] - 68:15
**warrant** [1] - 68:25
**waste** [1] - 46:8
**wearer** [1] - 67:21
**Wednesday** [4] - 48:12, 57:6, 57:9, 58:6
**week** [3] - 48:18, 57:8, 59:3
**weeks** [1] - 82:8
**welcome** [1] - 59:14
**Westlaw** [1] - 7:23
**WhatsApp** [3] - 29:4, 31:25, 75:13
**whole** [1] - 21:6
**wife** [16] - 28:12, 29:5, 29:21, 30:20, 30:25, 31:10, 32:1, 32:15, 32:23, 32:24, 46:14, 47:19, 54:8, 54:14, 56:18, 58:7
**WiFi** [1] - 7:25
**willing** [1] - 23:7
**wish** [1] - 84:16
**wishes** [1] - 83:8
**withdraw** [4] - 51:22, 51:24, 53:8, 53:19
**withdrawing** [6] - 15:16, 26:9, 46:3, 49:21, 52:3, 52:5
**withheld** [1] - 81:23
**witness'** [1] - 20:9
**WITNESSES** [3] - 2:2, 2:3, 2:6
**witnesses** [9] - 7:7, 7:9, 10:12, 11:8, 11:20, 11:21, 11:24, 78:19
**word** [2] - 63:22, 82:12
**words** [4] - 26:6, 31:17, 34:6, 34:12

**world** [3] - 17:16, 62:4, 78:6
**writing** [3] - 49:24, 51:6, 74:25
**written** [1] - 33:23

## Y

**years** [4] - 21:19, 26:1, 60:6
**York** [2] - 27:8, 27:14
**yourself** [1] - 36:8
**Yuli** [1] - 15:25