UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 21-cr-20050-CMA


UNITED STATES OF AMERICA,        Miami, Florida

         Plaintiff,             July 05, 2022

     vs.                        11:06 a.m. to 11:42 a.m.

JOSE MIGUEL GONZALEZ VIDAL,     Courtroom 13-3
et al.,
         Defendants.            (Pages 1 to 24)
_____

MOTION HEARING
BEFORE THE HONORABLE CECILIA M. ALTONAGA,
CHIEF UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:    MANOLO REBOSO, ESQ.
                      MICHAEL S. DAVIS, ESQ.
                      IGNACIO J. VAZQUEZ JR., ESQ.
                      Assistant United States Attorney
                      99 Northeast Fourth Street
                      Miami, FL  33132-2131
                      (305) 961-9001
                      manolo.reboso@usdoj.gov
                      michael.davis2@usdoj.gov
                      ignacio.vazquez@usdoj.gov

FOR DEFENDANT         CHRISTIAN S. DUNHAM, ESQ.
JANCER SERGIO RAMOS   Federal Public Defender
VALDES:               150 W. Flagler Street, Suite 1700
                      Miami, FL  33130
                      (305) 530-7000
                      christian_dunham@fd.org

                      RAE SHEARN, ESQ.
FOR DEFENDANT         Rae Shearn Law
YOSVANI CARBONEL      1885 Northwest North River Drive,
LEMUS:                Suite 1000
                      Miami, FL  33125
                      (305) 907-6345
                      rshearn@raesheranlaw.com

APPEARANCES CONTINUED:

FOR DEFENDANT           SILVIA B. PINERA-VAZQUEZ, ESQ.
YOHISMY PEREZ           Pinera-Vazquez Law Firm
GONZALEZ:               CCM International Center
                        1900 Southwest 3rd Avenue
                        Miami, FL  33129
                        (305) 443-0629
                        sbp@pineravazquezlaw.com

FOR DEFENDANT           RICARDO P. HERMIDA, ESQ.
REYNALDO ABREU          Law Offices of Ricardo P. Hermida
GARCIA:                 55 Merrick Way, Suite 212
                        Coral Gables, FL  33134
                        (305) 461-1116
                        rick@rphermida.com

FOR DEFENDANT JOSE      JUAN D. BERRIO, ESQ.
MIGUEL GONZALEZ         Berrio & Berrio, P.A.
VIDAL:                  7300 N. Kendall Drive, Suite 520
                        Miami, FL  33156
                        (305) 358-0940
                        jdberrio@hotmail.com

FOR DEFENDANT           SCOTT T. KALISCH, ESQ.
REYNALDO CRESPO         Law Offices of Scott Kalisch
MARQUEZ:                435 South Oregon Avenue, No. 104
                        Tampa, FL 33606-2117
                        (305) 669-0808
                        scottkalish@bellsouth.net

Also Present:           Guiomar Emedan, Interpreter

REPORTED BY:            STEPHANIE A. McCARN, RPR
                        Official Court Reporter
                        400 North Miami Avenue
                        Thirteenth Floor
                        Miami, Florida 33128
                        (305) 523-5518
                        Stephanie_McCarn@flsd.uscourts.go

**I N D E X**

**WITNESSES**

**WITNESSES FOR THE PLAINTIFF:**                                   **Page**
                                                                   --


**WITNESSES FOR THE DEFENDANT:**                                   **Page**
                                                                   --


**MISCELLANEOUS**

                                                                   **Page**
Proceedings.......................................   4
Court Reporter's Certificate......................  24

(The following proceedings were held at 11:06 a.m.)

THE COURT:  Good morning.  Please state your appearances.

MR. REBOSO:  Good morning, Your Honor.  Manolo Reboso on behalf of the United States.

MR. VAZQUEZ:  Good morning, Your Honor.  Ignacio Vazquez on behalf of the United States.

THE COURT:  Good morning.

And by the way, if you are fully vaccinated and are comfortable, you may remove your face mask.  I leave it up to each one of you to decide.  Thank you.

And I'll hear from Defense Counsel.

MR. DUNHAM:  Good morning, Your Honor.  Christian Dunham, Assistant Federal Public Defender, here on behalf of Jancer Ramos Valdes.

THE COURT:  Good morning.

MS. SHEARN:  Good morning, Your Honor.  Rae Shearn on behalf of Yosvani Carbonel Lemus to my right.

THE COURT:  Thank you.  Good morning.

MS. PINERA-VAZQUEZ:  Good morning, Judge.  Silvia Pinera-Vazquez on behalf of Yohismy Perez Gonzalez, who is sitting to my right with the aide of an interpreter.  Just to let you know, I don't have -- oh, here it is.  Okay, I don't have to scream.

THE COURT:  All right.  Thank you.  Good morning.

MR. HERMIDA:  I feel like a nightclub singer.  Good morning, Judge, Rick Hermida on behalf of Rey Abreu.  Good to be back, Judge.

THE COURT REPORTER:  We need to call someone.

THE COURT:  Oh, we need to call someone.

(Pause in proceedings.)

THE COURT:  Good morning.  Do we have Mr. Kalisch on the phone?

(Pause in proceedings.)

THE COURT:  Good morning, this is Judge Altonaga.  Who do we have on the phone?

MR. DAVIS:  Hi, this is Michael Davis.

MR. BERRIO:  Good morning, this is Juan Berrio.

THE COURT:  Good morning, Mr. Davis and Mr. Berrio.

Okay, and do we have Mr. Kalisch?  Is anyone covering for him today?

(Pause in proceedings.)

THE COURT:  Mr. Kalisch is downstairs.  My courtroom deputy will take a face mask to him so he can make it up here.

MR. HERMIDA:  Judge, I believe one or more of the Defendants can't hear the translation.

THE COURT:  Then this is a good time to work it out with the interpreter.

(Pause in proceedings.)

THE INTERPRETER:  Okay, Your Honor, we're set.

THE COURT:  Thank you.

Mr. Kalisch has arrived.

Mr. Kalisch, good morning.

MR. KALISCH:  Good morning, Your Honor.  I apologize for being late.

THE COURT:  That's all right.  And if you wish to remove your face mask, if you are fully vaccinated, you may do so.

MR. KALISCH:  I'd have been here on time if it hadn't been for this.

THE COURT:  Right.

All right.  I'll hear from the Government.

MR. REBOSO:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. REBOSO:  We are obviously ready for trial.  What we have to discuss is in light of your Court's order from June 2nd with regards to the witness disclosures.  On our motion, we proposed five days before trial, which would traditionally be when there would be a calendar call either that Tuesday before or that Wednesday before.

What kind of complicates things is we have a jury selection date of August 8th, 2022.  And obviously, for the purposes of jury selection, the jurors should know who the witnesses are in order for them to determine whether they can be an impartial jury and whether or not they know any of the

witnesses.

I have spoken to some Defense Counsel and Mr. Vazquez. One of the ways that this could be remedied is we just start jury selection and we pick a jury and go.  Starting a trial traditionally, as opposed to having a separate jury selection and then start of trial.

I believe the reason why the Court did it is so we can turn over the names of the witnesses, and within those three weeks the Defense would have ample opportunity to prepare.  But in light of the Court's order, and the reason why we sought the Court to reconsider its ruling, we are concerned for the witnesses' safety and I believe we can probably disclose the names five days before trial, start jury selection.  I know that the start of the trial is September 1st, which is a Thursday.

THE COURT:  Could I interrupt for one moment, please.

MR. REBOSO:  Yes, Judge.

THE COURT:  All right.  There has been a change since we were last together, and that is the status of Defendant Abreu Garcia.

MR. REBOSO:  That's correct.

THE COURT:  Right.  So why don't we start with that instead of the witnesses' names.

MR. REBOSO:  Yes, Judge.

THE COURT:  Does Mr. Abreu Garcia have the discovery

that was produced to his codefendants, and if, so when did he receive it?

MR. REBOSO: He's going -- Mr. Hermida will receive it today when we get out of here. We're going to go to my office. He turned over -- or he provided us a one-terabyte drive on Friday. I received it from his legal assistant. Mr. Hermida has been out of town. We have done three productions, which would be Production 11, 12 and 13 since Mr. Abreu Garcia pled guilty.

Mr. Hermida has been copied, and his office has been copied on all three of those productions. But I believe since he was in a different posture, he was not in a trial posture, I don't believe that he downloaded all of those. And the USAfx platform that we use, those files disappear after 60 days. So they are no longer there. Ever -- you know, since he was out -- I should say he is back into the trial -- those links had expired. He did not receive that, because I spoke to Mr. Hermida, he was also out of town.

So when he returned last week is when we had a conversation. I said, Look, it is approximately 400 files and 60 gigabytes. Most of them are trial exhibits. So it is evidence that he already has, but more importantly there's also Mr. Vidal's filter phone that is part of that production, as well as some other discovery. But yes, he is going to get it.

He gave it -- on Friday at 4 o'clock, I met his legal

assistant in the lobby of my building and she gave it to me.  I said to Mr. Hermida before we met, Let's go to my office after this to confirm that everything works.  It's password-protected, so there is absolutely no issues when he gets to his office.

THE COURT:  Thank you.

Mr. Hermida.

MR. HERMIDA:  That's -- I don't really have anything else to add, Your Honor.  They do use the USAfx platform.  It did expire because, as Your Honor is aware, I was -- we were in a different posture altogether.  I anticipate being --

THE COURT:  Okay.  Let's have the children step outside, please.  Thank you.

Go ahead.

MR. HERMIDA:  The bottom line, Judge, we expect to be ready.

THE COURT:  All right.  Thank you.

So let's return to the issue of disclosure of the identities of these witnesses.  I'll hear from the Defendants who are going to object, of course.

MS. PINERA-VAZQUEZ:  Judge, should I let Mr. Berrio go first?

THE COURT:  I'm not aware of who wants to speak on the matter.

MS. PINERA-VAZQUEZ:  I will go ahead and speak, Your

Honor.

THE COURT:  All right.

MS. PINERA-VAZQUEZ:  And just to put this in perspective, I chose -- because I am the one who filed the initial motion.  I chose not to file a motion for reconsideration of the reconsideration because, quite frankly, I wasn't sure if it was even allowed by the rules.  I figured I'd wait until this status conference to raise our objections.  And I think I speak pretty much for all of the Defendants, but I really want to focus on my client, Mr. Perez Gonzalez's situation.

If the Court will recall, it had initially granted my motion to disclose, in any event.  I think it was about three weeks before.  And it was the names, addresses and I believe birth dates.  Which -- while that time for nine witnesses, or victims, alleged victims, and I believe there is about another six or seven family members, we still felt it was very tight because it is a lot of witnesses that we would have to prepare for.  At least it gave us a little bit of breathing room to be prepared to cross-examine these essential witnesses.

Subsequently, I understand the Government filed their motion for reconsideration based on information that didn't transpire between the time the Court obviously granted my motion and when they filed their motion for reconsideration.  The only thing that transpired during that time was that the

trial team received a copy of the Vidal phone from the --
Mr. Davis and the taint team.

And on that phone were conversations, allegedly, and I believe we have access to some but not all of the conversations, that involved potential witness tampering by one of the Defendants, not my client Mr. Perez Gonzalez.  And these conversations I understand were held in 2020 and prior to my client even, I believe, being arrested.

And this is my concern, while I understand the Government's obvious safety concerns for the victims and I understand the Court's, these allegations of alleged tampering have nothing to do with my client and several of the other Defendants.  In fact, at the time those allegations of witness tampering took place, my client was in the United States.  As you know, we filed a notice of alibi for a certain portion.

And to put this in perspective, we have spoken to Mr. Gonzalez, which is present in court, which is the investigator for -- for Mr. Berrio and several of the other Defendants.  We had a joint conference call and I can disclose that -- and he is prepared to answer any questions the Court would like -- there is no way that we can do a valid or comp -- not even comp -- just any sort of investigation in five days of any of these witnesses.

And let me explain to you why it's important as to my client.  My client is alleged to have trafficked two of the --

of the aliens, Alien 1 and Alien 2.  That's it.  That's what he is charged with.  His -- and because we in July 4th, his battle of Yorktown will be Alien No. 2, who alleges that he raped her, along with other -- several of the other Defendants.  My client has denied -- adamantly denied that he raped anyone.  And this will boil down to a credibility contest because there is no other witness that saw the alleged rape, other than the female, Alien 2, and my client who denies it.  So it is going to be a he-said-she-said.

So our ability to be able to do an investigation of this witness to see if she's lied in any other statements, to see if she submitted PPP loans where she lied that she was employed.  I mean, we have been able to do a little bit, but we don't have the ability to do a background investigation, my investigator.  And it is going to be essential and critical for my client's defense, of which he's entitled to be prepared to cross-examine.  We can't just go on redacted alien files, because they are severely redacted, that the Government has provided.

I have a custom to do a defense investigation.  And when I cross-examine, I have information that the Government necessarily either has not disclosed or has not discovered.  And that is routine in all of my cases.  So for that reason, we object to the five days and request a longer time.  And I am only dealing with two of the witnesses and, I think, one family

member.  That's three individuals.

Mr. Vidal and Mr. -- the other Defendants have six, seven, eight or nine.  But as to my client, it would be extremely prejudicial for us not to have that time when his -- he will fall and rise on the testimony of one witness who is solely a credibility determination for the jury.  And they will be able to hear his -- he was -- obviously he was debriefed and there is a tape, which I am sure the Government will play, where he denies that he raped anybody.  They ask him.

So whether or not he takes the stand is not even the issue at this point.  I mean, they are going to probably going to play that tape.  So it's going to be a credibility determination, and we don't -- we definitely object to only a five-day window when we believe this witness, Alien 2, who I am focusing on, doesn't even live in Florida.  We believe she lives in another state.

So that's our objection, Your Honor.

MR. HERMIDA:  Judge, we would join of behalf of Mr. Abreu, who obviously is probably similarly situated.

Your Honor, my only issue, why should Abreu, who was marginally involved, be penalized for someone who might have been largely involved?  My issue is this, and maybe the --

THE INTERPRETER:  Counsel, from the interpreter --

MR. HERMIDA:  Sorry, Judge.

Maybe if the Court would consider an order wherein we

were to provide the redacted copies only to our clients and the rest it would -- it would be on us to keep it safe and secure.

THE COURT:  Some sort of a protective order?

MR. HERMIDA:  Yes, Your Honor.

THE COURT:  All right.  Thank you.

Ms. Shearn.

MS. SHEARN:  Yes, good morning, Judge.

THE COURT:  Good morning.

MS. SHEARN:  Rae Shearn.  I think we've got the wrong platform here.  My client is charged in most of these counts. He has the most to lose.  We need to know before I stand up for voir dire who we are talking about, where they are from, what relationship, if any, they have to my client, their background information, just basic, basic impeachment, consistent with the 6th Amendment of the United States of America.

I understand tampering.  I have read the same materials, we all have.  And we certainly empathize and sympathize with the Government.  But Judge, that's what you are here for.  You can fashion, even -- even a gag order that prevents us from maybe prematurely sharing it with our clients, if that's it, so that the attorneys and the members of the Bar are able to investigate for and on behalf of their clients.

THE COURT:  Thank you.

MR. DUNHAM:  Thank you, Your Honor.  I would say on behalf of Mr. Ramos Valdes, we don't have any objection to

making the jury selection closer to the actual trial, if that is one of the considerations the Court wants to do with the timeframe.  I also think that, you know, my client is heavily involved in most of the counts, so we think we do need to have access to this information prior to jury selection, I think. We would agree with that.

We also -- we have been under a protective order. Mr. Ramos Valdes is one of the first Defendants here.  We have been under a protective order from the beginning.  We haven't had any problems.  We don't have an objection to any further protective order if the Court wants to fashion one, like Mr. Hermida said.

That's all, Your Honor.  Thank you.

THE COURT:  Thank you.

Mr. Kalisch.

MR. KALISCH:  Your Honor, I'm in unique position in that --

THE COURT:  Can you use a microphone, please.

MR. KALISCH:  I am in a unique position that, I have some -- some attachment to the -- the allegations of witness tampering.

THE COURT:  You do.

MR. KALISCH:  Yes.

THE COURT:  And you are.

MR. KALISCH:  Exactly.  That was, of course, not my --

ever my intent, but that's the way the Government has stated it.  And they have moved to disqualify me.

THE COURT:  Correct.

MR. KALISCH:  Now, in addition to that, Your Honor, I must say, and inform the Court that two weeks ago, I fell down a step and hit the back of my head on the sidewalk, concrete, and I was in the Tampa General Hospital for three days.  I do not feel 100 percent recovered at this point.  I -- I have some dizzy spells.  I -- I have some fatigue.  I have to be honest with the Court, I don't want to start a trial -- a two-month trial and then find myself not 100 percent.

So I want to inform the Court about that, in addition to the pending motion by the Government to have me disqualified for whatever it is I did.

THE COURT:  Are you seeking to withdraw?

MR. KALISCH:  Yes, Your Honor.

THE COURT:  Oh, well.  So that certainly would moot his motion to disqualify, but it would also moot any discussion of starting jury selection in August.

So why don't we address that point first?

MR. KALISCH:  Your Honor, I have -- I have the discharge papers from the Tampa General Hospital right here with me.  It's -- I can show them to opposing counsel, if opposing counsel wants to see them.

MR. REBOSO:  And Your Honor, I spoke with Mr. Kalisch

at length on Friday.  He told me he was going to bring the medical records, but I will take his word for it.  What I represented in the motion, obviously it is under seal, but I -- you know, I had represented that Mr. Kalisch was going to bring up this medical issue to the Court.  Obviously that's between himself and the Court with regards to, you know, those medical records.

With regards to a withdrawal, I did also represent when I conferred with him that he was going to speak to his client with regards to withdrawing, that that was a possibility.  But obviously that's Mr. Kalisch's -- I was -- I didn't know that he was affirmatively going to seek to withdraw this morning, so that's why I did not bring that up.

But we did have this conversation on Friday.  I represented that in the motion that was under seal, but I wasn't sure what Mr. Kalisch was going to request of this Court this morning.

MR. KALISCH:  Your Honor, I have the -- the medical records.  I don't -- the doctors say that they don't know that whether I will recover.  They don't how long it will take to recover.  All I know is how I feel now, and at times I don't feel like I can sit through a full day's trial, let alone a two-month trial.  So I don't want the Court to start a trial and have me not be 100 percent.  My client needs 100 percent representation on this case.

I have prepared for trial.  I have a trial notebook. I am happy to hand it over to whomever is going to take my place, and help them as much as I can, but I just don't think I have the strength to sit through a two-month trial at this stage.

THE COURT:  All right.  So I take it there is no objection to Mr. Kalisch's motion to withdraw?

MR. REBOSO:  None from the Government, Your Honor.

THE COURT:  Will that also moot out the Docket Entry 252 that I referred to the magistrate judge?

MR. REBOSO:  No, it would not.

THE COURT:  It would not?

MR. REBOSO:  Because the --

THE COURT:  It would follow his successor?

MR. REBOSO:  No, the -- I believe -- in --

MR. VAZQUEZ:  I don't know if this is Your Honor --

MR. DAVIS:  Your Honor, excuse me.  May I speak?

MR. VAZQUEZ:  -- referring to a matter that's with Mr. Davis or you're talking --

THE COURT:  Are you referring to your --

MR. DAVIS:  Thanks.  Your Honor, this is -- I'm sorry.

THE COURT:  That's all right.

MR. DAVIS:  I can't see the Court.  This is -- this is Michael Davis.  I can't see the Court speaking, because of course I am on the phone.  It would not moot out -- it does not

moot out Docket Entry 252.

THE COURT:  Okay.

MR. DAVIS:  That would still require ruling.

I also have to let the Court know that on my end, I still have to get coordinated to take care of, I guess, technically -- and this is my fault for letting it slip.  I have five text messages, plus a draft, plus three photos and two copies that still need to be turned over to the case team.  They all look relatively innocuous to me and they all look, that I can say, they are all very short.

THE COURT:  All right.

MR. DAVIS:  So I got to get that taken care of, but the more substantive matter is Docket Entry 252, which is going to -- yeah, which Mr. -- if Mr. Kalisch withdraws, his successor would need to litigate.

THE COURT:  All right.  Thank you, Mr. Davis.

All right.  So I will, of course, grant the motion to withdraw, allow you to withdraw from this case, Mr. Kalisch and your representation of your client.

The sealed motion to disqualify you, Docket Entry 293 is therefore moot.

And your client needs a new lawyer.  And I -- we previously found that he qualifies -- that you qualified as C JA counsel, correct, Mr. Kalisch, that your client had no funds.

MR. KALISCH:  Yes, he qualifies for CJA counsel.

THE COURT:  All right.  So I will find replacement counsel.  And the trial will clearly not take place in the time that we had discussed.

That should have been the first order of business in today's discussion.  And I won't address the issue of disclosing witnesses' names.  This is all rather academic. Whoever your replacement is, is going to need some time to be trial ready.

MR. KALISCH:  Your Honor, if I may just suggest to the Court.  Mr. Marquez, as well as all of the Defendants, doesn't speak any English.  It would do well if the newly-appointed lawyer did speak some Spanish.

THE COURT:  Oh, I always do that.

MR. KALISCH:  Thank you.

THE COURT:  Thank you.

Is there anything else?  I will enter a new trial order.  It will be for a trial, how is January?

MR. HERMIDA:  Would the Court --

THE COURT:  I -- you need a microphone, please?

MR. HERMIDA:  I'm sorry, Your Honor.  On behalf of Mr. Abreu, would the Court consider a motion for severance?

THE COURT:  You can certainly file it, but there is clearly abundant case law that preferences to try Defendants who are indicted together, try them together, cost and expense

of putting witnesses through two trials, you know -- you know the issues, as do I.

I will not look favorably upon a motion for severance. These are all the same witnesses, of which the Government doesn't even want to tell you who they are.

So, anything else?

MR. BERRIO:  Yes, Your Honor.  Juan Berrio on behalf of Jose Miguel Gonzalez Vidal.  I just would like to bring it to the Court's attention at this time that in the future, regarding this issue as to the disclosure of the witnesses, the names so we can conduct a meaningful investigation and the investigators.  Jose Gonzalez, my investigator there.  And we've spoken to him about this, and he is saying that realistically, 60 days it would be a minimum of the amount of time that we would we need to have the victims' and the migrants' names.

And I believe they did propose some type of a modification or an additional protective order, a gag order, where only the names would be disclosed to the attorneys and the investigator, nobody else, so we could properly prepare these -- these witnesses or our investigation for trial.

So I just want to bring it to the Court's attention that 60 days is the -- the timeframe for about 17 people that need to be background, that my investigator, Mr. Jose Gonzalez, advised me would be necessary.  So I just want to let the Court

know about the timeframe that we're requesting on behalf of Jose Miguel Gonzalez Vidal for us to be able to conduct these backgrounds on these victims and migrants.

THE COURT:  Thank you.

Let's talk about a tentative trial period.  I am going to try to find CJA counsel who is available to try a three-month long trial beginning in January and to get trial ready.  And Mr. Kalisch, I am going to ask that you make all of your files available to your replacement counsel.

MR. VAZQUEZ:  Your Honor, may I?

THE COURT:  Yes.

MR. VAZQUEZ:  As to the scheduling, I know a number of people that we have an issue.  If it's possible to have it towards the later end of January or beginning of February, if that's convenient for the Court's schedule.  I mean, I know it's a large amount of time for Your Honor, but if that's possible.  I just note moving people around is going to be more readily possible away from the December month.

THE COURT:  Well, we could have the calendar call on Tuesday, January the 10th for the two-week trial period that begins on Tuesday, January 17.

MR. VAZQUEZ:  Tentatively, Your Honor, yes that looks acceptable to us.  Obviously if there's any issues with our major witnesses, we'll --

THE COURT:  It's a long trial.  You're going to have a

lot of time to put them in.

MR. VAZQUEZ:  Correct, yes.

THE COURT:  Okay.

MR. VAZQUEZ:  Yes, Your Honor.

THE COURT:  Anything else?

MR. HERMIDA:  Just one more thing on behalf of Mr. Abreu, Your Honor.  He has brought it to my attention, there is a separation order here as to Mr. Abreu and he --

THE COURT:  Discuss it with the Government.

MR. HERMIDA:  I will.

THE COURT:  That's the best course to take.

Anything else?

MR. VAZQUEZ:  Not on behalf of the United States.

MR. REBOSO:  No, Your Honor.

MR. DUNHAM:  No, Your Honor.

MS. SHEARN:  No, Your Honor.

MS. PINERA-VAZQUEZ:  No, Your Honor.

MR. HERMIDA:  No, Your Honor.

THE COURT:  All right.  Nice seeing everyone and you have a reprieve, you don't have the trial until January.  All right.

MR. BERRIO:  Thank you, Judge.

THE COURT:  Thank you.

MR. BERRIO:  Thank you, Judge.  Have a nice day.

THE COURT:  You too.

(The proceedings concluded at 11:42 a.m.)


**C E R T I F I C A T E**


I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.



_04/03/2023_
   DATE

STEPHANIE A. McCARN, RPR
Official United States Court Reporter
400 North Miami Avenue, Thirteenth Floor
Miami, Florida 33128
(305) 523-5518